## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIDI CHERKAOUI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v | ) | C A. No : 05-CV-184-KAJ |
| | ) | |
| HSBC PAY SERVICES, INC , a | ) | JURY TRIAL DEMANDED |
| Delaware corporation, HSBC FINANCE | ) | |
| CORPORATION, a Delaware | ) | |
| corporation, and HOUSEHOLD | ) | |
| INTERNATIONAL, INC, a Delaware | ) | |
| corporation, | ) | |
| | ) | |
| Defendants | ) | |

## OPENING BRIEF IN SUPPORT OF HSBC'S MOTION TO DISMISS

Jennifer C  Jauffret (#3689)
jauffret@rlf com
Alyssa M. Schwartz (#4351)
schwartz@rlf com
Richards, Layton & Finger, P A
One Rodney Square
P O  Box 551
Wilmington, Delaware  19899
(302) 651-7700

Attorneys for Defendants
HSBC Pay Services, Inc , HSBC Finance
Corporation and Household International, Inc

Dated:  May 11, 2005

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......................................................................... ii

NATURE AND STAGE OF PROCEEDING .................................................... 1

SUMMARY OF THE ARGUMENT ............................................................... 3

STATEMENT OF THE FACTS ..................................................................... 4

ARGUMENT .............................................................................................. 9

   I    STANDARD FOR A RULE 12(B)(6) MOTION TO DISMISS ................. 9

   II   PLAINTIFF'S TITLE VII CLAIM MUST BE DISMISSED ..................... 9

      A   Plaintiff Has Not Suffered An Adverse Employment Action Pursuant To Title VII ... 9

      B   Plaintiff's Title VII Claim Is Barred By The Applicable Statute Of Limitations ... 14

   III   TO THE EXTENT PLAINTIFF'S TITLE VII CLAIM IS DISMISSED,
       THE ENTIRE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT
       MATTER JURISDICTION OVER THE REMAINING STATE LAW CLAIMS ... 16

CONCLUSION .......................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

Bell v. Waste Management,
    2004 WL 2451416 (D. Del. Oct. 29, 2004) . . . . . . . . . . . 10

Benjamin v. E.I. DuPont de Nemours & Co.,
    2001 U.S. Dist. LEXIS 17904 (Del. 2001) . . . . . . . . . . . 14

Boardley v. First Correctional Medical,
    2004 WL 2980727 (D. Del. Dec. 21, 2004) . . . . . . . . . . . 16, 17

Burgh v. Borough Council,
    251 F.3d 465 (3d Cir. 2001) . . . . . . . . . . . 14

Burkhardt v. Liberty,
    394 F. Supp. 1296 (W.D. Pa. 1975), aff'd, 530 F.2d 963 (3d Cir. 1976) (TABLE) . . . 16

In re Burlington Coat Factory Sec. Litigation,
    114 F.3d 1410 (3d Cir. 1997) . . . . . . . . . . . 4, 5

Burlington Industrial Inc. v. Ellerth,
    524 U.S. 742 (1998) . . . . . . . . . . . 10

Carrion v. City of Wilmington,
    2005 WL 83598 (D. Del. Jan. 7, 2004) . . . . . . . . . . . 16

Conley v. Gibson,
    355 U.S. 41 (1957) . . . . . . . . . . . 9

Cortec Industrial, Inc. v. Sum Holding L.P.,
    949 F.2d 42 (2d Cir. 1991) . . . . . . . . . . . 4

Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.,
    344 F. Supp. 2d 923 (D. Del. Nov. 16, 2004) . . . . . . . . . . . 17

Delaware State College v. Ricks,
    449 U.S. 250 (1980) . . . . . . . . . . . 15

Hishon v. King & Spalding,
    467 U.S. 69 (1984) . . . . . . . . . . . 9

Igwe v. E.I. DuPont de Nemours & Co., Inc.,
    2005 WL 1965777 (D. Del. Jan. 26, 2005) . . . . . . . . . . . 10, 11

Jordan v. Fox, Rothschild, O'Brien & Frankel,
    20 F.3d 1250 (3d Cir. 1994) . . . . . . . . . . . 9

RLF1-2873668-1

Kipnis v. Baram,
    949 F. Supp. 618 (N.D. Ill. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Knott-Ellis v. Delaware Department of Correction,
    2001 WL 935621 (D. Del. Aug. 3, 2001) . . . . . . . . . . . . . . . . . . . . . 10

McDonnell Douglas Corp.,
    411 U.S. at 802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Miree v. DeKalb County, GA.,
    433 U.S. 25 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Morning v. Polytech School District,
    1998 WL 958259 (D. Del. Dec. 29, 1998) . . . . . . . . . . . . . . . . . . . . 17

