

Not Reported in F Supp

1989 WL 141388 (D D C ), 50 Fair Empl Prac Cas. (BNA) 1795

**(Cite as: 1989 WL 141388 (D.D.C.))**

Page 1

United States District Court, District of Columbia
Paul PLUMMER, Plaintiff
v
Preston R  TISCH, Postmaster General, Defendant
**CIV. A. No. 87-2489.**

Aug  31, 1989
Paul Plummer, plaintiff pro se

Michael L  Martinez, Asst  U S  Atty , Office of
U S  Attorney, Washington, D C , for defendant

*MEMORANDUM OPINION*

THOMAS F  HOGAN, District Judge

**\*1** This Title VII action is before the Court on
defendant's unopposed motion for summary
judgment.

Plaintiff brings this action under Title VII of the
Civil Rights Act of 1964, as amended by the Equal
Employment Opportunity Act of 1972, 42 U S C §§
2000e to 2000e-17, which proscribes employment
discrimination on account of race, color, religion,
sex, and national origin  In his complaint, plaintiff
Paul Plummer, proceeding *pro se,* alleges, *inter alia,*
that defendant Preston R  Tisch, Postmaster
General of the United States Post Office,
discriminated against him "on the basis of race, sex,
and as an act of reprisal" for prior claims that
plaintiff filed with the Equal Employment
Opportunity Commission (hereinafter "EEOC")
Complaint at 1  Plaintiff contends that as a result
of such discrimination and retaliation, he was not
permitted to sign up for the "overtime desired list"
and he was denied recognition and compensation
for a suggestion he submitted to the Post Office's
"suggestion program" that the Post Office
ultimately utilized  *Id.* at 2

In his complaint, plaintiff originally demanded
judgment, in the amount of $7,777,777,777,777 77,

against the Postmaster General, the United States
Attorney General, and the United States Attorney
for the District of Columbia, as well as any of the
defendants' agents for whom there is evidence of
wrongdoing  By Order dated August 25, 1988, this
Court dismissed the complaint insofar as defendants
were being sued in their individual capacities and
insofar as the Attorney General and the United
States Attorney for the District of Columbia were
being sued in their official capacities  *Plummer v
Tisch,* No  87-2489 (D D C  Aug  25, 1988)  Thus,
the only issues left to be decided by this Court are
plaintiff's claims against the Postmaster General, in
his official capacity, brought under Title VII of the
Civil Rights Act of 1964

In defendant's unopposed motion for summary
judgment, filed April 27, 1989, defendant argues
that plaintiff has failed to establish a *prima facie*
case of discrimination based on race or sex  In
addition, defendant argues that plaintiff has failed to
establish the requisite elements of a retaliation
claim based on plaintiff's prior EEO activities.
Alternatively, defendant contends that even if
plaintiff has established a *prima facie* case in each
of his claims, they have been rebutted by
defendant's articulation of legitimate,
non-discriminatory reasons for his actions, and
defendant is entitled to judgment on the merits.
For the reasons stated below, the Court shall grant
defendant's motion for summary judgment and
dismiss this action

*I  BACKGROUND*
Plaintiff Paul Plummer is a caucasian male who
was employed as a Distribution Clerk at the
Washington, D C  Post Office of the United States
Postal Service, beginning in 1968  Since 1975,
plaintiff has engaged in a series of disputes with
both supervisors and subordinates, and plaintiff has
been disciplined on several occasions  In October
1981, plaintiff filed a complaint in the United States
District Court for the District of Columbia against

© 2005 Thomson/West  No Claim to Orig  U S  Govt  Works.

1989 WL 141388 (D D C ), 50 Fair Empl Prac Cas (BNA) 1795

**(Cite as: 1989 WL 141388 (D.D.C.))**

the Postmaster General, then William F. Bolger, alleging discrimination under Title VII After trial the court entered judgment for defendant *Plummer v Bolger,* 559 F Supp 324 (D D C 1983) (Richey, J) Plummer appealed, and the United States Court of Appeals for the District of Columbia Circuit affirmed the District Court ruling *Plummer v. Bolger,* 721 F 2d 1424 (D C Cir 1983) [FN1]

**\*2** Meanwhile, plaintiff continued to experience problems with others at work and was finally removed from postal employment in April 1984 [FN2] An arbitrator upheld plaintiff's removal in April, 1985 Defendant's Exhibit B (case # EIC-2D-D 19101) In the period between plaintiff's removal and the arbitrator's ruling, plaintiff was in a non-pay, non-duty status Defendant's Exhibit A, Attachment A (EEOC Recommended Decision, EEOC Case No 033-085-x5373, Agency Case No 2-2-395-5, at 4)

During the twelve month interval, plaintiff filed two complaints with the EEOC In his first complaint, filed on December 5, 1984, plaintiff alleged that the Post Office wrongfully prohibited him from signing up for the overtime desired list. In his second complaint, filed on January 1, 1985, plaintiff alleged that the Post Office wrongfully failed to give him recognition and compensation for a suggestion that he made to the Post Office which was ultimately put into effect In both claims, plaintiff alleged discrimination on the basis of race and sex, and reprisal for filing prior EEO complaints in 1976 and 1984 On December 2, 1985, a hearing was held on both matters and the Hearing Examiner issued recommended decisions finding that there was no evidence in the record to support either of plaintiff's complaints Defendant's Exhibit A, Attachment A (EEOC Recommended Decision, EEOC Case No 033-085-x5373, Agency Case No 2-2-0395-5, July 16, 1987) and Attachment B (EEOC Recommended Decision, EEOC Case No 033-085-x5402, Agency Case No 2- 2-0537-5, July 16, 1987) The recommended decision were adopted by the Postal Service as the final agency decisions on July 28, 1987 It is from the two final decisions that plaintiff brings the instant action

### II. DISCUSSION

Summary judgment is appropriate when there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law " Fed R Civ P 56 The party moving for summary judgment has the burden of demonstrating that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U S 242, 256 (1986) However, the party opposing summary judgment must present "affirmative evidence" in order to defeat a properly supported summary judgment motion. *Id* at 257 Naked allegations included in the complaint will not suffice *Celotex Corp v Catrett,* 477 U S 317, 324 (1986) To oppose such a motion successfully, the party "must set forth specific facts showing that there is a genuine issue for trial " Fed R Civ P 56(e) But if such party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial[,]" then rule 56(c) mandates that summary judgment must be granted *Celotex,* 477 U S at 322 Summary Judgment is appropriate in the instant action as plaintiff has failed to establish the existence of essential elements of his discrimination and retaliatory treatment claims

#### A Elements of Discrimination and Reprisal Claims

**\*3** In Title VII race and sex discrimination cases, the plaintiff bears the burden of establishing a *prima facie* case of disparate treatment under the standard set forth by the Supreme Court in *McDonnel Douglas Corp v Green,* 411 U S 792 (1973) In *McDonnel Douglas* the Supreme Court held that to satisfy this burden in a discriminatory hiring claim, a plaintiff must establish the following elements as part of his *prima facie* case of racial discrimination:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications

© 2005 Thomson/West No Claim to Orig U S Govt Works

1989 WL 141388 (D D C ), 50 Fair Empl Prac Cas (BNA) 1795

**(Cite as: 1989 WL 141388 (D.D.C.))**

*Id* at 802. These elements have been modified to apply to disparate treatment cases such as that presented by plaintiff *Id* at 802 n 13 Accordingly, in order to establish a *prima facie* case of race and sex discrimination in the instant action, plaintiff must produce evidence showing that he is a member of a protected class and that he was adversely treated, while others similarly situated but not of the protected class were dissimilarly treated [FN3] *See McDonald v Santa Fe Trail Transp. Co*, 427 U S 273 (1976) Moreover, plaintiff "carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act'" *Furnco Const Corp v. Waters*, 438 U S 567, 576 (1978) (quoting *Teamsters v. United States,* 431 U S 324, 358 (1977)).

Similarly, plaintiff must establish a *prima facie* case with respect to his reprisal claims To establish a *prima facie* case in a retaliatory treatment claim, plaintiff must show: (1) that he engaged in protected activities; (2) that his employer was aware of the protected activities; and (3) that shortly after plaintiff's performance of the activities his employer treated him in a manner enabling the court to infer retaliatory motivation *Gonzalez v. Bolger,* 486 F Supp 595, 601 (D D C 1980) (discharged postal employee's claim of retaliatory discrimination held invalid), *aff'd,* 656 F 2d 899 (D C Cir 1981).