Oatway v. American International Group, Inc.,
    2002 WL 187512 (D. Del. Feb. 5, 2002) . . . . . . . . . . . . . . . . . . . . . 17

Oshiver v. Levin, Fishbein, Sedran & Berman,
    38 F.3d 1380 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Pittsburgh v. W. Penn Power Co.,
    147 F.3d 256 (3d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Plummer v. Tisch,
    1989 WL 141388 (D.D.C. Aug. 31, 1989) . . . . . . . . . . . . . . . . . . . . 12

Reed v. Hewlett-Packard Co.,
    2001 WL 65725 (D. Del. Jan. 12, 2001) . . . . . . . . . . . . . . . . . . . . . 16

Venture Associate Corp. v. Zenith Data System Corp.,
    987 F. 429 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Walden v. Watkins,
    1996 WL 477020 (9th Cir. Aug. 21, 1996) . . . . . . . . . . . . . . . . . . . . 12

Washington v. State,
    2003 WL 21697403 (D. Del. July 17, 2003) . . . . . . . . . . . . . . . . . . . 10

White v. Padgett,
    475 F.2d 79 (5th Cir. 1973), cert. denied, 414, U.S. 861 (1973) . . . . . . . 16

## STATUTES AND OTHER AUTHORITIES

42 U.S.C. § 2000e-(5)(2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
28 U.S.C. § 1367(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed. R. Civ. P. 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

19 <u>Del. C.</u> § 712 (d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

19 <u>Del. C.</u> § 712 (c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Moore's Federal Practice 3D § 10.05[4] . . . . . . . . . . . . . . . . . . . . . . 4

Charles A. Wright & Arthur R. Miller,
    <u>Federal Practice & Procedure</u>, 5A § 1357 (2d ed. 1990) . . . . . . . . . . . 9

RLF1-2873668-1

## NATURE AND STAGE OF PROCEEDING

On September 8, 2003, plaintiff Sidi M Cherkaoui ("Plaintiff") filed a charge of discrimination (the "Charge") against Household Retail Services with the Delaware Department of Labor (the "DDOL") and the Federal Equal Opportunity Commission (the "EEOC")   (See Complaint at Exhibit A) [1]  The Charge alleged that Plaintiff was discriminated against based on his national origin when he was "not award[ed] any type of financial consideration for an idea that [he] suggested and was in fact implemented in March of 2002 "  Id.

On July 30, 2004, the DDOL dismissed the Charge as unsubstantiated.   The DDOL found:

1    Charging Party's complaint is untimely in that he discovered the alleged acts of discrimination in March/April 2002, and in order for an employment discrimination complaint to be considered timely under the applicable laws, he would have needed to file his complaint within ninety days for a state complaint from the alleged date of harm and a maximum of three hundred days for a federal complaint

2    Respondent provided sufficient evidence to demonstrate that at least three other individuals submitted almost identical concepts for process improvement prior to Charging Party's submission in April/May 2000

(See Exhibit A attached hereto) [2]  In dismissing the Charge, the DDOL ultimately concluded that "Charging Party was unable to provide substantive evidence to support his allegations of employment discrimination based upon national origin   Respondent provided a legitimate non-discriminatory reason for its actions and supported its position with substantive evidence "  Id.

On January 3, 2005, the EEOC adopted the DDOL's decisions, dismissing the Charge and issuing notice of suit rights  (See Complaint at Exhibit B)  Notwithstanding the DDOL and

-------------------------------------------

[1] The Complaint can be found at D I  1

[2] As the EEOC decision (see Complaint at Exhibit B) adopted the findings of the DDOL, the DDOL decision is incorporated by reference and is therefore attached at Exhibit A hereto.

EEOC's determinations, on March 24, 2005, Plaintiff filed a complaint (the "Complaint") against defendants HSBC Pay Services Inc ("Pay Services"), HSBC Finance Corporation ("Finance Corporation") and Household International Inc ("Household") (collectively, "HSBC"). The Complaint was brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") for alleged employment discrimination and for related common law claims (Complaint at ¶ 1). Specifically, Count I is a claim for discrimination based on national origin, Count II is a claim for common law fraud or deceit, Count III is a claim for breach of contract, Count IV is a claim for quantum meruit, Count V is a claim for promissory estoppel, and Count VI is a claim for breach of the implied covenant of good faith and fair dealing. (See generally Complaint).