Once plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to rebut the presumption of discrimination by articulating a legitimate, non-discriminatory reason for his action. *McDonnel Douglas Corp v Green,* 411 U.S. at 802. Here, defendant's burden is one of production, not persuasion The Postmaster General need only produce evidence of permissible reasons for his actions; he need not prove that he was motivated by non-discriminatory considerations *Texas Department of Community Affairs v. Burdine,* 450 U S 248, 254 (1981). Once defendant rebuts plaintiff's *prima facie* case, the burden then shifts back to the plaintiff to

produce evidence that the reasons articulated by the defendant are merely pretextual *Furnco Const. Corp v. Waters,* 438 U.S. 567 The ultimate burden of persuasion therefore rests with the plaintiff to prove that he was the victim of intentional discrimination *Texas Department of Community Affairs v Burdine,* 450 U S at 256

**\*4** Thus, in order to defeat a motion for summary judgment in a discrimination or retaliatory treatment case, a plaintiff may not merely rely on the presentment of a *prima facie* case unless, of course, there is no evidence to the contrary *See Skelton v Action,* 668 F Supp 25, 29-30 (D D C 1987) (mere allegations of discrimination held insufficient to defeat defendant's properly supported motion for summary judgment in age discrimination case), *aff'd,* 49 Fair Empl Prac. Cas (BNA) 96. *See also Steckl v Motorola, Inc,* 703 F 2d 392, 393-394 (9th Cir 1983) ("[T]he use of summary procedures is proper in appropriate discrimination actions even while the plaintiff has established a prima facie case.") Moreover, if a defendant articulates a legitimate, non-discriminatory reason for the challenged action, then the plaintiff "must tender a genuine issue of material fact as to pretext in order to avoid summary judgment." *Id* at 393.

*B. Plaintiff's Overtime Desired List Claim*

Plaintiff has failed to establish a *prima facie* case of race or sex discrimination with respect to his claim that he was wrongfully prohibited from signing up for the Post Office's overtime desired list When plaintiff attempted to sign up for the overtime desired list plaintiff was in a non-pay, non-duty status, pending final action on his removal notice. Plaintiff, however, offers no evidence, either in his complaint or in the administrative record, of non-white or female individuals who were similarly situated and who were permitted to sign the list Plaintiff, therefore, has failed to establish any evidence of disparate treatment, the central element of a *prima facie* case of race and sex discrimination

Moreover, even if plaintiff had successfully established a *prima facie* case, defendant offers

© 2005 Thomson/West No Claim to Orig U S Govt Works

Not Reported in F Supp.                                                                 Page 4

1989 WL 141388 (D.D.C.), 50 Fair Empl Prac Cas. (BNA) 1795

**(Cite as: 1989 WL 141388 (D.D.C.))**

sufficient, legitimate reasons for his actions to rebut any presumption of discrimination. Defendant contends that pursuant to the postal workers' collective bargaining agreement, employees in non-pay, non-duty status are not eligible to sign the overtime desired list. Defendant's Exhibit A, Attachment A (references to National Agreement) Such a contractual agreement clearly constitutes a permissible, non-discriminatory rationale for defendants actions sufficient to rebut any presumption of discrimination. Finally, plaintiff offers no evidence indicating that defendant's alleged reliance on the labor agreement is a pretext for discrimination.

Furthermore, plaintiff has failed to prove a *prima facie* case of retaliatory treatment with respect to his claim that he was prohibited from signing the overtime desired list. Nowhere in the complaint or in the administrative record does plaintiff offer any evidence that individuals responsible for compiling the overtime desired list were aware of plaintiff's prior EEO activities. In addition, plaintiff has provided no evidence of defendant's actions with regard to the list from which the court could reasonably infer retaliatory motivation. Moreover, as in plaintiff's race and sex discrimination claims, even if plaintiff had successfully established a *prima facie* case of retaliatory treatment, defendant has successfully articulated a legitimate, permissible reason for its actions, and plaintiff has failed to offer any evidence that defendant's claim of adherence to the collective bargaining agreement is a pretext for retaliatory treatment.

*5 Plaintiff has thus failed to establish that defendant discriminated against him on the basis of race, sex, or as an act of reprisal, when plaintiff was prohibited from signing the overtime desired list. Plaintiff has also failed to raise any genuine issues of material fact concerning the pretextual nature of defendant's allegations that could preclude a ruling on the merits at this time. Therefore, the Court shall grant defendant's motion for summary judgment with respect to plaintiff's claims of discrimination and reprisal relating to plaintiff's exclusion from the overtime desired list.

*C. Plaintiff's Suggestions Program Claim*

Similarly, plaintiff has failed to establish a *prima facie* case of race or sex discrimination with regard to his claim that defendant failed to award him compensation and recognition for a suggestion he submitted to the Postal Service that was ultimately put into effect. [FN4] As with his overtime list discrimination claim, plaintiff has failed to allege in his complaint, or offer any admissible evidence, [FN5] that similarly situated individuals not of his protected class were treated differently with respect to the submission of suggestions. [FN6]

Moreover, in defendant's motion for summary judgment, defendant notes that the Postal Service had already made plans to take the actions that plaintiff recommended prior to plaintiff's submission of his suggestion. Such plans clearly constitute a legitimate reason for defendant's actions sufficient to rebut any presumption of discrimination raised by plaintiff. Finally, plaintiff has failed to produce any evidence showing that the reason defendant offers for his actions is a pretext masking underlying discriminatory motives.

Finally, plaintiff has failed to establish a *prima facie* case of reprisal with respect to his claim that he was not compensated for his suggestion in retaliation for his prior EEO activities. Plaintiff has offered no evidence showing that members of the suggestion awards committee had knowledge of plaintiff's prior EEO activities. [FN7] Moreover, even if plaintiff had establish a *prima facie* case, defendant has adequately rebutted any presumption of discrimination in its statement that it refused to recognize and compensate plaintiff for his suggestion because the Post Office had already decided to implement the idea. Memorandum in Support of Defendant's Motion for Summary Judgment at 10. Finally, plaintiff has offered no evidence of pretext, and has thus failed to show that he was not compensated for his suggestion as a result of retaliation for his prior EEO activities.

*III. CONCLUSION*

In accordance with the forgoing, defendant is entitled to judgment as a matter of law. The Court

© 2005 Thomson/West. No Claim to Orig. U S. Govt. Works

Not Reported in F. Supp.

1989 WL 141388 (D.D.C.), 50 Fair Empl.Prac.Cas. (BNA) 1795

**(Cite as: 1989 WL 141388 (D.D.C.))**

Page 5

finds that plaintiff has failed to establish a *prima facie* case of race or sex discrimination and retaliatory treatment with respect to both of his claims. Furthermore, notwithstanding plaintiff's failure to establish a *prima facie* case in each claim, the Court finds that defendant has articulated a legitimate reasons for its actions, and plaintiff has failed to provide any evidence that defendant's reasons are merely pretexts for impermissible discriminatory or retaliatory motives. The Court shall grant defendant's motion for summary judgment and dismiss this case.

**\*6** An Order is accordance with the foregoing shall be issued herewith.

### ORDER

This matter is before the Court on defendant's motion for summary judgment. In accordance with the Memorandum Opinion issued herewith, it is this 30th day of August, 1989,

ORDERED that

(1) defendant's motion for summary judgment is hereby GRANTED; and

(2) this case is hereby DISMISSED.

> FN1. Plummer moved to reopen the case in January 1986, alleging that he had new evidence and that fraud had occurred during trial. The Court, however, denied his motion *Plummer v. Casey,* No. 81-2464 (D.D.C. June 4, 1986).

> FN2. Plaintiff did not file an EEO complaint regarding his removal.

> FN3. It makes no difference that plaintiff is white. Title VII prohibits discrimination against a white person upon the same standards as would be applicable to a black person. *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. at 280. This Circuit has allowed majority plaintiffs to rely on the *McDonnel Douglas* criteria to prove a *prima facie* case of disparate

treatment "when background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Parker v. Baltimore and Ohio R.R.,* 652 F.2d 1012, 1017 (D.C.Cir.1981)

> FN4. In his Recommended Decision, the administrative law judge (hereinafter "ALJ") found that in September 1983, plaintiff submitted to the Incentive Awards Program an Employee Suggestion concerning the operation of the Flat Sorting Machine, Alabama Zip Code 351. He suggested that this zip code be applicable to all mail destined for the State of Alabama. The ALJ found, however, that plaintiff's suggestion was previously offered by another employee and had already been implemented in February 1980. Defendant's Exhibit A, Attachment B (EEOC Recommended Decision, EEOC Case No. 033-085-x5402, Agency Case No. 2-2-0537-5, at 3-5).