HSBC now moves to dismiss the Complaint in its entirety. This is HSBC's opening brief in support of its motion.

2

## SUMMARY OF THE ARGUMENT

1       Plaintiff's Complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff's Title VII claim, the only claim giving this Court jurisdiction, fails to plead a cognizable "adverse employment action" to sustain the claim. Failure to compensate an employee for an idea submitted as part of an employer's voluntary employee suggestion program – a program by no means tied to the employee's job – does not constitute an "adverse employment action" pursuant to Title VII.

2       Assuming, *arguendo,* that Plaintiff's failure to plead an "adverse employment action" does not operate as a bar to the instant action, the Title VII claim must nevertheless be dismissed for its evident untimeliness.

3       To the extent Plaintiff's Title VII claim is dismissed, the entire Complaint should be dismissed for lack of pendent jurisdiction over the remaining state law claims.

3

## STATEMENT OF THE FACTS

Plaintiff, a resident of New Castle County, Delaware, is a former Collections Department Unit Manager who began his employment with Household Retail Services, Inc. ("Retail Services"), a subsidiary of Household, on April 10, 1989 [3]  (Complaint at ¶ 1; Complaint at Exhibit A)

In April 2000, Plaintiff approached Household with an idea that would allow Household's customers to make automatic check payments by telephone. (Complaint at Exhibit A)  In May 2000, Plaintiff attended a meeting to discuss implementing the automated check system  Id. At the meeting a draft script from which the system would work was discussed  Id.

In March 2002, Retail Services began to use a system for automatic check payments  Id. That same month, Plaintiff submitted an idea under Household's Winning Ideas Now ("WIN") program  Id. at ¶ 11  (See Exhibit B attached hereto, the WIN submission for March 8, 2002) [4]

---

[3] As a result of a merger in 2004, Household became Finance Corporation.  Pay Services is a wholly owned subsidiary of Finance Corporation.  All named defendants are Delaware corporations

[4] A written instrument not formally attached to a pleading may be offered by a party in support of a motion to dismiss the pleading without converting the same to a motion for summary judgment  Moore's Federal Practice 3D § 10 05[4]  A court will consider such a written instrument when it is referred to in the pleading subject to the motion to dismiss, and if the writing is central to the pleader's claim for relief  Id.  See also, Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F 2d 429, 431 (7th Cir 1993) (letters attached to motion to dismiss complaint constitute part of complaint only if referred to in complaint and central to plaintiff's claims for relief); Cortec Indus., Inc. v. Sum Holding L.P., 949 F 2d 42, 48 (2d Cir 1991) (even though documents attached to motion to dismiss were neither exhibits to complaint nor incorporated by reference therein, court entitled to consider them because they were documents in plaintiffs' possession or about which plaintiffs had knowledge, and "they were integral to plaintiffs' claim"), In re Burlington Coat Factory Sec. Litig., 114 F 3d 1410, 1426 (3d Cir 1997) (stating an exception to the general rule that a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings when a "document integral to or explicitly relied upon in the complaint  without converting the motion [to dismiss] into one for summary judgment") (Continued)

WIN was Household's decentralized employee suggestion program, begun in December 1996, that recognized employees for their valuable ideas. (Complaint at ¶ 10). (See also Exhibit C attached hereto, the WIN guidelines). As a decentralized program, managers generally had the discretion to determine how best to recommend and award ideas. Id. Not all ideas submitted to Household as part of the WIN program were compensated. In fact, the suggestion form was clear about the types of ideas that "tend[ed]" to be adopted. (See Exhibit B). Likewise, the WIN guidelines, posted on Household's intranet, were clear: "As a decentralized program, managers have the discretion to determine how best to recommend and award ideas keeping the WIN guidelines in mind." (See Exhibit C) (emphasis added).

Nothing about the WIN program "promised" to compensate employees as Plaintiff alleges. (Complaint at ¶¶ 10-11, 39). The WIN program specified the following:

- Household International reserves the right to withdraw or change the system and to vary the procedure for handling suggestions at any time

- The fact that a suggestion shows savings or profit does not obligate the company in any way to adopt the suggestion

- All decisions made by the company under the system including those regarding eligibility, adoption, rejection or award, are final and binding upon the suggester

(Exhibit C). Further, the WIN program was clear that in submitting an idea, the employee was agreeing to the following disclaimer:

---

The rationale underlying this rule is that the primary problem raised by looking to documents outside the complaint – lack of notice to the plaintiff – is dissipated "[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426 (citations omitted). Here, Plaintiff's WIN submission is undeniably central to his claims for relief. (See Complaint at ¶ 11). Thus, Plaintiff's March 8, 2002 submission is attached at Exhibit B hereto. Likewise, the WIN guidelines, pursuant to which the WIN submission was made and which Plaintiff contests the application of (see Complaint at ¶¶ 12-3, 17, 22), have also been attached at Exhibit C hereto.