> FN5. The only material in the record relating to suggestions submitted by female and non-white employees is contained in the EEOC investigatory file submitted by defendant. Generally, the factual matter contained in an agency's investigatory file is inadmissible hearsay. *See, Hackley v. Roudebush,* 520 F.2d 108, 156-57 n. 195 (D.C.Cir 1975).

> FN6. The Court notes that the ALJ in the EEO proceedings determined that plaintiff had established a *prima facie* case of discrimination on the basis of race because appeals from denials of awards were granted to Black employees, but not to White employees. Fifteen suggestions received during 1984 were adopted. Eleven employee suggestion denials were appealed, eight appeals were denied (5 White females, 3 White males) and three suggestions were subsequently adopted (1 Black male, 2 Black females). I.R., Ex.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F. Supp.                                                                 Page 6

1989 WL 141388 (D.D.C.), 50 Fair Empl Prac Cas. (BNA) 1795

**(Cite as: 1989 WL 141388 (D.D.C.))**

          8-10, 12, 15
          Defendant's Exhibit A, Attachment B
          (EEOC Recommended Decision, EEOC
          Case No. 033-085-x5402, Agency Case
          No 2-2-0537-5, at 4) Nevertheless, the
          ALJ ultimately found that the Post Office
          had articulated a legitimate reason for its
          actions and recommended holding *against*
          plaintiff on the merits, stating:
          Complainant failed to demonstrate by a
          preponderance of the evidence that he was
          treated differently from others who
          submitted suggestions to the Management
          Committee . [N]one of the Committee
          members had knowledge of Complainant's
          race, sex or prior EEO activity. Finally,
          the Agency articulated a legitimate,
          nondiscriminatory reason for the rejection
          of Complainant's suggestions, and
          accordingly, Complainant cannot prevail
          *Id.* at 5-6. While the Court may give
          deference to the ALJ's findings, they are
          not binding on this Court in the instant *de*
          *novo* review of plaintiff's claims
          *Alexander v. Garner-Denver Co.,* 415 U.S.
          36, 60 (1974) ("The federal court should
          consider the employee's claim *de novo* ")

          FN7 Upon review of the investigatory
          record the ALJ similarly found that
          "Complainant [has] not shown that the
          seven members of the Awards Committee
          had any knowledge of Complainant's
          previous EEO activity." Defendant's
          Exhibit A, Attachment B (EEOC
          Recommended Decision, EEOC Case No.
          033-085-x5402, Agency Case No
          2-2-0537-5, at 5).

1989 WL 141388 (D.D.C.), 50 Fair
Empl Prac Cas. (BNA) 1795

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works



Not Reported in F Supp 2d

2001 WL 65725 (D Del )

**(Cite as: 2001 WL 65725 (D.Del.))**

Page 1

Only the Westlaw citation is currently available

United States District Court, D. Delaware
P Robert REED, Plaintiff,
v
HEWLETT-PACKARD CO Defendant
**No. Civ.A. 98-582-GMS.**

Jan 12, 2001

Gary W Aber, Heiman, Aber & Goldlust Wilmington, DE, for Plaintiff

Steven J Balick, Steven T Margolin, Ashby & Geddes, Wilmington, DE , for Defendants

*MEMORANDUM AND ORDER*

SLEET, J.

**\*1** Plaintiff, P. Robert Reed ("Reed"), filed suit against his former employer, Hewlett-Packard, Inc ("Hewlett-Packard"), alleging that Hewlett-Packard violated Title VII of the Civil Rights Act of 1964, 42 U S C. § 2000(e) et seq (1994) when it fired him. Presently before the court is Hewlett-Packard's motion to dismiss The court will deny Hewlett-Packard's motion to dismiss because Reed timely filed his charge of discrimination within 300 days of the alleged discriminatory act

I FACTS

Reed was employed as an executive at Hewlett-Packard. He worked there for over twenty years before he was fired on April 23, 1997. According to Reed, over this time, he consistently received excellent reviews from his superiors. In essence, Reed claims that he was fired when he would not accept a promotion to a better position out of state in order to let a minority applicant who, in Reed's opinion, was less qualified take his job.

After being fired from Hewlett-Packard, Reed presented a written Charge of Discrimination to the Philadelphia District Office of the Equal Employment Opportunity Commission ("EEOC") on or about February 11, 1998 The Charge of Discrimination ("Charge") form includes a box that must be checked if plaintiffs are also filing the Charge form with a state agency Reed did not check this box. The Charge form provides another space to indicate whether a claimant wishes to initiate proceedings with a state agency Reed's form also failed to indicate whether he wished to file his Charge with a state agency in this space as well

Reed then filed this action within ninety days of receiving a Right to Sue Letter Reed claims that Hewlett-Packard engaged in employment discrimination by firing him in violation of 42 U S C § 2000e et seq. and that Hewlett-Packard breached its covenant of good faith and fair dealing with him Reed seeks declaratory, injunctive, and monetary relief In its answer, Hewlett-Packard raised a number of affirmative defenses The one most relevant to the motion before the court is whether Reed filed a charge of discrimination with the EEOC in a timely manner.

II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted. Fed R Civ P 12(b)(6). The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint *Rogan v. Giant Eagle, Inc* 113 F Supp 2d 777, 780 (W D. Pa 2000) In deciding a motion to dismiss, the court must accept as true all well-pleaded allegations of the complaint and view the complaint's averments in the light most favorable to the plaintiff *See Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F 3d 1250, 1261 (3d Cir 1994) A complaint may be dismissed only

© 2005 Thomson/West No Claim to Orig U S Govt Works

Not Reported in F.Supp.2d

2001 WL 65725 (D.Del.)

**(Cite as: 2001 WL 65725 (D.Del.))**

where no relief could be granted under any set of facts that could be proved consistent with the allegations *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

**\*2** In Title VII cases, claims are properly presented to the court only after administrative remedies have been exhausted *See Anjelino v. New York Times,* 200 F.3d 73, 87 (3d Cir.1999). In particular, if a plaintiff has not exhausted administrative remedies before bringing suit, then a Rule 12(b)(6) motion is appropriate. *See Anjelino,* 200 F.3d at 87; *Robinson v. Dalton,* 107 F.3d 1018, 1022 (3d Cir.1997). Thus, the statute of limitations may be the basis of a motion to dismiss, provided the complaint on its face shows noncompliance with the applicable limitations period and the affirmative defense clearly appears on the face of the pleading *Rogan v. Giant Eagle, Inc.* 113 F.Supp.2d 777, 780-81 (W.D.Pa 2000)(citing *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.1 (3d Cir.1994))

Before addressing the merits of Hewlett-Packard's motion, the court must determine whether any extrinsic documents may be properly considered in deciding this motion to dismiss. In deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint, any exhibits attached to the complaint, and matters of public record. *Pension Benefit Guaranty Corp. v. White,* 998 F.2d 1192, 1196 (3d Cir.1993). If a court considers extrinsic matters outside of the pleadings, the motion must be converted to a summary judgment motion and the parties must be given notice of this conversion in order to conduct discovery. *Rose v. Bartle,* 871 F.2d 331, 340 (3d Cir.1989). There is an exception to the general rule, however, which is premised on the theory that when a complaint relies on a document, the plaintiff is clearly on notice as to its contents and the need for an opportunity to refute the evidence is diminished. *Pension Benefit,* 998 F.2d at 1196-97. Here Reed's Charge of Discrimination form is both integral to his complaint and a matter of public record. Because a discrimination plaintiff cannot "sustain a court claim without showing resort to the avenue of administrative relief," this court will consider the

Charge of Discrimination form filed by Reed *Arizmendi v. Lawson,* 914 F.Supp. 1157, 1161 (E.D.Pa 1996); *see also Oshiver,* 38 F.3d at 1384, n.2; *Rogan v. Giant Eagle, Inc.,* 113 F.Supp.2d at 782 (considering EEOC charge and related EEOC documents)

The court now turns to the substance of Hewlett-Packard's motion to dismiss

## III. DISCUSSION

In this case, there is no factual dispute regarding Reed's actions in filing a charge with the Equal Employment Opportunity Commission ("EEOC"). According to Reed's complaint, he was fired on April 23, 1997, and filed his Charge with the EEOC on February 11, 1998. Based on these dates, Reed filed his Charge 294 days after he was terminated. In filing the Charge, Reed did not check the box referring the Charge to the State nor did he indicate that he wanted to file the Charge with the State in another space provided for that purpose. Despite Reed's failure to designate that his Charge be sent to the State, the EEOC still forwarded a copy of Reed's Charge to the state in accordance with its own procedures

**\*3** Hewlett-Packard argues that because Reed did not indicate his intent to file the Charge with the State, he only filed with the EEOC. Thus, Hewlett-Packard contends that because Reed actually failed to initiate proceedings with the State within 180 days of his termination, he should not receive the benefit of the 300 day filing period