5

> I have read the rules of this program as stated in the WIN Program Overview and agree to be bound by the program guidelines  I hereby assign all my rights to my idea to Household International in accordance with the rules of the employee suggestion system  I understand Household International has sole, exclusive right to determine the amount of the award  I acknowledge that all ideas submitted become the exclusive property of Household International  I also agree that Household International can amend the system at any time and has the right to determine all policies regarding eligibility of participants and ideas

Id. (emphasis added)

On June 21, 2002, Household implemented its "Great Ideas" program  (Complaint at ¶ 18)  (See Exhibit D attached hereto, the Great Ideas guidelines) [5]  Great Ideas replaced the WIN program as Household's new centralized employee suggestion program that recognized employees for their valuable ideas  (Complaint at ¶ 18)  The Great Ideas program was different from the WIN program in that it was not administered through the managers, but rather ideas were sent electronically to an Employee Idea Coordinator in Household's Employee Coordination Department who would forward the submission to the proper key manager/subject matter expert for review  (Exhibit D)  Despite these changes regarding the processing of suggestions, the Great Ideas program modeled its rules and guidelines after the WIN program  Like the WIN program, nothing about the Great Ideas program "promised" to compensate Plaintiff as he alleges  (Complaint at ¶ 39)  The Great Ideas program guidelines posted on Household's intranet contain the following disclaimer, almost identical to the one used for the WIN program:

> I have read the rules of this program as stated in the Great Ideas Program Overview and agree to be bound by the program guidelines  I hereby assign all my rights to my idea to Household in accordance with the rules of the employee

---

[5] See note 4 supra  As with Plaintiff's WIN submission, Plaintiff's submission under the Great Ideas program is central to his claims for relief (see Complaint at ¶ 18) and has therefore been attached hereto (Exhibit E), along with the Great Ideas guidelines that Plaintiff alleges were not properly followed (see Complaint at ¶¶ 18, 20, 22) (Exhibit D)

suggestion program. I acknowledge that all ideas submitted become the exclusive property of Household. <u>I understand Household has the sole, exclusive right to determine the amount of the award, and all decisions are final. I also agree that Household can amend the program at any time and has the right to determine all policies regarding eligibility of participants and ideas.</u>

(Exhibit D) (emphasis added). Further, general information about Great Ideas provided to all employees included:

- The fact that a suggestion shows a savings or generates revenues does not obligate the company in any way to adopt the suggestion

- All decisions made by the company under the program, including those regarding eligibility, adoption, rejection or award, are final and binding upon the employee

- This program and awards thereunder shall not give any employee any right to continued employment and does not constitute a contract of employment. Management reserves the right to amend, suspend or terminate this program at any time.

<u>Id.</u>

In April 2003, Plaintiff again submitted the idea, this time under the Great Ideas program (Complaint at ¶ 18). (See Exhibit E attached hereto, the Great Ideas submission). On June 11, 2003, Jennifer L. Fell, then Household's Employee Idea Coordinator, sent an e-mail to Plaintiff stating that he would not be compensated for his submission. (Complaint at ¶ 21). (See Exhibit F attached hereto, the June 11, 2003 e-mail)[6] Among other things, the denial was based on the fact that the idea Plaintiff submitted mirrored a Standard Project Request (an "SPR") previously submitted. (Exhibit F) (See also Complaint at Exhibit A) (stating that via the June 11, 2003 e-mail, Plaintiff was informed "that the idea that submitted 'was coincidental' . . . 'mirrored an SPR submitted by the Customer Service Department' . . . [and] that other business units had this

---

[6] See note 4 supra. Plaintiff in his Complaint references and relies upon the June 11, 2003 e-mail, yet does not attach it to the Complaint. (See Complaint at ¶ 21). HSBC has thus attached the June 11, 2003 e-mail at Exhibit F hereto.

type of system in place 'in the 90's,' and that therefore, my idea was not an original idea since it was out in the business units prior, and that no award would be warranted")

On September 8, 2003, Plaintiff filed the Charge  (Complaint at ¶ 28)  Plaintiff resigned from his job as of April 16, 2004 for reasons separate from his allegations in the Charge and Complaint  Id. at ¶ 27  On July 30, 2004, the DDOL dismissed the Charge as unsubstantiated (id. at ¶ 29), finding that "Respondent provided sufficient evidence to demonstrate that at least three other individuals submitted almost identical concepts for process improvement prior to Charging Party's submission in April/May 2000 "  (Exhibit A)  The DDOL further noted that