In contrast, Reed argues that based on his residence in a deferral state, he is either automatically entitled to the 300 day deadline, or that by filing a Charge with the EEOC, he automatically filed a Charge with the State as well. In the alternative, Reed argues that if he is not entitled to the 300 day deadline, his claim should be equitably tolled because he did not actually know he was discriminated against until after his termination. The court will first address whether Reed is entitled to the 300 day deadline. [FN1]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 3

2001 WL 65725 (D.Del.)

**(Cite as: 2001 WL 65725 (D.Del.))**

FN1 Reed also contends that, as a layperson, he should not be penalized by Title VII's complex procedural requirements. The court is aware of the intricacies of Title VII litigation. *See Davis v. Calgon Corp.*, 627 F.2d 674, 676 (3d Cir.1980) (describing Title VII as a "statutory scheme in which laymen, unassisted by trained lawyers, initiate the process"). Although Reed's argument is not without merit, the court must also consider the purpose of Title VII filing deadlines. The "statutory period is designed to protect individuals' civil rights and at the same time ensure employers will not be burdened by defending claims arising from employment actions that occurred in the distant past." *Parker v. State of Delaware Dept. Of Pub. Safety*, 11 F.Supp.2d 467, 472- 73 (D.Del.1998) (citations omitted). After considering the purpose of the statute and the facts of this case, the court concludes that Reed's status as a lay person is, by itself, an insufficient basis upon which to find that he is entitled to the benefit of the 300 day filing period. The conclusion that Reed's lay status alone does not dictate a different result is further supported by the Supreme Court's observation in *Mohasco Corporation v. Silver*, 447 U.S. 807, 825 (1980), that "[w]e believe that a lay person would be more apt to regard the general obligation of filing within 180 days as the standard of diligence he must satisfy, and that one who carefully read the entire section would understand it to mean exactly what it says."

A. Appropriate Filing Deadline

As a general matter, a claim of employment discrimination under Title VII must be filed with the EEOC within 180 days of the last alleged discriminatory act. 42 U.S.C. § 2000e-5(e) (1994). There is, however, an exception to this 180 day filing period. If the charging party "initially instituted proceedings with a State or local agency" the party will be entitled to a 300 day filing period.

*Id.* [FN2]

FN2 42 U.S.C. § 2000e-5(e) states, in pertinent part: "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in a case of unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e).

Title VII provides a deferral period that provides authorized state or local agencies time to remedy the alleged violations. 42 U.S.C. § 2000e-5(c) (1994). Specifically, no charge may be filed with the EEOC until 60 days after the initial filing with an authorized state or local agency. Thus, a charge must be filed with, or referred by the EEOC to, an authorized state or local agency within 240 days of the last alleged discriminatory act. *See Mohasco Corp. v. Silver*, 447 U.S. 807, 814, n. 16 (1980); *see also EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 111 (1988). In addition, even if the charging party fails to file within 240 days, the party's charge may still be timely filed if the state or local agency terminates its proceedings before 300 days. *Id.* at 111-12.

In this case, it is not disputed that Delaware is a deferral state that is authorized to remedy violations under Title VII. *See Berry v. E.I. Dupont de Nemours & Co.*, 625 F.Supp. 1364, 1374 (D.Del.1985). A deferral state is a state or subdivision "which has a State or local law prohibiting the practice alleged and establishing or authorizing the state or local authority to grant or seek relief" from practices prohibited under Title VII. *Serendinski v. Clifton Precision Products, Co.*, 776 F.2d 56, 61 (3d Cir.1985) (quoting 42 U.S.C. §

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F Supp 2d

2001 WL 65725 (D Del )

**(Cite as: 2001 WL 65725 (D.Del.))**

Page 4

2000e-5(d)) In Delaware, the state agency authorized to receive and adjudicate charges of discrimination under Title VII is the Delaware Department of Labor (DDOL) *See* 29 C F R § 1601 74 Under a Worksharing Agreement between the DDOL and the EEOC, the DDOL has waived its right of exclusive jurisdiction for charges originally received by the EEOC *See* 29 C F R § 1601 13(a)(3)(iii) [FN3]

> FN3 29 C F R § 1601 13 reads in pertinent part: "Where the document on its face constitutes a charge within a category of charges over which the FEP agency has waived its rights to the period of exclusive processing, the charge is deemed to be filed with the Commission upon receipt of the document Such filing is timely if the charge is received within 300 days from the date of the alleged violation " 29 C F R § 1601 13(a)(4)(ii)(A)

*4 In this case, the parties do not dispute these general guidelines for filing discrimination charges Here, the parties disagree as to whether Reed is entitled to the 300 day filing period where he did not initiate proceedings with the DDOL, and the DDOL did not expressly terminate its jurisdiction over Reed's claim The plaintiff maintains that under the worksharing agreement, the DDOL has appointed the EEOC as its agent for the filing of complaints, and under that same agreement, the DDOL has waived its initial jurisdiction Hewlett-Packard maintains, however, that the waiver under the worksharing agreement does not automatically entitle Reed to the longer filing period The defendant asserts this position in the face of clear Third Circuit case law that seems to compel the court to apply the 300 day filing period

In a *per curiam* decision, the Third Circuit adopted a blanket 300-day rule, stating that a "plaintiff in a deferral state is entitled to the extended period [300 days] regardless of whether he has filed a state administrative complaint with 180 days after the alleged discrimination occurred." *Davis v. Calgon Corp.*, 627 F 2d 674, 677 (3d Cir 1980) (citing *Bean v. Crocker Nat'l Bank*, 600 F 2d 754, 757-59

(9th Cir 1979)) [FN4] Although the plaintiff in *Davis* filed his complaint under the Age Discrimination in Employment Act ("ADEA"), 29 U S C § 621 *et seq* (1994), the appellate court looked to the Supreme Court's decision in a Title VII case, *Mohasco*, 447 U S at 814, for guidance *See Davis*, 627 F 2d at 677 [FN5]

> FN4 The First Circuit also applied a blanket 300 day filing deadline in light of *Mohasco* stating that "Mohasco strongly suggests, if it does not compel," that the "300-day filing period is to be allowed regardless of a claimant's failure to seek a state administrative remedy within 180 days " *Ciccone v. Textron, Inc.*, 651 F 2d 1 (1st Cir 1981) (citing *Davis v. Calgon Corp.*, 627 F 2d 674 (3d Cir 1980)

> FN5 Although Hewlett-Packard attempts to argue that ADEA cases like *Davis* are inapposite to the present case, the court is not persuaded by this argument In *Oshiver v. Levin, Fishbein, Sedran & Berman* the court noted that "[w]hile *Davis* was brought under the Age Discrimination in Employment Act of 1967 ("ADEA"), Title VII and the ADEA have been given parallel constructions due to their similarities in purpose and structure " 38 F 3d 1380,*1385 n 4 (citing *Oscar Mayer & Co v. Evans*, 441 U S 750, 756 (1979) and *Kocian v. Getty Refining & Marketing Co*, 707 F 2d 748, 752 n 3 & n 4 (3d Cir 1983)) *See also EEOC v. Commercial Products Co.*, 486 U S at 123 ("filing provisions of the ADEA and Title VII are 'virtually in haec verba'"); *Ricks v. Delaware State College*, 605 F 2d 710, 712 (3d Cir 1979)

In 1991, the Third Circuit affirmed the *Davis* decision in *Colgan v. Fisher Scientific Co*, 935 F 2d 1407, 1414 (3d Cir 1991) "Thus, we adhere to our holding in *Davis v Calgon Corp.* in which an ADEA case we held that 'a plaintiff in a deferral state is entitled to the extended period [of 300 days] regardless of whether he has filed a state

© 2005 Thomson/West No Claim to Orig U S. Govt Works

Not Reported in F Supp 2d

2001 WL 65725 (D Del )

**(Cite as: 2001 WL 65725 (D.Del.))**

administrative complaint within 180 days after the alleged discrimination occurred " *Id* *Colgan* also expressly overruled *Kocian v Getty Refining & Marketing Co*, 707 F 2d 748, 752 (3d Cir 1983), which held that the 300-day limitations period is available to a litigant in a deferral state only when the EEOC or the litigant has instituted state or local proceedings *See* 935 F.2d at 1414 The court overruled *Kocian* because that case had been decided prior to the adoption of 29 C.F.R § 1601 13(a)(4), which provides for deferral of an EEOC complaint to an authorized state agency *Id* at 1415