> Charging Party's Complaint is untimely in that he discovered the alleged acts of discrimination in March/April 2002, and in order for an employment discrimination complaint to be considered timely under the applicable laws, he would have needed to file his complaint within ninety days for a state complaint from the alleged date of harm and a maximum of three hundred days for a federal complaint

Id.  On January 3, 2005, the EEOC adopted the DDOL's determinations and issued notice to Plaintiff of his right to sue  (Complaint at ¶ 29; Complaint at Exhibit B)  On March 24, 2005, Plaintiff filed the Complaint, which HSBC seeks to dismiss in its entirety

8

## ARGUMENT

**I.    STANDARD FOR A RULE 12(B)(6) MOTION TO DISMISS.**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court is required to accept as true all allegations in the plaintiff's complaint, and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See* Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). The question is whether the claimant can prove any set of facts consistent with his allegations that will entitle him to relief, not whether that person will ultimately prevail. *See* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). While a court may accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences or sweeping legal conclusions cast in the form of factual allegations. *See* Miree v. DeKalb County, GA., 433 U.S. 25, 27, n.2 (1977). Moreover, the claimant must set forth sufficient information to outline the elements of his claims or to permit inferences to be drawn that these elements exist. *See* Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 45-6 (1957). The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the pleading, and matters of public record. *See* Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 at 299 (2d ed. 1990). *See also* note 4 *supra*.

**II.    PLAINTIFF'S TITLE VII CLAIM MUST BE DISMISSED.**

### A.    Plaintiff Has Not Suffered An Adverse Employment Action Pursuant To Title VII.

Plaintiff has not pled, nor can he establish, a *prima facie* case that he has suffered an "adverse employment action" pursuant to Title VII. Plaintiff alleges that because of his national

9

origin, he was not compensated for an idea submitted to Household under its employee suggestion programs, WIN and Great Ideas   (Complaint at ¶ 24)   Any failure of Household, however, to compensate Plaintiff for the idea he submitted does not constitute an "adverse employment action" pursuant to Title VII, and as such Plaintiff's Title VII claim must be dismissed

The United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u> set forth a three-step burden-shifting analysis for Title VII employment discrimination claims   411 U S 792, 802 (1973)   First, a plaintiff has the initial burden of establishing a *prima facie* case of discrimination   <u>Id.</u> This is done by showing that the plaintiff:  (1) is a member of a protected class; (2) was qualified for the position; (3) <u>suffered an adverse employment action;</u> and (4) was treated differently than employees who are not members of his protected class   <u>Id.</u>

The Supreme Court has defined an "adverse employment action" as a "<u>significant change in employment status,</u> such as hiring, firing, failing to promote, reassignment    or a decision causing a significant change in benefits "   <u>Burlington Indus. Inc. v. Ellerth,</u> 524 U S 742, 749 (1998) (emphasis added)   <u>See Bell v. Waste Management,</u> 2004 WL 2451416, at *4 (D  Del Oct  29, 2004) (alleging race discrimination);[7] <u>Igwe v. E.I. DuPont de Nemours & Co.,</u> 2005 WL 196577 at *3 (D  Del  Jan  26, 2005) (alleging four causes of action including discrimination on the basis of race and national origin in violation of Title VII); <u>Washington v. State,</u> 2003 WL 21697403, at *3 (D  Del  July 17, 2003) (alleging a race discrimination claim )   <u>See also Knott-Ellis v. Delaware Dept. of Correction,</u> 2001 WL 935621, at *3 (D  Del  Aug  3, 2001) (granting defendants' motion to dismiss in part because plaintiff did not suffer an "adverse employment action")   In other words, as noted by the Court in <u>Igwe v. E.I. DuPont de Nemours & Co., Inc.,</u>

---

[7] All unreported cases are attached alphabetically at Exhibit G hereto

10

to suffer an "adverse employment action" pursuant to Title VII, a plaintiff employee must show a significant change in "compensation, benefits, and core job duties." 2005 WL 1965777, at *3 (although the plaintiff was put on disciplinary probation, he did not offer evidence to show how this action significantly changed his benefits) (emphasis added)

Here, Plaintiff does not allege that he suffered an adverse change in his compensation, benefits or core job duties. Plaintiff only alleges that he was not compensated for an idea he submitted to Household as part of its voluntary suggestion programs. (Complaint at ¶ 24) However, failure to compensate an employee for a suggestion submitted as part of a nonwork-based suggestion program does not constitute an adverse employment action.