The Supreme Court has also addressed this issue in *E.E.O.C. v Commercial Products Co*, 486 U S 107 (1988) Specifically, the issue before the Court was whether "a state agency's waiver of the 60-day deferral period, pursuant to a worksharing agreement with the EEOC, constitutes a 'termination' of its proceedings so as to permit the EEOC to deem a charge filed and to begin to process it immediately " 486 U S at 112 The Court held that a waiver pursuant to a worksharing agreement does terminate proceedings and thus, the EEOC can deem the charge filed *Id* at 125

**\*5** Although Hewlett-Packard attempts to distinguish the present case from *E.E.O.C* by pointing out factual distinctions between the cases, the defendant's argument is not persuasive The *E.E.O.C* Court expressly stated that it was guided by the purpose and legislative history of Title VII in holding that when a deferral state waives its right to exclusive jurisdiction under a worksharing agreement, the waiver constitutes a termination of state proceedings and the 300 day filing period applies *Id* at 116-121 (discussing the legislative history and purpose of the deferral provisions of Title VII) In fact the Court states that not applying the 300 day filing period to claims like Reed's, that is claims filed more than 240 days but less than 300 days in worksharing states, would lead to "absurd or futile results ... 'plainly at variance with the policy of the legislation as a whole " ' *Id* (citations omitted)

IV CONCLUSION

After having carefully considered the submitted materials, the appropriate principles of law, and the contentions of the parties, the court will deny Hewlett-Packard's motion to dismiss because Reed is entitled to the 300 day filing period under Third Circuit and Supreme Court precedent Because the court rules that Reed is entitled to the longer filing period, it will not address Reed's equitable tolling argument

For these reasons, IT IS HEREBY ORDERED that:

1 The defendant's Motion to Dismiss is DENIED

2001 WL 65725 (D Del )

END OF DOCUMENT

© 2005 Thomson/West No Claim to Orig U S Govt Works



95 F 3d 1160 (Table)                                                                                                    Page 1

95 F 3d 1160 (Table), 1996 WL 477020 (9th Cir (Wash ))
**Unpublished Disposition**

**(Cite as: 95 F.3d 1160, 1996 WL 477020 (9th Cir.(Wash.)))**

**Briefs and Other Related Documents**

NOTICE: THIS IS AN UNPUBLISHED
OPINION

(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing in
the Federal Reporter Use FI CTA9 Rule 36-3 for
rules regarding the citation of unpublished
opinions )

United States Court of Appeals, Ninth Circuit
Joy WALDEN, Plaintiff-Appellant,
v
James D WATKINS, Secretary of United States
Department of Energy, Defendant-
Appellee
**No. 94-36146.**

Argued and Submitted Feb 8, 1996
Decided Aug 21, 1996

Appeal from the United States District Court, for
the Western District of Washington, D C No
CV-93-00582-PKS; Philip K Sweigert, District
Judge, Presiding

W D Wash

AFFIRMED

Before: HALL and TROTT, Circuit Judges, and
RAFEEDIE, District Judge [FN*]

> FN* The Honorable Edward Rafeedie,
> United States District Judge for the Central
> District of California, sitting by
> designation

MEMORANDUM [FN**]

FN** This disposition is not appropriate
for publication and may not be cited to or
by the courts of this circuit except as
provided by Ninth Circuit Rule 36-3

OVERVIEW
**1 Joy Walden (Walden) brought suit against the
Bonneville Power Administration (BPA), an agency
in the Department of Energy, claiming that: 1) BPA
had discriminated against her when it established
her pay grade at a lower level than similarly situated
males and had applied stricter standards for the
advancement of women; and 2) BPA had retaliated
against her for filing a sex discrimination complaint
by denying her a monetary award for a money
saving suggestion she made and by admonishing her
for personal use of an office computer The district
court granted summary judgment in the
Government's favor on the discrimination and the
retaliation claims Following the district court's
grant of summary judgment, Walden moved the
court for relief from judgment based on newly
discovered evidence The district court denied this
motion, finding that the new evidence was
immaterial We affirm the district court's grant of
summary judgment and its denial of Walden's
motion for relief from judgment [FN1]

> FN1 To the extent that Walden asks this
> court to reclassify her position to a higher
> pay scale, judicial review is not
> appropriate because she did not properly
> appeal the reclassification decision and
> exhaust her administrative remedies *See
> Karamanos v Egger,* 882 F 2d 447, 451
> (9th Cir 1989) (holding that the Civil
> Service Reform Act provides the remedy
> for improper reclassification decisions)

STANDARD OF REVIEW
A grant of summary judgment is reviewed de novo

© 2005 Thomson/West No Claim to Orig U S Govt Works

95 F.3d 1160 (Table)                                                                                    Page 2

95 F.3d 1160 (Table), 1996 WL 477020 (9th Cir.(Wash.))
**Unpublished Disposition**

**(Cite as: 95 F.3d 1160, 1996 WL 477020 (9th Cir.(Wash.)))**

*Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 116 S.Ct. 1261 (1996). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether any genuine issues of material fact exist and whether the district court correctly applied the relevant substantive law. *Id.*

The district court's denial of a motion for relief from judgment is reviewed for an abuse of discretion. *Export Group v. Reef Indus., Inc.,* 54 F.3d 1466, 1469 (9th Cir.1995).

DISCUSSION

I

Claims of Sex Discrimination

Title VII prohibits an employer's discrimination "against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). In *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248 (1981), the Supreme Court set forth the basic allocation of the burdens of proof in a Title VII case alleging discriminatory treatment:

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Id.* at 252-53.

Walden, who is responsible for the Non-Electrical Plant Maintenance (NEPM) for BPA in the Puget Sound region, is classified as a GS-11 employee. [FN2] Walden claims that she was discriminated against because: 1) males with the same responsibility are paid more; and 2) the BPA applied more onerous standards for her advancement than it did to male employees.

FN2. Walden lists the employees responsible for NEPM:
Puget Sound Area: Joy Walden, Facility Management Specialist (GS-11); and Dick Winter, Assistant Operations Superintendent (GS-13)
Upper Columbia Area: Philip Prince, Assistant Operations Superintendent (GS-13)
Snake River Area: Bill Farrow, Assistant Operations Superintendent (GS-13)
Lower Columbia Area: John Straub, Buildings and Grounds Manager (GS-12); Malcolm Slaughter, Assistant Operations Superintendent (GS-13); Paul Martin, Facility Manager (GS-11); and Richard Clark, Facility Manager (GS-11)

*A. Ms. Ciraulo's Statement as Evidence of Discrimination*

**\*\*2** Walden offers as evidence of discrimination a statement allegedly made by Marlene Ciraulo (Ciraulo), the BPA supervisor who performed Walden's job audit and recommended her classification as a GS-11. Walden claims that when she asked Ciraulo why her position would not be classified as a GS-13, Ciraulo stated that "as a woman you need to sit back and bide your time." BPA controverts that this statement was made.

In *Schnidrig v. Columbia Machine, Inc.,* 80 F.3d 1406 (9th Cir.1996), in the context of an age discrimination claim, this court discussed the burdens of proof in a discrimination case. In that case, there were several alleged statements made by directors that the company wanted a president in the 45-50 year old range (Schnidrig was 62 years old). The allegations of discrimination were supported by direct evidence in the form of affidavits and notes from board meetings reflecting that the discriminatory statements were made. The court in *Schnidrig* reversed summary judgment, pointing out that the standard to grant summary judgment in employment discrimination cases is a high one:

We require very little evidence to survive summary judgment in a discrimination case,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

95 F.3d 1160 (Table), 1996 WL 477020 (9th Cir.(Wash.))
**Unpublished Disposition**

**(Cite as: 95 F.3d 1160, 1996 WL 477020 (9th Cir.(Wash.)))**

because the ultimate question is one that can only be resolved through a "searching inquiry"--one that is most appropriately conducted by the fact finder, upon a full record.
80 F.3d at 1410.

However, Ciraulo's statement is not viewed in isolation. In *Schnidrig*, there were several alleged statements by directors indicating an intent to hire someone younger than the plaintiff. Here, on the other hand, there is the single statement by Ciraulo. *Compare Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir.1993) (comment to plaintiff by supervisor that "we don't necessarily like grey hair" was at best weak circumstantial evidence of discriminatory animus) and *Merrick v. Farmers Ins. Co.*, 892 F.2d 1434, 1438 (9th Cir.1990) ("stray remarks" insufficient to establish discrimination) *with Burns v. Gadsden State Community College*, 908 F.2d 1512, 1517-19 (11th Cir.1990) (finding that statement that "no woman would be named to a B scheduled job" was direct evidence of discriminatory motive when its author made the employment decision at issue). Thus, we must consider Ciraulo's statement in light of the other evidence in this case and in light of Walden's specific claims to determine whether Walden established a prima facie case of discrimination.