For example, in Kipnis v. Baram, on a motion to dismiss for failure to state a claim, the court held that the refusal of an employer to increase its $500 award to an employee for a cost-saving suggestion was not an adverse action for purposes of an employee's Title VII retaliation claim. 949 F. Supp. 618, 624-25 (N.D. Ill. 1996). The employer had an award program designed to reward employees for their cost-saving suggestions. Id. at 621. The employer, like Household, had guidelines for determining the amount of employee awards based on the amount of money that the employer would save in the first year after the suggestion was implemented. Id. Supplemental awards were to be paid if suggestions were adopted outside the region. Id. Pursuant to the program, an employee made a suggestion and received a $500 award for the suggestion. Id. The employee, however, was asked to address certain concerns about his suggestion, and did so. Id. Despite the employee's additional work, the amount of his award was not increased. Id.

The Kipnis court held the employer's refusal to increase its award to the employee could only be considered an adverse action if the employee was automatically entitled to a higher

11

award  Id. at 624  Like Household, the employer had specific guidelines for determining awards for those suggestions that were adopted  Id.  The employee's suggestion was only adopted in part, due to certain flaws  Id.  The employee claimed to have addressed these flaws but submitted no evidence that his improvements satisfactorily corrected the problems  Id. at 624-25  The award program regulations stated that even for those regulations that are fully adopted, "not all adopted suggestions are eligible for an award "  Id. at 625  The employee did not demonstrate that his employer was required to award him any specific amount more than the $500 he received  Id.  Importantly, as the employee was not automatically entitled to a higher bonus, there was no adverse action  Id.  See also Walden v. Watkins, 1996 WL 477020, at *5 (9th Cir  Aug  21, 1996) (agreeing with the district court's decision that denial of a cash award pursuant to a company suggestion program was merely discretionary and did not adversely affect the terms or conditions of the employee's employment)

Likewise, in Plummer v. Tisch, the court held that an employee failed to establish a *prima facie* case of race or sex discrimination with regard to his claim that his employer failed to award him compensation and recognition for a suggestion he submitted that was ultimately put into effect  1989 WL 141388, at *5 (D D C  Aug  31, 1989)  In so ruling, the court noted that the employer, like Household, had already made plans to take the actions that the employee recommended prior to the submission of his suggestion  Id.  Such plans clearly constituted a legitimate reason for the employer's actions sufficient to rebut any presumption of discrimination raised by the employee  Id.  Further, the employee failed to allege in the complaint, or offer any admissible evidence, that similarly situated individuals not of his protected class were treated differently with respect to the submission of suggestions  Id.

As in <u>Kipnis</u>, neither the WIN nor Great Ideas program guaranteed that Plaintiff would be compensated for any idea submitted   The WIN guidelines were clear that "the fact that a suggestion shows savings or profit <u>does not</u> obligate the company in any way to adopt the suggestion," and "<u>[a]ll decisions</u> made by the Company under the system including those <u>regarding eligibility, adoption, rejection or award, are final and binding, upon the suggester</u>" (<u>See</u> Exhibit C) (emphasis added)   Likewise, the Great Ideas disclaimer language that all participants were subject to was clear that "<u>Household [had] the sole, exclusive right to determine the amount of the award, and all decisions are final</u>"  (<u>See</u> Exhibit D) (emphasis added)   Further, both programs were voluntary suggestion programs, completely separate and apart from Plaintiff's job duties   Participation was in no way required of Plaintiff or any Household employee for that matter   Nor did participation in either program equate to any core job benefit such as promotion or higher salary   In fact, nothing in the Complaint alleges that Plaintiff suffered any adverse effect to any core job benefit as a result of Household's denials of his WIN and Great Ideas submissions

Further, and equally important, Plaintiff, like the plaintiff in <u>Plummer</u>, has failed to plead facts of individuals not of his protected class who were treated differently   Plaintiff's allegation that "HRS failed to process [his] claim in accordance with the procedures which it applied to other employees, of American descent, under the WIN Program" is insufficient  (Complaint at ¶ 12)  (<u>See also</u> Complaint at ¶¶ 15, 20, 24)   Plaintiff does not, nor can he, point to any comparator who was treated better than him with respect to either program   The sole reason the idea Plaintiff submitted was not rewarded was that Household was already aware of the technology at the times Plaintiff presented it to Household  (<u>See</u> Exhibit F; Complaint at Exhibit A)   As in <u>Plummer</u>, Household was aware of the automated check system prior to Plaintiff's