*B. Males with Same Responsibility Paid More* [FN3]

> FN3. Walden also argues that the men classified at the same pay grade have less responsibility than she does. That argument is simply a variation on the claim that males with the same responsibility are paid more. She cannot base an independent claim of sex discrimination on the ground that she was performing more duties than men receiving the same pay. Instead, the claim is properly framed as one where she is paid *less* than similarly situated males.

Walden claims that male employees with the same responsibilities receive higher compensation than

she does. "When a Title VII claimant contends that she has been denied equal pay for substantially equal work, as here, Equal Pay Act standards apply." *Foster v. Arcata Associates, Inc.*, 772 F.2d 1453, 1465 (9th Cir.1985). In *Foster*, this court explained:

> The Equal Pay Act standards require the plaintiff to bear the initial burden of showing that: 1) the work of the employees of one sex required the exercise of substantially equal skill, effort, and responsibility and was performed under working conditions similar to that of employees of the opposite sex; and 2) the pay of men and women was unequal.

**\*\*3** *Id.*

The Government argues, and the district court agreed, that the male employees with whom Walden compares herself have substantially different jobs with greater responsibilities than Walden. The Government points out:

> It is especially difficult to show wage based discrimination in the federal sector [because] wages are determined by the grade level assigned to a position, and the grade level is determined by a classification system. The wage is tied to the position not the person. All employees at the same grade level and step within the grade have the same salary, regardless of sex.

Red Brief pp. 21-22.

Here, Walden compares herself to the Assistant Operations Superintendents, Prince and Farrow (GS-13s), at two of the BPA facilities and to the Building Grounds Manager, Straub (GS-12), at the Ross Complex. In 1991, because she felt that she should be compensated at the level of her male comparators, Walden requested a reclassification of her pay grade. BPA management at the Puget Sound facility concluded that Walden's position as a Facility Management Specialist should be reclassified from a GS-9 to a GS-11 based on additional responsibilities related to new environmental issues. Because she was dissatisfied with the GS-11 classification, she requested that a desk audit be done. Ciraulo's desk audit determined that the GS-11 classification was

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

95 F 3d 1160 (Table)                                                                                    Page 4

95 F 3d 1160 (Table), 1996 WL 477020 (9th Cir (Wash ))
**Unpublished Disposition**

**(Cite as: 95 F.3d 1160, 1996 WL 477020 (9th Cir.(Wash.)))**

appropriate based on the job responsibilities of Walden's position as a Facility Management Specialist In making her determination and recommendation, Ciraulo consulted the Puget Sound Operations and Maintenance Manager and the Operations Superintendent They determined that Walden's position should be reclassified from GS-9 to GS-11 based on additional responsibilities resulting from new environmental issues

BPA alleges that the Assistant Operations Superintendents Farrow and Prince (GS-13 employees) have responsibilities in addition to their NEPM duties thereby justifying their higher pay grade The Department of Energy Investigative Report stated that they have operations duties in addition to their NEPM duties, such as overall planning and direction of area substation operations The report further noted that they had in depth knowledge and experience in electrical power transmission operating procedures and practices The report found Straub's position (GS-12) to be most similar to Walden's, but pointed out that the Ross Complex, at which Straub performs the primary NEPM functions, is much larger than the Puget Sound facility [FN4] The report emphasized that while Walden had only been employed with BPA for 10 1/2 years, Straub had been with BPA for 29 years, Prince had 22 years with BPA, and Farrow had 18 years with BPA The report also indicated that, unlike Walden, the men had at least some college education

> FN4 Also, as the BPA points out, Straub has also tried to have his position reclassified from GS-12 to GS-13, but has not been successful

Accordingly, Walden has not produced evidence indicating that her job responsibilities were equal to those of her male comparators Instead, the evidence shows that Walden's job duties and qualifications were less than, not equal to, those of the men at pay grades of GS-12 and GS-13 Thus, Walden failed to establish an essential element of her prima facie case of sex-based wage discrimination (i e , that her job was substantially

similar to higher paid males) Therefore, we affirm summary judgment in the Government's favor on this claim [FN5]

> FN5 Walden argues that she is not precluded from establishing sex-based wage discrimination under theories other than the equal work theory Based on *County of Washington v Gunther,* 452 U S 161 (1981), Walden can pursue wage discrimination claims under Title VII separate from a claim under the Equal Pay Act However, the heart of Walden's complaint is that she is paid less than men with substantially the same responsibilities Thus, it involves an equal work theory of discrimination, and is appropriately analyzed under the Equal Pay Act analysis *Foster,* 772 F 2d at 1465 Walden has not asserted different claims of discrimination, such as those described by the Supreme Court in *Gunther,* that give rise to a different analysis under Title VII

*C Stricter Standards for Advancement*

**\*\*4** Walden alleges that the BPA discriminated against women by setting stricter standards for the advancement of all women employees Specifically, she argues that while she had to request job audits in 1985 and in 1991 in order to be reclassified to higher levels of pay, BPA "automatically" reclassified the men with the NEPM responsibilities This claim has no merit

Walden began working at BPA in 1981 as an Administrative Technician at a GS-6 level, and in 1982 she was upgraded to a GS-7 In 1983, Walden assumed responsibility for the NEPM program in the Puget Sound Area as a Facility Management Specialist In 1985, following a job audit to determine her pay grade, she was promoted to a GS-9 In 1991, Walden again requested an increase in her pay grade classification Ciraulo performed the desk audit to determine the correct classification of Walden's position When Walden's position as the Facility Management

© 2005 Thomson/West No Claim to Orig U S Govt Works

95 F 3d 1160 (Table)

95 F 3d 1160 (Table), 1996 WL 477020 (9th Cir (Wash ))
**Unpublished Disposition**

**(Cite as: 95 F.3d 1160, 1996 WL 477020 (9th Cir.(Wash.)))**

Page 5

Specialist was upgraded to a GS-11 level, other employees with the same position and title were also upgraded to the GS-11 level. Thus, by requesting the job audits in 1985 and 1991, Walden chose to avail herself of one manner in which a grade increase can be achieved. And, since 1981, she went from a GS-6 employee to a GS-11 employee

However, nothing would preclude the BPA from reclassifying positions on their own initiative when positions changed and entailed new responsibilities, as in the case of the reclassification of the Assistant Operations Superintendents to the GS-13 level. Employees, male or female, may or may not have chosen to request job audits to achieve increases in pay level as did Walden. The fact that she requested job audits, while other positions had their pay grade increased without job audits, does not indicate discrimination.

In the same vein, Walden argues that after her job audit and subsequent reclassification from a GS-9 to GS-11, the male Facility Management Specialists were "automatically" reclassified, without having to request a job audit. The BPA explains that the men's "automatic" reclassification occurred because pay grades are assigned to a position and not a person. When Walden's position as a Facility Management Specialist was reclassified to the GS-11 level, all other Facility Management Specialists were also reclassified.

These facts do not indicate that it was easier for men to get pay grade increases. Instead, they simply show that the BPA has certain policies and procedures in place for upgrading positions. The BPA determined the appropriate pay level based on the position and its correlating responsibilities, not based on gender. Straub, the male employee in charge of the NEPM duties at the Ross Complex, had also tried unsuccessfully to have his position reclassified from GS-12 to GS-13. Thus, the facts alleged by Walden do not give rise to an inference that BPA intentionally discriminated against women by setting stricter standards for their advancement. Therefore, the district court correctly granted

summary judgment for the Government on this discrimination claim. [FN6]

> FN6 We could have examined the discrimination claims differently, and reached the same result. If we had determined, or assumed, that Walden had established her prima facie case, she still would not have survived summary judgment. As indicated above, the BPA offered extensive evidence of its legitimate reasons for grading Walden at the GS-11 level, which would have rebutted the prima facie case of discrimination. Walden did not offer evidence to show that these reasons were pretextual. Therefore, summary judgment would have been appropriate based on her failure to offer evidence refuting the legitimacy of the BPA's nondiscriminatory reasons. *See Wallis v. Simplot*, 26 F 3d 885, 890 (9th Cir 1994)

II
Retaliation Claims
**\*\*5** In order to establish a prima facie case of retaliation, Walden must show: 1) she engaged in an activity protected by Title VII; 2) her employer subjected her to an adverse employment action; and 3) a causal connection between the protected activity and the adverse action. *Jordan v. Clark*, 847 F 2d 1368, 1376 (9th Cir 1988), *cert. denied*, 488 U S 1006 (1989). Walden argues that she was retaliated against for filing her sex discrimination complaints when: 1) her supervisor denied her a monetary award for a suggestion she made pursuant to the BPA suggestion program; and 2) she received a written admonishment about her private use of a government computer.