13

WIN and Great Ideas submissions  (Exhibit F)  In fact, such an idea was presented by other Household employees as early as February 2000, and the technology was used by Household in the late 1990s  Id.  Household thus had a legitimate business reason for not rewarding Plaintiff for his submissions

**B.      Plaintiff's Title VII Claim Is Barred By The Applicable Statute Of Limitations.**

Assuming, *arguendo,* that Plaintiff's failure to suffer an adverse employment action does not operate as a bar to the instant action, Plaintiff's Complaint must nevertheless be dismissed for its evident untimeliness  Plaintiff's Title VII claim is based upon discriminatory conduct by Household purportedly occurring as late as March/April 2002  (See Complaint at Exhibit A) Plaintiff admits that during this time frame he knew that "the idea [he submitted] was implemented" and discovered "that the program was financially lucrative "  Id.  Importantly, it is at that time that Plaintiff alleges that "he discovered documentation regarding the idea, which tended to prove he was entitled to compensation for the idea "  (Complaint at ¶ 17)  As noted by the DDOL, this is when Plaintiff discovered the alleged act of discrimination – that he would not be compensated for his submission  (Exhibit A)

In order to state a viable Title VII claim, a plaintiff, in a state (such as Delaware) that has a statute and an agency authorized to prevent employment discrimination, must file a charge of discrimination with the EEOC within 300 days of the last alleged unlawful employment practice See 42 U S C  § 2000e-(5)(e)(1)(2003); see also Burgh v. Borough Council, 251 F 3d 465, 470 (3d Cir  2001); Benjamin v. E.I. DuPont de Nemours & Co., 2001 U S  Dist  LEXIS 17904, at *4 (Del  2001) (finding that plaintiff in deferral state, like Delaware, has 300-day filing period, regardless of whether state administrative complaint was filed within 180 days after alleged discrimination)  Likewise, pursuant to 19 Del. C. § 712(d), a charge "must be filed within 90

14

days after the alleged unlawful employment practice or 120 days after discovery thereof." 19 Del. C. § 712(d)[8]  Without question, Plaintiff's September 8, 2003 Charge is grossly beyond the 90-day and 300-day limitation periods, a fact supported by the DDOL's prompt dismissal of Plaintiff's Charge as untimely  (See Exhibit A)  Plaintiff discovered the alleged acts of discrimination in March/April 2002, at the very latest, but did not file the Charge until over a year later[9]

The EEOC's service of Plaintiff's notice of rights does not extend the previous filing deadline for his private right of action  Indeed, if the Court permits Plaintiff to proceed with his current claim, then aggrieved employees would have license to circumvent the statutory limitations periods simply by filing a belated charge of discrimination  Surely Title VII and the limitation periods contained therein were not crafted to achieve such a result  Delaware State College v. Ricks, 449 U S  250, 256-57 (1980) ("[L]imitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past ") (citing Johnson v. Ry. Express Agency, Inc., 421 U S  454, 463-64 (1975) and United Air

---

[8] Section 712 was amended effective September 10, 2004 to provide for 120 days for a charge to be brought before the DDOL  See 19 Del. C. § 712(c)(1)  However, because the Charge was filed a year before Section 712 was amended, in September 2003, Plaintiff was required to bring his Charge within 90 days of the alleged unlawful employment practice, but did not

[9] Plaintiff's resubmission of the idea under the Great Ideas program did not extend the time for him to bring a charge, as the idea he submitted was exactly the same idea submitted under the WIN program  Plaintiff's March 8, 2002 WIN submission proposed to "set up a VRU Check By Phone to better help serve our customers 365 days a year " (Exhibit B)  Likewise, Plaintiff's April 2003 Great Idea submission proposed to "accommodate our customers 24/7, 365 days a year thro [sic] the automated VRU Check by Phone " (Exhibit E)  In fact, Plaintiff relates his Great Ideas submission back to his discussions with Household in 2000 about the idea that he later submitted to WIN  Id.