*A Denial of Cash Award*

The district court found that BPA's denial of a cash award pursuant to the company suggestion program was not an "adverse employment action." *See Weber v. Department of the Army*, 9 F 3d 97, 100 (Fed Cir 1993) (refusal of an agency to adopt a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

95 F 3d 1160 (Table)                                                                                              Page 6

95 F 3d 1160 (Table), 1996 WL 477020 (9th Cir (Wash ))
**Unpublished Disposition**

**(Cite as: 95 F.3d 1160, 1996 WL 477020 (9th Cir.(Wash.)))**

suggestion was not a "personnel action") We agree with the district court. The award was merely discretionary and did not adversely affect the terms or conditions of her employment Furthermore, Walden did not establish a causal connection between her filing of the discrimination complaint and the denial of the cash award Instead, BPA explained the award was denied, not as an adverse action, but because Walden's suggestion was within the scope of her employment and did not qualify for an award Accordingly, the denial of the award did not constitute an "adverse employment action," and Walden failed to establish a prima facie case of retaliation. [FN7]

> FN7. Also, as explained by the district court, even if Walden had established a prima facie case of discrimination on this retaliation claim, the BPA offered a legitimate, nonretaliatory reason for withholding the award when it alleged that the suggestion was within the scope of her employment and did not qualify for receive an award. Walden produced no evidence suggesting that the Government's explanation was pretextual. Thus, summary judgment could have been sustained on these grounds See Wallis, 26 F 3d at 890

*B. Letter Admonishing Her for Personal Use of Computer*

The district court found that the letter also did not constitute an "adverse employment action" because it did not result in any consequences to Walden The memorandum was not placed in her personnel file and no disciplinary action was taken Consequently, the letter did not affect the terms or conditions of Walden's employment Therefore, again Walden did not sufficiently allege evidence establishing an "adverse employment action," an essential element of a retaliation claim. We affirm the district court's grant of summary judgment in favor of the Government on this claim.

III

**Relief from Judgment**

Walden moved the district court for relief from its grant of summary judgment for the Government based on newly discovered evidence Walden asserted that a proposed vacancy announcement for a new NEPM position at the GS-13 level indicated that the BPA's reasons for the difference in Walden's pay grade and that of her male comparators were pretextual. The district court found that the evidence of the vacancy announcement was immaterial, and it denied Walden's motion This court reviews the district court's denial of the motion for relief from judgment for an abuse of discretion *Export Group*, 54 F 3d at 1469

In order for Walden to establish that the district court abused its discretion when it refused to reopen the case based on newly discovered evidence, she must show that the newly discovered evidence is "of such magnitude that production of it earlier would have been likely to change the disposition of the case " *Coastal Transfer Co v. Toyota Motor Sales, U.S.A.*, 833 F 2d 208, 211 (9th Cir 1987) In response to Walden's motion for relief from judgment, BPA stated that it did consider creating a new NEPM position at a GS-13 level, but that it later decided against creating that position BPA contended that the GS-13 position, if it had been created, would not have been the same as Walden's GS-11 position as a Facility Management Specialist, but instead would involve additional responsibilities warranting the GS-13 classification. Also, the position location listed in the vacancy announcement listed several possible locations in Washington, so it was not restricted to the Puget Sound facilities

**6 Thus, the evidence about the possible creation of a new GS-13 position does not indicate that Walden was discriminated against because her position was classified at the GS-11 level The new position was not in fact created, and Walden can only speculate as to what the precise duties of that position would have been, where it would have been, and how it would have compared to her own position Walden has not shown that this new

© 2005 Thomson/West No Claim to Orig U.S. Govt Works.

95 F.3d 1160 (Table)

95 F.3d 1160 (Table), 1996 WL 477020 (9th Cir (Wash ))
**Unpublished Disposition**

**(Cite as: 95 F.3d 1160, 1996 WL 477020 (9th Cir.(Wash.)))**

evidence was material or that it would have changed
the disposition of the case. Therefore, the district
court did not abuse its discretion by denying
Walden's motion for relief from the judgment

AFFIRMED

95 F.3d 1160 (Table), 1996 WL 477020 (9th
Cir (Wash )) Unpublished Disposition

**Briefs and Other Related Documents (Back to
top)**

• (Appellate Brief) Reply Brief (Sep 21,
1995)Original Image of this Document (PDF)

• (Appellate Brief) Appellant's Brief (Jul 11,
1995)Original Image of this Document (PDF)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d

2003 WL 21697403 (D.Del.), 26 NDLR P 163

**(Cite as: 2003 WL 21697403 (D.Del.))**

Page 1

**Motions, Pleadings and Filings**

United States District Court,
D. Delaware.
Ana WASHINGTON, Plaintiff,
v.
STATE of Delaware/Supreme Court of Delaware,
Defendants.
**No. Civ.A.01-217-JJF.**

July 17, 2003
Ana M. Washington, pro se

Gregg E. Wilson, Deputy Attorney General,
Delaware Department of Justice, Wilmington,
Delaware, for Defendants.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Pending before the Court is Defendants' Motion
for Summary Judgment (D.I.52). For the reasons
discussed below, the Court will grant the Motion
(D.I.52).

BACKGROUND
Plaintiff Ana Washington, an African-American
female, was hired as a Senior Court Clerk by
Defendant Supreme Court of Delaware in October
1995. On December 15, 1999, Plaintiff filed a
charge of disability discrimination against her
employer with the Delaware Department of Labor
and the Equal Employment Opportunity
Commission ("EEOC"), and on January 11, 2000,
Plaintiff amended her charge to add a claim of
racial discrimination.

Plaintiff's disability claim stems from an April 8,
1997, ankle injury she suffered at work. Because of
the injury, Plaintiff was out of work for several
weeks. Plaintiff returned to work on light duty for a
period of time and eventually resumed her full
duties as a senior court clerk.

Plaintiff's racial discrimination claim is based on
several incidents. First, Plaintiff received a written
reprimand for failing to properly report her absence
from work on September 16, 1999. Plaintiff
contends the reprimand was unwarranted because
she followed the call off procedure in effect at the
time by leaving a voice-mail message prior to her
report time. Plaintiff filed an internal grievance
regarding the reprimand, and the reprimand was
upheld on December 23, 1999. The reprimand had
no effect on Plaintiff's pay, benefits, or conditions
of employment.

Second, Plaintiff received a written reprimand for
events that occurred on January 13 and January 14,
2000. On January 13, 2000, Plaintiff's husband
telephoned Plaintiff's supervisor, Cathy Howard, at
home between 4:00 a.m. and 5:30 a.m. to report that
Plaintiff would not be reporting to work due to
illness. On January 14, 2000, Plaintiff telephoned
Ms. Howard to obtain an attorney bar identification
number, and during the call, Plaintiff refused to
discuss the early morning call by her husband.
Plaintiff stated that she could not discuss the matter
because there were people near her desk and hung
up on her supervisor. Later that day, another court
clerk called Plaintiff to give her the bar number, and
Plaintiff refused to accept it. Plaintiff filed a
grievance over the reprimand, and the grievance
hearing officer upheld the reprimand on the grounds
that calling a supervisor at about 4 a.m. in violation
of known procedures was an act of insubordination,
that refusing to take the bar number as requested
was an act of insubordination, and that hanging up
on a supervisor was a failure to meet workplace
standards of conduct. Again, the reprimand had no
effect on Plaintiff's pay, benefits, or conditions of
employment.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F Supp 2d                                                                 Page 2

2003 WL 21697403 (D Del ), 26 NDLR P 163

**(Cite as: 2003 WL 21697403 (D.Del.))**

Third, Plaintiff contends that on one occasion the Chief Justice of the Supreme Court of Delaware was angry and yelled "What is this?" when he discovered a confidential document left by the copying machine adjacent to Plaintiff's desk Finally, Plaintiff contends that she was excluded from Delaware Supreme Court functions such as barbecues, picnics, and swearing in ceremonies, and that she is not listed by name on memoranda, letterheads, and telephone directories

**\*2** Plaintiff also contends that she was retaliated against for having filed a charge of discrimination with the EEOC Specifically, Plaintiff contends that her employer retaliated against her by revoking her parking privileges On July 30, 2001, nineteen months after Plaintiff filed her EEOC charge, Mr Adam Golby told Plaintiff that she was no longer authorized to park in the Administrative Office of the Courts' parking lot and that she should move her car before it was towed Several weeks later, Plaintiff's parking privileges were restored

On April 4, 2001, Plaintiff filed the instant lawsuit, and on September 7, 2001, Plaintiff resigned from her position with the Supreme Court of Delaware

STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law " Fed R Civ P 56(c) The party moving for summary judgment bears the initial burden of identifying for the court the portions of the record which it believes demonstrate the absence of a genuine issue of material fact *Celotex Corp v. Catrett,* 477 U S 317, 323 (1986) Once a properly supported motion for summary judgment is made, the nonmoving party then "must set forth specific facts showing that there is a genuine issue for trial " Fed R Civ P 56(e) To determine whether there is a genuine issue for trial, the court must decide whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party " *Anderson v. Liberty*

*Lobby, Inc,* 477 U S 242, 249 (1986) In other words, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and summary judgment is appropriate *Matsushita Elec Indus. Co. v Zenith Radio Corp ,* 475 U S 574, 587 (1986)

DISCUSSION

I Plaintiff's Disability Discrimination Claim

Defendants contend that Plaintiff's disability discrimination claim is barred by the Eleventh Amendment and that Plaintiff's temporary injury is not a disability under the Americans with Disabilities Act ("ADA")

In her Response Brief, Plaintiff admits that "it seems that the conditions was [sic] temporary and very little lingering impairment is present with regard to Plaintiff foot/ankle [sic] problem Plaintiff had not feed [sic] that her condition qualified for a permanent disability after surgery and recovery " (D I 63 at 13)

Temporary impairments or conditions are not covered by the ADA because, by definition, they do not substantially limit a major life activity *Rinehimer v. Cemcolift, Inc,* 292 F 3d 375, 380 (3d Cir 2002) (citing *McDonald v. Pa Dep't of Public Welfare, Polk Ctr.,* 62 F 3d 92, 96 (3d Cir 1995)) Based on Plaintiff's admission that her injury is temporary, the Court concludes that Plaintiff's injury is not covered by the ADA Accordingly, the Court will grant summary judgment as to Plaintiff's disability discrimination claim

II Plaintiff's Racial Discrimination Claim

**\*3** Plaintiff's racial discrimination claim is based on the two written reprimands she received, the Chief Justice's comment to her, and the fact that she is not listed by name on various Delaware Supreme Court documents

Defendants contend that Plaintiff's racial discrimination claim must fail because she cannot establish a prima facie case of racial discrimination

© 2005 Thomson/West No Claim to Orig U S Govt Works

Not Reported in F. Supp. 2d

2003 WL 21697403 (D. Del.), 26 NDLR P 163

**(Cite as: 2003 WL 21697403 (D.Del.))**

Page 3

Specifically, Defendants contend that Plaintiff cannot demonstrate that she suffered an adverse employment action.

To establish a prima facie case of race discrimination, Plaintiff must show by a preponderance of the evidence that: (1) she is a member of the protected class; (2) she suffered an adverse employment action; and (3) similarly situated members of another race were treated more favorably. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Jones v. School Dist. of Philadelphia,* 198 F.3d 403, 411 (3d Cir.1999) (noting that "the elements of a prima facie case depend on the facts of the particular case" and emphasizing that the "relevant question" in a Title VII case is whether a plaintiff "suffered some form of adverse employment action sufficient to evoke the protection of Title VII"); *Knott-Ellis v. Delaware Dept. of Correction,* 2001 WL 935621 at *3 (D.Del.Aug. 3, 2001). In the instant case, the Court concludes that Plaintiff has not established a prima facie case. Although Plaintiff is an African-American female and thus a member of a protected class, she has not demonstrated that she suffered an adverse employment action.

The United States Supreme Court has defined an adverse employment action as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change of benefits." *Burlington Indus. Inc. v. Ellerth,* 524 U.S. 742, 761 (1998). Here, Plaintiff's most serious allegation is that she received two written reprimands for not complying with workplace procedures. As a result of the reprimands and other conduct complained of by Plaintiff, she was not fired, denied a promotion, reassigned, or denied any benefits of her employment. Accordingly, the Court concludes that Plaintiff was not subjected to an adverse employment action. *Weston v. Pennsylvania,* 251 F.3d 420, 430-31 (3d Cir.2001) (holding that written reprimand that did not affect terms and conditions of employment did not rise to the level of adverse employment action). Because Plaintiff has not made a showing sufficient to establish the existence of an element essential to her case, and on

which she bears the burden of proof at trial, the Court will grant summary judgment as to Plaintiff's racial discrimination claim.

III. Plaintiff's Retaliation Claim

Plaintiff contends that she was unlawfully retaliated against for filing a charge of discrimination with the EEOC in January 2000. Plaintiff contends that on July 30, 2001, nineteen months after she filed her EEOC charge, Mr. Golby told Plaintiff that she was no longer authorized to park in a parking lot (the "AOC Lot") utilized by some Delaware Supreme Court employees and that she should move her car before it was towed. As a result, Plaintiff payed to park from July 31, 2001, to September 7, 2001.

*4 The facts as developed during discovery established that the AOC Lot is owned by the State of Delaware and is administered by the Administrative Office of the Courts ("AOC"). Employees of the Delaware Supreme Court and other state courts park in the AOC Lot on a space available basis. Parking in the AOC Lot is a courtesy and is not part of any court employee's benefit package. (D.I. 67 at B4). Mr. Golby is an AOC statistician who is assigned the added responsibility of monitoring the use of the AOC Lot. Because the AOC Lot is five blocks from the Delaware Supreme Court, Plaintiff did not use the AOC Lot for several months while recovering from her ankle injury. During Plaintiff's absence, other employees had been given permission to park in the AOC Lot. Consequently, when Plaintiff began parking in the AOC Lot after her recovery, Mr. Golby advised her that she was no longer authorized to park in the AOC lot and that she should move her car before it was towed. Plaintiff complained to her supervisor at the Delaware Supreme Court, who contacted the AOC and arranged for the reinstatement of Plaintiff's parking privileges.

Defendants contend that summary judgment is appropriate as to Plaintiff's retaliation claim because Plaintiff did not suffer an adverse employment action and because there is no causal link between Plaintiff's EEOC complaint and the temporary

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F Supp 2d

2003 WL 21697403 (D Del ), 26 NDLR P 163

**(Cite as: 2003 WL 21697403 (D.Del.))**

Page 4

revocation of Plaintiff's parking privileges

Plaintiff must prove a prima facie case of retaliation by demonstrating: (1) that she engaged in protected activity; (2) that she suffered an adverse employment action; and (3) that there is a causal link between the protected activity and the adverse employment action *Krouse v American Sterilizer Co*, 126 F 3d 494, 500 (3d Cir 1997)

The Court concludes that Plaintiff's evidence at this juncture establishes that she engaged in protected activity by filing her EEOC complaint However, because there is no dispute that parking in the AOC Lot was not a benefit of Plaintiff's employment (D I 67 at B4), the Court concludes that Plaintiff's temporary loss of authorization to park in the AOC Lot does not rise to the level of an adverse employment action *Ellerth*, 524 U S at 761 Additionally, even if the loss of parking privileges was an adverse employment action, Plaintiff has not demonstrated a causal link between the loss of parking incident and the filing of her EEOC charge Mr Golby was employed by the AOC, and Plaintiff was employed by the Delaware Supreme Court The evidence in the record establishes that Mr Golby and his AOC supervisor, Dennis B Jones, were unaware at the time that they temporarily revoked Plaintiff's parking privileges that Plaintiff had filed an EEOC charge (D I 67 at B2) Because Mr Golby and Ms Jones were unaware of Plaintiff's EEOC charge, the Court concludes that their actions were not causally related to Plaintiff's protected activity Additionally, nineteen months passed between the filing of Plaintiff's EEOC charge and the alleged retaliation, and this lack of temporal proximity provides additional weight to the conclusion that there was no causal link between the two events Accordingly, the Court will grant summary judgment as to Plaintiff's retaliation claim

CONCLUSION

*5 For the reasons discussed, Defendant's Motion for Summary Judgment will be granted

An appropriate Order will be entered

*ORDER*

At Wilmington this 17th day of July 2003, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment (D I 52) is *GRANTED*

2003 WL 21697403 (D Del ), 26 NDLR P 163

**Motions, Pleadings and Filings (Back to top)**

• 1:01CV00217 (Docket)
(Apr 04, 2001)

END OF DOCUMENT

© 2005 Thomson/West No Claim to Orig U S Govt Works

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2005, I electronically filed the foregoing with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following and which has also been served as noted:

## VIA FACSIMILE

Jeremy W. Homer, Esq
Parkowski & Guerke, P.A.
116 West Water Street
P.O. Box 598
Dover, DE 19903

Alyssa M. Schwartz (#4351)
schwartz@rlf.com

RLF1-2873343-1