15

Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977))  See also Reed v. Hewlett-Packard Co., 2001 WL 65725 at *3, n.1 (D. Del. Jan. 12, 2001)

Further, although a statute of limitations defense is an affirmative one, it can serve as the basis for dismissal under Fed. R. Civ. P. 12(b)(6) when the bar of the statute clearly appears on the face of the complaint.  White v. Padgett, 475 F.2d 79, 82 (5th Cir. 1973); Burkhardt v. Liberty, 394 F. Supp. 1296, 1298 (W.D. Pa. 1975), aff'd, 530 F.2d 963 (3d Cir. 1976) (TABLE). Here, the temporal defects associated with Plaintiff's Title VII claim are insurmountable and are clear from the Complaint itself.  Plaintiff first raised the idea with Household in April 2000 (Complaint at Exhibit A).  By March/April 2002, at the very latest, Plaintiff knew that the idea he submitted would not be compensated, id., but did not file the Charge until over a year later (Complaint at ¶ 28).  (See also Exhibit A) (finding that Plaintiff's Charge was untimely in that he discovered the alleged acts of discrimination in March/April 2002).  In fact, Plaintiff admits that after he submitted the idea under the WIN program, before he resubmitted the idea under the Great Ideas program, he knew that Household was not going to compensate him for the idea (See Complaint at ¶ 17).  Thus, there is no question that Plaintiff's Title VII claim is untimely, and therefore, his Complaint must be dismissed.

### III.    TO THE EXTENT PLAINTIFF'S TITLE VII CLAIM IS DISMISSED, THE ENTIRE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION OVER THE REMAINING STATE LAW CLAIMS.

To the extent Plaintiff's Title VII claim is dismissed, the entire Complaint should be dismissed for lack of subject matter jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(c)(3) (the district court may decline to exercise supplemental jurisdiction over a state law claim if "the district court had dismissed all claims over which it has original jurisdiction").  See Carrion v. City of Wilmington, 2005 WL 83598 (D. Del. Jan. 7, 2004) (declining to exercise supplemental jurisdiction over state law claims when federal claims were dismissed); Boardley

16

v. Fist Correctional Med., 2004 WL 2980727 (D Del Dec 21, 2004) (same); Curay-Cramer v.
Ursuline Academy of Wilmington, Delaware, Inc., 344 F Supp 2d 923 (D Del Nov 16, 2004)
(same); Oatway v. American Int'l Group, Inc., 2002 WL 187512 (D Del Feb 5, 2002) aff'd,
325 F 3d 184 (3d Cir 2000) (same) The Court has original jurisdiction over Plaintiff's Title VII
claim pursuant to 28 U S C § 1331 This Court has recognized the general rule in the Third
Circuit that "where the claim over which the district court has original jurisdiction is dismissed
before trial, the district court must decline to decide the pendent state claims unless
considerations of judicial economy, convenience, and fairness to the parties provide an
affirmative justification for doing so" Morning v. Polytech School District, 1998 WL 957259,
at *14 (D Del Dec 29, 1998) (quoting Borough of West Mifflin v. Lancaster, 45 F 3d 780, 788
(3d Cir 1995)) When a cause of action is in its early stages, such as on a motion to dismiss, as
is the case here, such considerations are not raised See Boardley, 2004 WL 2980727 (on motion
to dismiss); Curay-Cramer, 344 F Supp 2d 923 (same); Oatway, 2002 WL 187512 (same)

For example, in Curay-Cramer, an employee who was terminated after she lent her name
to an advertisement in support of abortion rights asserted Title VII claims and state law claims
against multiple defendants, including her employer 344 F Supp 2d 923 After dismissing the
employee's federal claims, the Court acknowledged that "[t]he only basis to consider those
claims in this court is      the supplemental jurisdiction provided in 28 U S C § 1367" Id. at
935 The Court went on to note that since the employee's federal claims were dismissed, it was
within the Court's discretion to retain jurisdiction over the state claims Id. In deciding against
retaining jurisdiction, the Court reasoned that "[b]ecause the Defendants' motions to dismiss
were filed early in the case, the parties have not invested significant resources in litigating the
State Claims in this forum" Id. at 936

Likewise, here the parties have not yet invested significant resources in litigating Plaintiff's state law claims in the District Court  Plaintiff only recently filed the Complaint that HSBC now seeks to dismiss  No documents have been exchanged nor depositions taken  In fact, a scheduling order has yet to be entered in the case  Because this case is still in the early stages of litigation, Plaintiff's state law claims should be dismissed along with Plaintiff's Title VII claim

## CONCLUSION

For the foregoing reasons, the Court should grant HSBC's motion and dismiss Plaintiff's Complaint in its entirety with prejudice

Jennifer C  Jauffret (#3689)
jauffret@rlf com
Alyssa M  Schwartz (#4351)
schwartz@rlf com
Richards, Layton & Finger
One Rodney Square
P O  Box 551
Wilmington, DE  19899


Attorneys for Defendants
HSBC Pay Services, Inc , HSBC Finance
Corporation and Household International, Inc

Dated:  May 11, 2005

18