**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SIDI M. CHERKAOUI, | : | |
| | : | |
| Plaintiff, | : | C.A. No.: 05-CV-184-KAJ |
| | : | |
| v. | : | TRIAL BY JURY OF |
| | : | TWELVE DEMANDED |
| HSBC PAY SERVICES, INC. a Delaware corporation, | : | |
| HSBC FINANCE CORPORATION, a Delaware | : | |
| corporation, and HOUSEHOLD INTERNATIONAL, | : | |
| INC., a Delaware corporation, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

PARKOWSKI, GUERKE & SWAYZE, P.A.

By:    JEREMY W. HOMER, ESQUIRE
       (Delaware Bar ID#0413)
       116 W. Water Street
       P.O. Box 598
       Dover, DE  19903
       E-Mail:  jhomer@pgslegal.com
       (302) 678-3262
       Attorneys for Plaintiff

DATED:  June 1, 2005

# TABLE OF CONTENTS

**PAGE**

TABLE OF CITATIONS .................................................................................................ii

I.      NATURE AND STAGE OF PROCEEDINGS ......................................................1

II.     SUMMARY OF ARGUMENT ..............................................................................2

III.    STATEMENT OF FACTS .....................................................................................3

      A.      The Complaint .............................................................................................3

      B.      The WIN and Great Ideas Program Documents ...........................................5

      C.      The June 11, 2003, E-mail Denial of Award ................................................9

IV.     ARGUMENT .........................................................................................................11

      A.      Under the standard of review for a Rule 12(b) motion to dismiss, the court must accept as true all the facts alleged in the complaint and all reasonable inferences that can be drawn from them.   Household's argument is based improperly on "facts" not alleged in the complaint .........11

      B.      Plaintiff's complaint alleges an adverse employment action pursuant to Title VII ..................................................................................................13

            1.      "with respect to his compensation" ...................................................15

            2.      "privilege of employment" ................................................................22

      C.      Plaintiff's Title VII claim is not barred by the statute of limitations because the Charge of Discrimination was timely filed ...............................30

      D.      The State law claims should not be dismissed because plaintiff's Title VII claims should not be dismissed......................................................34

V.      CONCLUSION......................................................................................................36

# TABLE OF CITATIONS

**PAGE**

**Cases**

Aiken v. Reilly, 1991 WL 126000 (D.D.C.)....................................................... 22

Babiarz v. Bell Atlantic-Pennsylvania, Inc., 2001 WL 1808554 (Pa. Comm. Pl.)........... 18

Bell v. Waste Management, Inc., 2004 WL 2451416 (D.Del.) ......................................... 25

Brown v. Brody, 199 F.3d 446 (D.C. Cir. 1999) ............................................................. 21

Burlington Industries, Inc. v. Ellereth, 547 U.S. 742 (1998)......................... 15, 16, 28, 29

Cardenas v. Massey, 269 F.3d 251 (3d Cir. 2001) .......................................................... 16

Carlini v. U.S. Rubber Co., 154 N.W. 2d 595 (Mich. App. 1967) ................................... 18

Cooley v. United States, 1997 WL 325846 (E.D. Pa.) ..................................................... 18

Cygan v. Megathalin, 96 N.E. 2d 702 (Mass. Supr. 1951)............................................... 18

Decision No. 71-32, 1970 WL 3532 (EEOC)................................................................... 22

deCiutiis v. Nynex Corporation, 1996 WL 512150 (S.D.N.Y.) ....................................... 18

DiBiase v. SmithKline Beecham Corporation, 48 F.3d 719 (3d Cir. 1995) ..................... 24

Dicks v. Information Technologist, Inc., 1996 WL 528890 (E.D. Pa.)............................. 24

Durham Life Insurance Co. v. Evans, 166 F.3d 139 (3d Cir. 1999)................................. 16

Edwards v. General Motors Assembly Division, 63 P. 3d 563 (Okl. App. 2002)............ 22

Fremont v. E.I. duPont de Nemours & Co., 988 F.Supp. 870 (D.Del. 1997)................... 19

Goodman v. Lukens Steel Company, 580 F.Supp. 1114 (E.D. Pa. 1984) ........................ 21

Goodman v. Lukens Steel Company, 777 F.2d 113 (3d Cir. 1986) ................................. 20

Hillig v. Rumsfeld, 381 F.3d 1028, 1031 (10th Cir. 2004)................................................ 15

Hishon v. King & Spalding, 467 U.S. 69 (1984)............................................................. 24

## TABLE OF CITATIONS
## CONTINUED

**PAGE**

**Cases**

Hodgkins v. New England Telephone Company, 83 F.3d 1226 (1st Cir. 1996)............... 17

Igwe v. E. I. duPont de Nemours & Co., Inc., 2005 WL 196577 (D.Del.)..................24, 25

In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410 (3d Cir. 1997) ......................... 6

International Broth. of Teamsters v. U.S., 431 U.S. 324 (1977) ................................ 14, 30

Jones v. School District of Philadelphia, 198 F.3d 403 (1999) ........................................ 29

Kipnis v. Baram, 949 F.Supp. 618 (N.D. Ill. 1996)............................................... 27, 28, 29

Knott-Ellis v. Del. Dept. of Correction, 2001 WL 935621 (D.Del.) ................................. 25

Kopin v. Orange Products, Inc., 688 A.2d 130 (N.J. App. Div. 1997)............................... 17

Lone Star Steel Co. v. Scott, 759 S.W. 2d 144 (Tex. App. 1988) .............................. 19, 20

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ................................... 11, 12, 14

Mondzelweski v. Pathmark Stores, Inc., 162 F.3d 778 (3d Cir. 1997)............................. 29

O'Neil v. E.I. duPont de Nemours & Co., 106 A. 50 (Del.Ch. 1919) ............................... 18

Peake v. International Harvester Co., 489 N.E. 2d 102 (Ind. App. 1986) ......................... 24

Pennick v. Brown, 2000 WL 419985 (E.D. Pa.).................................................................. 24

Pennsylvania State Police v. Suders, 542 U.S. 129 (2004)................................................ 15

Pierce v. International Ins. Co. of Illinois, 671 A.2d 1361 (Del. 1996)............................. 19

Plummer v. Tisch, 1989 WL 141388 (D.D.C.)..................................................................... 26

Rabinovitz v. Pena, 89 F.3d 482 (7th Cir. 1996) ......................................................... 28, 29

Raiszadeh v. Department of Veterans Affairs, 2001 WL 1580128 (Fed. Cir.) ............... 22

# TABLE OF CITATIONS
## CONTINUED

**PAGE**

**Cases**

Riding v. Kaufman's Department Store, 220 F.Supp. 2d 442 (W.D. PA. 2002).............. 14

Ring v. First Interstate Mortgage, Inc., 984 F.2d 924 (8th Cir. 1993).............................. 11

Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997) ....................................... 16

Rufo v. Metropolitan Life Insurance Co., 1997 WL 732859 (E.D. Pa.)........................... 22

Russell v. Principi, 257 F.3d 815 (D.C. Cir. 2001) ............................................... 21, 22, 29

Schott v. Westinghouse Electric Corporation, 259 A.2d 443 (Pa. Supr. 1969)............... 17

Sempier v. Johnson & Higgins, 45 F.3d 724 (3d Cir. 1995) ........................................... 14

Smith v. City of Jackson, Mississippi, 125 S.Ct. 1536 (2005) ........................................ 24

Spring v. Sheboygan Areas Sch. Dis., 865 F.2d 883 (7th Cir. 1989) ............................... 29

Suders v. Easton, 325 F.3d 432 (3d Cir. 2003)............................................................... 15

Swierkiewicz v. Sorema, 534 U.S. 506 (2002)..................................................... 11, 13, 14

Trans World Airlines, Inc. v. Thurston, 469 U.S. 111 (1985)......................................... 23

Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478
   (3d Cir. 1998).............................................................................................................. 11

University of Tennessee v. Elliott, 478 U.S. 788 (1986)........................................... 31, 32

Walden v. Watkins, 1996 WL 477020 (9th Cir.)....................................................... 26, 27

Washington v. State of Delaware/Supreme Court of Delaware, 2003 WL 21697403
   (D.Del.) ....................................................................................................................... 25

Weston v. Commonwealth of Pennsylvania, 251 F.3d 420 (3d Cir. 2001) ...................... 12

Whitfield v. Pathmark Stores, Inc., 1999 WL 222459 (D.Del.) ....................................... 31

Zaken v. Boerer, 964 F.2d 1319 (2d Cir. 1992)............................................................... 22

## TABLE OF CITATIONS
## CONTINUED

**PAGE**

**Statutes**

28 U.S.C. §1367 ................................................................................................. 35

42 U.S.C.A. §2000e-2(a)(1) .............................................................................. 14

42 U.S.C.A. §2000e-2(a)(2) .............................................................................. 14


**Other Authorities**

45A AM JUR 2d, Job Discrimination §605 ..................................................... 15

45A AM JUR 2d, Job Discrimination §603 ..................................................... 16

1A Corbin on Contracts Section 192 (1963) ................................................... 20

Restatement (2nd) of Contracts Section 73 (1981) ......................................... 20

# I.    NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed a charge of discrimination against his employer[1] with the Delaware Department of Labor (DOL) and the Equal Employment Opportunity Commission (EEOC).  Based on an "investigative" process which included no right of plaintiff to review, comment on, or otherwise respond to matter submitted by Household, DOL issued a finding of no reasonable cause.  The EEOC subsequently issued the requisite notice of right-to-sue letter, and plaintiff filed the Complaint in this action.

Defendants have filed a motion to dismiss with an opening brief, predicated in large measure on two documents not referred to in or attached to the Complaint, namely (1) the DOL findings, and (2) an e-mail from the employer which explains the alleged reasons why plaintiff was not compensated.

This answering brief explains why the motion to dismiss should be denied.

---

[1] The Opening Brief (OB) states the name of the legal entity of the employer is now Household Finance Corporation (Household).  OB, 3.  Reference to "Household" in this brief is to the employer regardless of when the name of the entity changed.

1

## II.    SUMMARY OF ARGUMENT

A.    Under the standard of review for a Rule 12(b) motion to dismiss, the court must accept as true all the facts alleged in the complaint and all reasonable inferences that can be drawn from them.  Household's argument is based improperly on "facts" not alleged in the complaint.

B.    Plaintiff's complaint alleges an adverse employment action with respect to his compensation and privileges of employment.

C.    Plaintiff's Title VII claim is not barred by the statute of limitations because the Charge of Discrimination was timely filed.

D.    The State law claims should not be dismissed because plaintiff's Title VII claims should not be dismissed.

### III.     STATEMENT OF FACTS

A.     <u>The Complaint</u>.

The relevant facts, for purposes of the motion to dismiss, are set out in full in the Complaint, at paragraphs 10-30.   During plaintiff's employment, Household initiated a program, referred to as WIN, pursuant to which it promised its employees that it would compensate employees who presented an idea that was implemented and resulted in the production of money for the employer.   Complaint, para. 10.   In reliance on that promise, plaintiff presented Household with an idea that it later implemented, and from which it ultimately reaped great sums of revenue.   Id., para. 11.   Household failed to process plaintiff's claim for compensation arising out of his idea in accordance with the procedures which it applied to employees of American descent, under the WIN Program. Id., para. 12.   Household deliberately deceived plaintiff into thinking it was processing his claim and pursuing his idea in accordance with the WIN Program.   Id., para. 13. Among other things, Household scheduled a meeting with plaintiff, at which it suggested Household would be developing the idea for implementation and compensation to plaintiff.   Id., para 14.

Nonetheless, Household failed to timely process the idea and provide feedback to plaintiff regarding its status in the same manner that it undertook those responsibilities with employees of American descent.   Id., para. 15.   Eventually, Household implemented plaintiff's idea, but deliberately concealed such fact from him. Id., para. 16.   Household's actions in not following its WIN Program procedures and in concealing the fact that the plaintiff's idea had been implemented were intended to

discourage plaintiff from pursing his claim based on his idea. Consequently, plaintiff did not pursue his claim until after he discovered documentation regarding the idea, which tended to prove he was entitled to compensation for the idea. Id., para. 17.[2] Plaintiff resubmitted his idea and claim for compensation, which resulted in Household reviewing the claim anew, this time under a different program named "Great Ideas," which had replaced the WIN Program. Id., para. 18.

At one point, Household informed plaintiff that his idea qualified him to compensation and that he would be compensated, though in an amount far less than was contemplated under the applicable program guidelines. Id., para. 19. Again, Household failed to follow the same procedures for processing the idea submitted under the Great Ideas Program as were used for employees of American descent. Id., para. 20. On or about June 11, 2003, Household notified plaintiff that it was not going to compensate plaintiff for the idea submitted under the Great Ideas Program. Id., para. 21. At that time, Household provided plaintiff with fraudulent information about the origins of his idea, its implementation, and his alleged failure to satisfy the conditions for compensation. Id., para. 21. Household has not compensated plaintiff for his ideas submitted under the WIN Program or Great Ideas Program, even though plaintiff satisfied the conditions for compensation. Id., para. 22. Among other things, plaintiff was damaged by Household's fraudulent and deceitful actions because, had he known the

---

[2] The Complaint does not (and is not required under notice pleading), to provide the details of how plaintiff "pursued" the claim after April, 2002. In due course, plaintiff will produce testimony and documentary evidence related to his efforts to get Household to make a decision regarding compensation for his idea.

truth, he would have pressed harder for a prompt and truthful review of his idea under the WIN Program and it would have been clear, at the time it was implemented that it was his idea. Id., para. 23.

Other Household employees, not of the plaintiff's national origin, received compensation for their ideas that were presented to and implemented by Household. Id., para. 24. Household intentionally discriminated against plaintiff because of his national origin. Id. The reasons given by Household for denying plaintiff compensation for his idea submitted under the Great Ideas Program were a pretext. Id., para. 25. The actual reason was his national origin. Id. As such, Household violated plaintiff's rights as set forth in Title VII of the Civil Rights Act. Household failed to make a decision on the claim submitted by plaintiff under the WIN Program and never explained to plaintiff the outcome of his claim arising out of the WIN Program submittal. Id., para 26. Such failure was the result of discriminatory intent based on plaintiff's national origin. Id., para 26. On or about September 8, 2003, plaintiff filed a charge of discrimination regarding the above conduct with the Delaware Department of Labor and the Federal Equal Employment Opportunity Commission (EEOC). Id., para. 28. A copy of the Charge is attached to the Complaint as Exhibit A, and is attached hereto as Exhibit A.

B.      The WIN and Great Ideas Program Documents.

Household's opening brief attaches various documents including ones purporting to be WIN and Great Ideas Program documents. Footnotes 4 and 5 contend that Household is entitled to use the documents because they are central to plaintiff's claims for relief. The same rationale apparently is relied upon for use of the June 11,

2003 e-mail which explains the alleged reasons for not compensating plaintiff.  See OB, n. 6.[3]

Assuming arguendo that the WIN Program and Great Ideas Program documents are properly presented to the court at this stage of the proceedings, they contain the following facts relevant to Household's argument.  The first page of the opening brief's Exhibit C, regarding the WIN Program, sets out an acknowledgement regarding an employee's submission.[4]  The document states, "I understand Household International has sole, exclusive right to determine the amount of the award." (emphasis added).[5]  It does not state that Household has the right to deny an award altogether if an idea is implemented.  To the contrary, the third page of the document states, "If adopted, the suggester will be recognized as described in the 'Recognition' section below." (emphasis added).  On the same page, the Recognition section explains that there are three tiers of awards and that the third tier, "ideas with significant impact," "generally

---

[3] Plaintiff objects to Household's use of the June 11, 2003, e-mail.  It is not mentioned in the Complaint or the Charge of Discrimination.  Nor is it an "integral" part of plaintiff's claim, as contemplated by In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  Virtually every Title VII complaint refers to the employer's discriminatory act – e.g., "After plaintiff complained of sexual harassment, Employer notified her in writing that she was fired."  Such reference to the firing does not make the Employer's self-serving reasons for the firing (which are contradicted by the complaint), stated in the writing, an integral part of the Complaint for purposes of a motion to dismiss.  Rather, the actual reasons for the firing are factual questions to be explored in discovery and decided by a jury.

[4] There is currently no evidence before the court with respect to when, if ever, plaintiff saw this or the other documents or whether all the WIN/Great Ideas documents were attached to the opening brief.

[5] Attached hereto as Exh. B are copies of the WIN and Great Ideas program documents attached to the opening brief, with the passages discussed in this answering brief underlined for the convenience of the court.

merit the recognition of 10%-25% of validated savings or revenue."  The Recognition section also reflects that the suggestions may "fall under an employee's daily job responsibility."  Finally, the Recognition section explains that "Keeping in line with Household's overall <u>compensation</u> philosophy, cash awards exceeding $100.00 will have all applicable taxes and contributions...withheld from the award amount." (emphasis added).  The next page states: "The fact that a suggestion shows a savings or profit does not obligate the company in any way to <u>adopt</u> the suggestion." (emphasis added).  Again, there is no language indicating that Household may adopt the suggestion and not compensate for it.

The next page of the program document answers various questions.  The first question and answer make clear that one has to be a Household employee to submit an idea.  The last question and answer on the page are as follows:

"What reward will I get if my idea is used?
Each business unit or major location will determine the awards.  There are three basic categories.  1)  Suggestions that have local or minor impact, or that are part of your job responsibilities <u>will be</u> recognized with merchandise from WIN's Merchandise Award Program.  2) Ideas with a broader impact or those that can be used throughout a business unit <u>will receive</u> cash or merchandise valued from $50.00 to $500.00.  3)  Large impact or corporate-wide ideas <u>will receive</u> awards that are determined on a case-by-case basis.  Business units will determine appropriate recognition based on the value of the idea to the corporation." (emphasis added).

The Great Ideas documents attached to the opening brief (at Exhibit D) contain similar language.  One important provision, in the next to last page of the exhibit, states "Ideas submitted at or prior to midnight (central time) on June 21, 2002, will be processed under WIN or Presidea guidelines, depending on which program the employee

used."  Thus, plaintiff's idea which was submitted initially before June 21, 2002 under the WIN Program, should have been processed in accordance with the WIN Program.

The Great Ideas documents also contain an acknowledgement that Household has the "exclusive right to determine the amount [not the right to make no award] of the award." (emphasis added) (Exh. B hereto, p. 7).  The next page imposes an eligibility requirement ("all regular (full-time and part-time working 20 hours or more) Household employees in a good standing can participate...").  The same page provides that Household will provide a response to the idea submission within two weeks.  The same page states the amount of the award will be based on the guidelines in the Recognition section.  The next page reflects that the ideas may be "directly connected or associated with the employees job responsibility" and that "some of the best and biggest ideas historically have come from employees who see opportunities to improve the productivity and effectiveness of their own departments."  The same page indicates that "Adopted ideas will be classified as tangible or intangible," and then sets out various categories of compensation depending on whether the idea is tangible or intangible. (emphasis added).

The next page states, "The fact that a suggestion shows a savings or generates revenues does not obligate the company in any way to adopt the suggestion" (emphasis added). (but does not say the company is free to pay nothing if an idea is adopted).  The next page states "If the idea is approved, the EIC will assist the subject matter expert in awarding the ideas submitter according to the program guidelines."

On the next page, the document includes the following question and answer:

> "Q. Shouldn't employees come up with great ideas as part of their jobs and not expect additional awards?
> A. Household's pay-for-performance philosophy supports tangible award programs for employees who develop and fully research ideas that further our strategy and improve our processes. Just as we encourage employees to maximize their performance through our various bonus and incentive programs, we believe in rewarding employees according to their contribution when they submit a viable, adoptable 'Great' Idea."

Finally, the same page includes the following statement:

> "Q. What is the typical timeframe from idea submission to award notification?
> A. In most cases, the idea process should take just a few weeks. Part of the EIC's responsibilities are to track and follow up on the progress of the idea and maintain communication with all parties. In some cases where an idea involves significant testing or must be prioritized, the process may take longer, in those instances, the employee will be kept informed as evaluation progresses."

C.     The June 11, 2003, E-mail Denial of Award.

Assuming arguendo that the June 11, 2003, e-mail (OB, Exh. F) is properly before the court at this stage of the proceedings, the e-mail claims that "the main determining factor" in the decision to deny the award was that the idea "was in fact not implemented as a direct, sole result of your idea." The opening brief points to no language in the program documents or elsewhere suggesting that a WIN or Great Ideas idea must be implemented as a direct and sole result of the idea. In fact, as alleged in the Complaint, Household met with the plaintiff to discuss the idea, and indicated that it would be implemented and he would be compensated. Complaint, para. 14. The program documents indicate that of the ideas submitted in calendar year 2000 alone, 235

were implemented.[6]  Plaintiff is entitled to take discovery regarding whether employees of American descent were compensated for their ideas even if they were not implemented "as a direct, sole result of [the idea]."  Of course, plaintiff is also entitled to discover facts regarding the accuracy of the stated reason for denying the award (i.e., to establish how the idea was implemented).

At least one statement in the Great Ideas Program documents strongly suggests that ideas need not be the sole result of the idea:  "If an idea seems promising but cannot be immediately adopted (e.g., must be validated through testing or prioritized among several systems projects), the SME should notify the employee idea coordinator that the idea is pending and when a determination is expected.  The employee idea coordinator will relay that status report to the employee."  (Exh. B hereto, p. 8).

---

[6] See OB, Exh. C, last page.

**IV.    ARGUMENT**

A.    <u>Under the standard of review for a Rule 12(b) motion to dismiss, the court must accept as true all the facts alleged in the complaint and all reasonable inferences that can be drawn from them.  Household's argument is based improperly on "facts" not alleged in the complaint.</u>

A complaint should be dismissed only if relief cannot be granted under any set of facts consistent with the allegations of the complaint, which shall be accepted as true, along with all reasonable inferences that can be drawn from them.  <u>Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.</u>, 140 F.3d 478, 483 (3d Cir. 1998).  Moreover:

"[The Supreme Court] has never indicated that the requirements for establishing a prima facie case under <u>McDonnell Douglas</u>[7] also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss...'To measure a plaintiff's complaint against a particular formulation of the prima facie case at the pleading stage is inappropriate' [quoting <u>Ring v. First Interstate Mortgage, Inc.</u>, 984 F.2d 924, 927 (8th Cir. 1993]...Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case.  Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases."  <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506, 511-512 (2002).

The opening brief, at 9, acknowledges that the factual allegations of the complaint must be accepted as true.  However, instead of confining the argument to the alleged facts, the opening brief alleges facts not in the Complaint, and, worse, misrepresents what is stated in the Complaint.  One blatant example follows:

"...equally important, plaintiff,...has failed to plead facts of individuals not of his protected class who were treated differently...Plaintiff does not, nor

---

[7] <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), discussed in the opening brief at 10.

can he, point to any comparator who is treated better than him with respect to either program. The sole reason the idea Plaintiff submitted was not rewarded was that Household was already aware of the technology at the times Plaintiff presented it to Household. See Exhibit F; Complaint at Exhibit A. ...Household was aware of the automated check system prior to Plaintiff's WIN and Great Ideas submissions. (Exhibit F). In fact, such an idea was presented by other Household employees as early as February 2000, and the technology was used by Household in the late 1990s. Id. Household thus had a legitimate business reason for not rewarding Plaintiff for his submissions." OB, 13-14.

Viewed in the most charitable light to Household, this argument reflects a stunning lack of understanding regarding Rule 12(b)(6). First, the Complaint states:

"24. Other HRS employees, not of the Plaintiff's national origin, received compensation for their ideas that were presented to and implemented by HRS. HRS intentionally discriminated against Plaintiff because of his national origin.".... 
22. HRS has not compensated Plaintiff for his ideas submitted under the WIN program or Great Ideas program, even though Plaintiff satisfied the conditions for compensation... 
20. Again, HRS failed to follow the same procedures for processing the idea submitted under the Great Ideas program as were used for employees of American descent... 
25. The reasons given by HRS for denying Plaintiff compensation for his ideas submitted under the Great Ideas program were a pretext. The actual reason was his national origin."

Second, Household cannot seriously contend that at the stage of filing a complaint, the plaintiff must name the individuals who were treated more favorably under the suggestion compensation program. "Discrimination and other civil rights claims are clearly subject to notice pleading." Weston v. Commonwealth of Pennsylvania, 251 F.3d 420, 429 (3d Cir. 2001). A plaintiff need not allege all the facts necessary to prove his claim. Id. "This simplified notice pleadings standard [for discrimination claims under McDonnell Douglas] relies on liberal discovery rules and summary judgment motions to

define disputed facts and issues and to dispose of unmeritorious claims." <u>Swierkiewicz</u>, <u>supra</u>, 534 U.S. at 512.

Third, Household cannot seriously contend that the plaintiff is obliged to accept as true the employer's stated reasons for denying the award, simply because Household attaches its written statement to the opening brief. (see n. 3, <u>supra</u>). Although the opening brief also cites the Charge of Discrimination (Exhibit A to the Complaint) for the statement, "The sole reason the idea Plaintiff submitted was not rewarded was that Household was already aware of the technology at the times Plaintiff presented it to Household" (OB, 13), the Charge says nothing of the kind.[8]

It seems obvious that Household's manipulation of the factual basis for its argument is driven by its perceived need for facts to fit Household's legal theory and the facts of the case law relied upon.  (Discussed below).  Such approach is backwards, the correct method is to derive the legal theories from the facts, not vice versa.

B.    <u>Plaintiff's Complaint alleges an adverse employment action pursuant to Title VII</u>.

Household argues that its failure to compensate plaintiff for his idea does not constitute an "adverse employment action" pursuant to Title VII.  OB, 10, 11.  The argument is not supported by the facts or law for the reasons that follow.

---

[8] See Exh. A to this brief.  In addition, the opening brief mischaracterizes what the e-mail says.  The e-mail does not say the sole reason for not rewarding plaintiff was that Household was already aware of the technology.  What the e-mail does is provide various reasons, claiming "the main determining factor" was that the idea was not "implemented as a direct, sole result of your idea."  See OB, Exh. F.

A disparate treatment case, such as alleged in the Complaint,  "is the most easily understood type of discrimination.  The employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin." International Broth. of Teamsters v. U.S., 431 U.S. 324, 335-6 n. 15 (1977).  Precise requirements of a prima facie case applicable to employment discrimination claims under McDonnell Douglas can vary depending on the context, and were never intended to be rigid, mechanized, or ritualistic.  Swierkiewicz, supra, 534 U.S. at 512.  Also, "the prima facie case under the McDonnell Douglas 'pretext framework is not intended to be onerous.'"  Riding v. Kaufman's Department Store, 220 F.Supp. 2d 442, 449 (W.D. PA. 2002), quoting Sempier v. Johnson & Higgins, 45 F.3d 724, 728 (3d Cir. 1995).

Title VII of the Civil Rights Act explicitly prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment" (emphasis added).  42 U.S.C.A. §2000e-2(a)(1). It also makes it unlawful to "limit, segregate or classify his [the employer] employees in any way which would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect his status as an employee because of such individual's race, color, religion, sex, or national origin." (emphasis added).  42 U.S.C.A. §2002e-2(a)(2).  For purposes of the argument that follows, those statutory provisions are encapsulated in the following statement:

> "Once a contractual relationship of employment is established, Title VII governs certain aspects of that relationship, including the provision governing 'terms, conditions, or privileges of employment.'  Therefore, 'terms, conditions, privileges of employment' clearly include benefits that are part of an employment contract...Furthermore, a benefit, if not a contractual right of employment, may qualify as a 'privilege' of

> employment if it is part and parcel of the employment relationship, although the employer would be free under the employment contract not to provide the benefit at all.  Benefits that comprise the 'incidents of employment' or form 'an aspect of the relationship between the employer and employees' may not be doled out in a discriminatory fashion, even if the employer is under no contractual obligation to furnish them."  45A AM JUR 2d, Job Discrimination §605.

Household unlawfully discriminated against plaintiff with respect to his compensation or a privilege of his employment, or both.

    1.       "with respect to his compensation"

In Burlington Industries, Inc. v. Ellereth, 547 U.S. 742 (1998), a sexual harassment case, the Court holds that the employer can raise an affirmative defense showing that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior where the employee has suffered "no tangible employment action."[9] In Suders v. Easton, 325 F.3d 432, 456 (3d Cir. 2003), the court discusses Ellereth, concluding that a tangible employment action encompasses a range of actions and may even "take the form of subtle discrimination not easily categorized as a formal discharge or demotion."[10]  Such conclusion is consistent with the intent of the statute:

---

[9] Although many courts have applied Ellereth's "tangible employment action" test to disparate treatment claims, such approach has been questioned.  For example, in Hillig v. Rumsfeld, 381 F.3d 1028, 1031-1033 (10th Cir. 2004) the court discusses Ellereth's limited scope:  "As would be expected, the Court's [Supreme Court] analysis was concerned with agency principles [citation omitted], and the opinion explicitly noted that the 'tangible employment action' definition adopted therein was 'for resolution of the vicarious liability issue.'" Id. at 1031.

[10] Although part of Suders is affirmed, the Supreme Court reversed the court's conclusion that the affirmative defense set out in Ellereth (establishment of a grievance procedure, etc.) is never available in a constructive discharge case.  Pennsylvania State Police v. Suders, 542 U.S. 129 (2004).

"The phrase 'terms, conditions, or privileges of employment' in Title VII is an expansive concept demonstrating a congressional intent to define discrimination in the broadest possible terms. In adopting it, Congress chose neither to enumerate specific instances of discriminatory practices nor to draw clear lines as to what are prohibited activities." 45A AM JUR 2d, <u>Job Discrimination</u> §603.

Ellereth provides the example of a bruised ego as <u>not</u> rising to the level of a tangible employment action. Id. at 761. As the Court puts it, "A tangible employment action in most cases inflicts direct economic harm." Id. Likewise, the Third Circuit Court of Appeals has stated "that direct economic harm is an important indicator of a tangible adverse employment action." <u>Durham Life Insurance Co. v. Evans</u>, 166 F.3d 139, 153 (3d Cir. 1999) (holding that employer actions that indirectly affect the employee's compensation constitute an adverse employment action). Id. at 154. In <u>Cardenas v. Massey</u>, 269 F.3d 251, 263 (3d Cir. 2001), the court restates the principle that "an adverse employment action is one 'serious and tangible enough to alter an employee's <u>compensation</u>, terms, conditions or <u>privileges</u> of employment'" (emphasis added) (citing <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1300 (3d Cir. 1997).

Household argues plaintiff suffered no economic harm and did not lose compensation because the employee suggestion programs allegedly contain language

indicating Household's decisions regarding compensation are discretionary.[11]  The case

law does not support such conclusion.  Numerous cases hold that employee suggestion

programs give rise to enforceable rights to compensation notwithstanding program

language which purports to give the employer unfettered discretion in making awards and

determining their value.  The cases so hold on various theories including express and

implied contract, unjust enrichment, and the implied covenant of good faith and fair

dealing.  Examples include:  Hodgkins v. New England Telephone Company, 83 F.3d

1226 (1st Cir. 1996) (employer's promise to pay employees for suggestions that resulted

in cost savings or increased profits was not rendered illusory by a provision which gave

an employer complete discretion in administering the suggestion program); Schott v.

Westinghouse Electric Corporation, 259 A.2d 443, 445 (Pa. Supr. 1969) (compensation

not precluded despite this statement on the suggestion form: "In submitting the

suggestion, I agree that the decision of the local Suggestion Committee on all matters

pertaining to this suggestion, my eligibility for an award, and the amount of award, if

any, will be final"); Kopin v. Orange Products, Inc., 688 A.2d 130 (N.J. App. Div. 1997)

_____

[11] The opening brief argues:

> "The WIN guidelines were clear that 'the fact that a suggestion shows
> savings or profit does not obligate the company in any way to adopt the
> suggestion,' and '[a]ll decisions made by the Company under the system
> including those regarding eligibility, adoption, rejection or award, are final
> and binding upon the suggester.'  (See Exhibit C) (emphasis added [in
> OB]).  Likewise the Great Ideas disclaimer language that all participants
> were subject to was clear that 'Household [had] the sole, exclusive right to
> determine the amount of the award, and all decisions are final.'  (See
> Exhibit D) (Emphasis added [in OB]).  Further, both programs were
> voluntary suggestion programs, completely separate and apart from
> plaintiff's job duties."  OB, 13.

(lack of specificity in amount of compensation and the method to calculate it did not preclude "reasonable compensation" for employee suggestions); deCiutiis v. Nynex Corporation, 1996 WL 512150 (S.D.N.Y.) (employee suggestion program which gives "sole, exclusive and complete discretion" as to the eligibility of a suggestion and the amount of any award requires the employer to exercise such discretion in good faith, a fact question which defeats a motion to dismiss) (Exh. C, p. 4); and Carlini v. U.S. Rubber Co., 154 N.W. 2d 595, 598 (Mich. App. 1967) (suggestion program language that "the decision of the Suggestion Committee shall be 'final'," does not allow employer to "reach decision out of thin air").  Other relevant cases include Cooley v. United States, 1997 WL 325846 (E.D. Pa.) (Exh. D) (employee suggestion program creates implied-in-fact contract); Babiarz v. Bell Atlantic-Pennsylvania, Inc., 2001 WL 1808554 (Pa. Comm. Pl.) (Exh. E) (court recognizes a number of legal theories of recovery arising out of employee suggestion program); and Cygan v. Megathalin, 96 N.E. 2d 702 (Mass. Supr. 1951) (oral agreement that individual would be paid if charges were reasonable is definite enough to enforce).

Delaware courts have long recognized that an employee who is promised compensation for an idea is entitled to recovery, possibly under different theories.  Thus, in O'Neil v. E.I. duPont de Nemours & Co., 106 A. 50 (Del.Ch. 1919), the court summarizes the employee's case as follows:

> "Boiled down, the case of the complainant is this:  Having discovered a new formula for making powder, he disclosed it to his employer, relying on promises of reward or compensation by sale or otherwise if it proved valuable, and the employer, with the knowledge of the complainant, used it and not only made large profits by the use of it, but also obtained for

18

nominal consideration an assignment from the inventor of an application
for letters patent on the formula."  Id. at 52.

The court then opines that the employee had stated a claim, and could recover under

quantum meruit if nothing else.  Id.  In Fremont v. E.I. duPont de Nemours & Co., 988

F.Supp. 870 (D.Del. 1997), the court explains that under Delaware law there is an

implied duty of good faith in the performance of a promise to pay a bonus (finding under

the facts of the case that the employee was not entitled to the bonus because a condition

for the payment thereof had not been satisfied). In so holding, the Court makes clear that

"nothing in this opinion should be understood as endorsing the contention that DuPont

had complete discretion to deny the bonus.  As explained at length above, both

Pennsylvania and Delaware would impose the duty of good faith and fair dealing in this

setting."  Id. at 879.  Fremont cites the Delaware Supreme Court for the proposition that

"the duty of good faith and fair dealing clearly attaches to all contracts."  (citing Pierce v.

International Ins. Co. of Illinois, 671 A.2d 1361, 1366 (Del. 1996)).

Lone Star Steel Co. v. Scott, 759 S.W. 2d 144 (Tex. App. 1988) addresses

many of Household's arguments under similar facts.   There the employer denied

compensation for an employee suggestion on the ground that the idea had been submitted

previously by "Management and/or another suggester."  Id. at 148.  The suggestion

program included the following language:

"Lone Star Steel Company reserves the right to change the Suggestion
Plan at its discretion.  Any decision of the company concerning the terms
or administration of the plan, including the eligibility of suggestions and
the amount of any awards made, is final."  Id. at 151.

In upholding a large award to the employee, the court found:

> "As for the argument that <u>Scott's</u> idea was ineligible because it was not original, we find no requirement in the plan for originality [just as the Household program documents contain no requirement that the idea being implemented be the "direct, sole result" of the idea]...<u>Lone Star</u> argues that the promise was too indefinite to constitute a contract. The basis of that contention is that the suggestion plan left the amount of any award solely in the discretion of the awards committee. It is recognized, however, that the failure of a contract to specify the amount of the payment does not render it ineffective. In such a case the law will imply that a reasonable amount was intended." Id at 152-153.

Finally, the court discusses consideration for the contract, pointing out that the employee "was not obligated to conceive or develop any such idea...If a performance includes something that is not within the promisee's pre-existing duty, the requirement of consideration is satisfied." (citing <u>Restatement (2nd) of Contracts</u> Section 73 (1981); 1A <u>Corbin on Contracts</u> Section 192 (1963)). Id. at 153.

The Household program documents refer to payment for the idea as "compensation," and make clear such compensation will be subject to all the deductions that normally apply to other employee compensation. Further, the documents provide that "(if) [the idea is] adopted, the suggester <u>will be</u> recognized as described in the 'Recognition Section'" (emphasis added). The "Recognition" section "generally merit[s] the recognition of 10%-25% of validated savings or revenues." In short, the Household suggestion plans are far more concrete regarding the specifics of compensation than ones held enforceable under the case law.

In the context of employee suggestion plans and adverse employment actions within Title VII, there appears to be only one Third Circuit Court of Appeals case which is pertinent. In <u>Goodman v. Lukens Steel Company</u>, 777 F.2d 113, 117 (3d Cir. 1986), the court recites the District Court's findings as they relate to inadequate proof of

discrimination in a number of areas, including "(a)wards for employee suggestions for improvement in plant operation."  In the District Court case, <u>Goodman v. Lukens Steel Company</u>, 580 F.Supp. 1114, 1151 (E.D. Pa. 1984), the court concludes:

> "In short, while the statistics of the suggestion awards program do not provide definitive answers, the gross disparities reflected therein do raise further serious questions about racial equality at <u>Lukens</u>."  Id. at 1152.

Thus, in <u>Lukens</u>, nothing suggests that either the District Court or Circuit Court questioned the viability of a discrimination claim based on unequal treatment pursuant to a voluntary employee suggestion program.

In a context similar to employee suggestion plans, the award of discretionary bonuses to employees, the case law supports denial of Household's motion.  In <u>Russell v. Principi</u>, 257 F.3d 815 (D.C. Cir. 2001), the court holds that the loss of a bonus based on a disputed performance rating was an adverse employment action.  In so holding, the court points out:

> "The perverse logical conclusion of the Department's reasoning is that an employer could award $500.00 bonuses to all white employees and $1.00 bonuses to all similarly situated black employees without running afoul of <u>Brown</u> [<u>Brown v. Brody</u>, 199 F.3d 446 (D.C. Cir. 1999)], because under such a discriminatory scheme no employee would be worse off in an absolute sense."  Id. at 918.

Household's logic is no less perverse because, under it, the alleged discretionary nature of the awards program would allow it to pay $500.00 awards to white employees of American descent and $1.00 awards (or nothing) to similarly situated

black employees (or employees of foreign national origin) without engaging in unlawful discrimination.[12]

Other cases which support plaintiff's position include Rufo v. Metropolitan Life Insurance Co., 1997 WL 732859 (E.D. Pa.) (not receiving a bonus after opposing sexual advances "obviously affected Rufo's compensation," (Exh. G, p. 3); Zaken v. Boerer, 964 F.2d 1319 (2d Cir. 1992) (denial of bonus based on subjective factors is actionable under Title VII); Aiken v. Reilly, 1991 WL 126000 (D.D.C.) (Exh. H) (EPA's Office of Civil Rights makes factual determination that awards program was not administered in discriminatory way); Raizadeh v. Department of Veterans Affairs, 2001 WL 1580128 (Fed. Cir.) (Exh. I) (denial of monetary award constitutes a personnel action); and Edwards v. General Motors Assembly Division, 63 P. 3d 563 (Okl. App. 2002) (employee suggestion involved mental toil and intellectual exertion, thereby constituting "labor" for purposes of compensation under State statute.).

2.    "privilege of employment"

Assuming arguendo that Household did not discriminate against plaintiff "with respect to his compensation," it is obvious that Household's denial of the award deprived him of a privilege of employment. Household's ill-founded assertion that the WIN/Great Ideas programs were "nonworking based" and "by no means tied to the plaintiff's job" (OB, 3, 11) evidently are intended to head off the conclusion that plaintiff

---

[12] An EEOC decision that comports with Russell is Decision No. 71-32, 1970 WL 3532 (EEOC) (Exh. F). There, the EEOC determined that the average Christmas bonus paid to whites was more than twice that paid to blacks. Although the amount of the bonus was supposed to be tied, in part, to employee dependability, a subjective criterion, the EEOC found the practice discriminatory.

was deprived of an employment opportunity.  However, the facts regarding Household's employee suggestion plans include:  (1) only "regular" (employees working at least 20 hours/week) employees could participate; (2) suggestions could "fall under an employee's daily job responsibility;" (3) ideas could be "directly connected or associated with the employee's job responsibilities;" (4) "some of the best ideas and biggest ideas historically have come from employees who see opportunities to improve the productivity and effectiveness of their own departments;" and (5) Household explains its employees should "expect additional awards" for work-related ideas because "(j)ust as we [Household] encourage employees to maximize their performance through our various bonus and incentive programs, we believe in rewarding employees according to their contribution when they submit a viable, adoptable 'great idea.'"

In short, Household's employee suggestion plans were designed to give its regular employees an opportunity for an award regarding work related ideas.  The Civil Rights Act does not permit Household to deprive employees of a particular national origin of such opportunity.  As the Third Circuit Court of Appeals puts it:

> "In a 'privilege of employment' case such as this one, it is irrelevant that SmithKline had no obligation to provide the particular benefit to its employees, for once an employer decides to grant an opportunity to some, 'it may not deny this opportunity to others because of their age' [citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985)].  As the Supreme Court has explained, 'a benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free...not to provide the benefit at all'

[quoting Hishon v. King & Spalding, 467 U.S. 69, 75 (1984)]."  DiBiase
v. SmithKline Beecham Corporation, 48 F.3d 719, 725 (3d Cir. 1995).[13]

Other relevant cases include Pennick v. Brown, 2000 WL 419985 (E.D.
Pa.) (Exh. J) (on unopposed motion for summary judgment, court finds the buyout
incentives were not "doled out in a discriminatory manner," and cites DiBiase, supra, for
the proposition that "once an employer decides to grant an opportunity to some, it may
not deny the opportunity to others for discriminatory reasons"); Dicks v. Information
Technologist, Inc., 1996 WL 528890 (E.D. Pa.) (Exh. K) ("...as long as she [plaintiff]
claims that ITI doled out the benefits in a discriminatory fashion, Dicks may complain of
the loss of benefits that ITI was under no obligation to provide"[14]); Peake v. International
Harvester Co., 489 N.E. 2d 102 (Ind. App. 1986) (because New Ideas Suggestion
Program was open only to employees, participation in the program was a "privilege of
employment" for purposes of State law).

None of the Delaware or Third Circuit Court of Appeals cases cited in the
opening brief hold that failure to compensate an employee pursuant to a voluntary
employer suggestion plan is not a prohibited act of discrimination under Title VII.  In
Igwe v. E. I. duPont de Nemours & Co., Inc., 2005 WL 196577 (D.Del.) (Exh. L) the
court grants summary judgment to defendant where plaintiff had alleged, among other

_____

[13] DiBiase interpreted the Age Discrimination in Employment Act of 1967 (ADEA) anti-
discrimination sections which are substantially the same as the Civil Rights Act sections.
Recently, the Supreme Court held that "the scope of disparate-impact liability under
ADEA is narrower than under Title VII, due in part to a 1991 amendment which
"expanded the coverage of Title VII."  Smith v. City of Jackson, Mississippi, 125 S.Ct.
1536, 1544-1545 (2005).
[14] The "benefits" apparently were related to bonus and commissions.  See Exh. K, n. 12.

things, that he had been discriminated against because he had been denied a bonus. The court finds:

> "Mr. Igwe's contentions consist almost entirely of unsupported, conclusory arguments. Mr. Igwe fails to identify any specific, available opportunities for a promotion, transfer, bonus, or raise. Mr. Igwe's only specific facts are two documents outlining promotion guidelines for research and development professionals." Exh. L, p. 2.

Thus, the decision does not hold that denial of a bonus is not an adverse employment action, instead it merely holds plaintiff did not provide evidence to support the claim for purposes of summary judgment.

Likewise, in <u>Bell v. Waste Management, Inc.</u>, 2004 WL 2451416 (D.Del.), (Exh. M), <u>summary judgment</u> was granted to defendant because the plaintiff failed to provide evidence that he had been treated differently than employees outside of his protective class. The case, which involved the involuntary discharge of the employee, decides nothing about "an adverse employment action."

In <u>Knott-Ellis v. Del. Dept. of Correction</u>, 2001 WL 935621 (D.Del.) (Exh. N), the court holds the plaintiff's reassignment to different positions, without loss in pay, made to accommodate her medical needs, did not constitute an adverse employment action. Similarly, in <u>Washington v. State of Delaware/Supreme Court of Delaware</u>, 2003 WL 21697403 (D.Del.) (Exh. O), the court holds that two reprimands which did not affect plaintiff's compensation in any way were not adverse employment actions.

The opening brief cites three cases from other jurisdictions regarding employee suggestion plans and adverse employment actions. The brief argues that in Plummer v. Tisch, 1989 WL 141388 (D.D.C.) (Exh. P):

> "...the court noted that the employer, like Household, had already made plans to take the actions that the employee recommended prior to the submission of his suggestion. Such plans clearly constituted a legitimate reason for the employer's actions sufficient to rebut any presumption of discrimination raised by employee." OB, 12.

Such argument appears to tacitly recognize that the employee had stated (in the complaint) an act of discrimination, which is also a fair inference of Plummer. In Plummer the plaintiff alleged that defendant had wrongfully failed to compensate him for a suggestion which was put into effect. The court granted summary judgment, in part, because "plaintiff has failed to produce any evidence showing that the reason defendant offers for his actions is a pretext masking underlying discriminatory motives." Exh. P, p. 4. The court also finds that the complaint failed to allege that "similarly situated individuals not of his protected class were treated differently with respect to the submission of suggestions." Id. The court does not find or even suggest that the complaint was deficient because the failure to compensate for a suggestion is not discriminatory.

Walden v. Watkins, 1996 WL 477020[15] (9th Cir.) (Exh. Q) is mentioned briefly in the opening brief for the proposition "that denial of a cash award pursuant to a company suggestion program was merely discretionary and did not adversely affect the

---

[15] The decision is not reported in the Federal Reporter system. At FN**, the opinion states: "This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36.3."

terms or conditions of the employees employment."  OB, 12.  <u>Walden</u>, also decided on

<u>summary judgment</u>, not a motion to dismiss, arises in the context of a retaliation claim,

not a disparate treatment claim.  Further, it is a pre-<u>Ellereth</u> case which draws on Ninth

Circuit Court case law applied to retaliation claims.  The opening brief accurately cites

the basis of the decision, namely the finding (on summary judgment) that "(t)he award

[for the employee's suggestion] was merely discretionary."  Id. at p. 6.  The court also

found the plaintiff's suggestion:

> "...was within the scope of her employment and did not qualify for an
> award.  Accordingly, the denial of the award did not constitute 'an adverse
> employment action' [under 9th Circuit case law regarding retaliation
> claims], and Walden failed to establish a prima facie case of retaliation."
> Exh. Q, 6.

For the reasons stated above, there is substantial doubt regarding whether Household's

decision "was merely discretionary."[16]  Moreover, Household's reasons for denying the

award are not relevant for purposes of the motion to dismiss.  Even if the case were

properly before the court on a motion for summary judgment, which it is not,

Household's bald assertion in the June 11 e-mail to the effect that the idea was not novel,

would be insufficient proof for purposes of summary judgment.

The third and final case Household relies on is <u>Kipnis v. Baram</u>, 949

F.Supp. 618 (N.D. Ill. 1996), which the opening brief discusses at some length.  OB, 11-

---

[16] In addition to the case law, cited above, which holds that compensation must be paid
even when a suggestion program asserts payment is discretionary, Household's
suggestion programs contain language indicating that ideas that are implemented <u>will be</u>
paid.  Also, in <u>Walden</u> the suggestion program evidently did not allow compensation for
an idea within the scope of suggester's employment.  The Household program documents
do.

12.  The discussion begins with the inaccurate and misleading assertion that "on a motion to dismiss for failure to state a claim, the court held that the refusal of an employer to increase its $500.00 award to an employee for a cost-savings suggestion was not an adverse action for purposes of an employee's Title VII retaliation claim."  (emphasis added).   In fact, the court granted summary judgment, based on numerous factual findings that the court concluded were not disputed by the plaintiff, including:  (1) "Kipnis' suggestion was not novel;" (2) "There is nothing in the record to indicate that Kipnis' suggestion was itself responsible for any quantifiable savings;" (3) "Kipnis has not rebutted the GSA's proffered non-discriminatory justification for not increasing the amount of the award;" (4) "No causal link is shown by the temporal sequence of events" [denial of additional compensation was more than two years after the plaintiff complained, which was the alleged basis for retaliation]; and (5) "Kipnis has not refuted that his $500.00 award was 'comparable to awards given to employees who had submitted similar suggestions and had not filed EEO complaints." 949 F.Supp. at 625.

In Kipnis the court does indicate that an employer does not commit discriminatory retaliation when denying an award which is not automatic.  In so doing, it relies on Rabinovitz v. Pena, 89 F.3d 482 (7th Cir. 1996), quoting the following language:

"Loss of a bonus is not an adverse employment action in a case...where the employee is not automatically entitled to the bonus."  949 F.Supp. at 624, quoting Rabinovitz, 89 F.3d at 488-89.

Thus Kipnis, which is also a pre-Ellereth decision, relies on Seventh Circuit case law

arising in the context of a retaliation claim.[17]

The case relied upon by Kipnis, Rabinovitz, is rejected by the D.C. Circuit in Russell (a post-Ellereth case), supra. Russell initially distinguishes the facts of the case with Rabinovitz, pointing out that in Rabinovitz the amount of the employee bonus was "entirely discretionary." 257 F.3d at 819. However, the court concludes that such difference does not matter: "Regardless of the factual differences between the cases [i.e., regardless of the fact that a bonus may be entirely discretionary], we reject the notion that a denial of a monetary bonus is not a cognizable employment action under Title VII." Id.

The Third Circuit Court of Appeals has held that the elements of a prima facie Title VII case depend on the facts of the particular case and "cannot be established on a one-size fits all basis." Jones v. School District of Philadelphia, 198 F.3d 403, 411 (1999). In any event, Kipnis was decided on a careful reading of the facts established for purposes of summary judgment. Household's argument is not predicated on the facts alleged in the Complaint, but rather alleged facts which are contradicted by the Complaint (as well as the WIN/Great Ideas documents and the June 11, 2003 e-mail which Household has improperly attached to its brief).

---

[17] Kipnis expressly acknowledges: "In spite of the liberal way in which courts construe adverse action, the Seventh Circuit has generally found adverse action in more extreme cases, such as when an employee was terminated, but has been more reluctant when the action is not so severe." 949 F.Supp. at 624. (citing numerous cases including Spring v. Sheboygan Areas Sch. Dis., 865 F.2d 883, 886 (7th Cir. 1989) ("principal's transfer to a dual assignment at two other schools was not a materially adverse action")). Compare the result in Sheboygan to that in the Third Circuit case, Mondzelweski v. Pathmark Stores, Inc., 162 F.3d 778, 788 (3d Cir. 1997) (jury could conclude that plaintiff's assignment to an undesirable schedule can be more than a "trivial" or minor change to the employee's working conditions, and, therefore constitutes an adverse employment action.").

To summarize, Household argues that plaintiff did not suffer an adverse employment action because allegedly the employer programs were voluntary, "nonworked based," and administered solely in the discretion of the employer. If Household's argument is correct, employers would be free to administer their suggestion plans in a way that treats individual employees less favorably than others based exclusively on their race, national origin, or other suspect classification. Such result was obviously not intended by the Civil Rights Act. Unlawful discrimination, as it relates to disparate treatment, is "easily understood" and takes place when "the employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin." International Broth. of Teamsters, supra, 431 U.S. at 335-6, n. 15.

C.    Plaintiff's Title VII claim is not barred by the statute of limitations.

Household's statute of limitations argument is based on the unsupported and unsupportable factual representation that plaintiff knew in "March/April, 2002," that he would not be compensated for his idea. OB, p. 14. The Complaint states otherwise. It explains that the idea was originally submitted under the WIN program and that Household concealed the fact of its implementation. Para. 10, 11, 17. When he discovered the idea had been implemented, plaintiff attempted to pursue his claim. Para. 17. Among other things, he resubmitted the idea under the Great Ideas program. According to the opening brief, that submittal was in April, 2003. OB, 7. The Complaint states Household never made a decision under the WIN program "and never explained to plaintiff the outcome of his claim arising out of the WIN Program submittal." Para. 26.

The opening brief argument that plaintiff knew in "March/April 2002" that his idea was not going to be compensated cites the DOL Notice of Dismissal (Notice) findings for such representation: "As noted by DDOL, this is when plaintiff discovered the alleged act of discrimination that he would not be compensated for his submission (Exhibit A)." OB, 14. [18] Such opening brief statement exaggerates the DOL finding which says nothing about plaintiff knowing he would not be compensated for his submission in March/April 2002. OB, Exh. A. Rather, DOL's vague conclusion is that plaintiff discovered the "acts of discrimination" in March/April 2002. Nor do the DOL findings cite the source of such finding which evidently is the Charge of Discrimination. The Charge states: "The program was approved, but it was not until March of 2002, that the idea was implemented. In April 2002, I discovered that the program was financially lucrative." The Charge does not say plaintiff knew in March, 2002, that he would not be compensated. Apparently, DOL's erroneous reading of the Charge leads (in the next sentence of the DOL findings) to the conclusion that the Charge was not timely filed, the argument now advanced by Household in this litigation. Plaintiff suspects that

---

[18] Plaintiff objects to Household's use of the DOL Notice which is not even mentioned in the Complaint. The opening brief's authority for using the DOL Notice is stated at note 2, which incorrectly asserts that the Notice can be considered on a motion to dismiss simply because the EEOC decision adopted the DOL findings. If that were true, the plaintiff in every Title VII case in which the agency finds no reasonable cause, would, at the Complaint stage of the proceedings, be required to rebut the conclusory contentions of the agency. In fact, the plaintiff is never required to rebut the findings because they are not even admissible at trial. Whitfield v. Pathmark Stores, Inc., 1999 WL 222459 (D.Del.) (Exh. R). Moreover, it is well established that administrative agency findings that are not based on a fully litigated record have no preclusive effect in a Title VII suit. University of Tennessee v. Elliott, 478 U.S. 788, 796 (1986). Here, plaintiff has not even had the opportunity to see what Household submitted to the DOL, much less litigate the DOL conclusion.

Household's submittal to DOL erroneously contended or suggested that <u>the Charge of Discrimination</u> states plaintiff knew in March/April 2002 that he would not be compensated.[19]  Unfortunately, at the pertinent time, plaintiff was not privy to Household's DOL submittal and had no opportunity to set the record straight.  DOL now requires respondents to copy the charging parties on DOL submittals.  The DOL's legal conclusion and its shaky treatment of the facts in the Charge illustrate the wisdom of <u>Elliott</u>, <u>supra</u>, which recognizes the limitations of agency "investigations."

Moreover, the WIN program documents undermine Household's argument.  They include the following language:

> "Ideas with a significant impact generally merit the recognition of 10%-25% of <u>validated</u> savings or revenue." (emphasis added)....Note:  For stock awards, nominations can only be considered if the initial award was 10-25% of <u>the idea's first-year value</u>." (emphasis added).  Exh. B hereto, p. 3.

Assuming the idea was implemented in or around March, 2002, (see OB, 4), Household would not have been in a position until March, 2003, to determine the value of the award because it would have taken one year to validate the revenue.  The Charge of

---

[19] One example of Household's "loose" treatment of the facts related to this issue is its statement, "Plaintiff admits that after he submitted the idea under the WIN Program, before he resubmitted the idea under the Great Ideas Program, he know that Household was not going to compensate him for the idea (<u>See</u> Complaint at para. 17)."  OB, 16.  The source cited by the OB, paragraph 17 of the Complaint, merely states:  "HRS's actions in not following its WIN Program procedures and in concealing the fact that the plaintiff's idea had been implemented were intended to discourage plaintiff from pursuing his claim based on his idea.  Consequently, plaintiff did not pursue his claim until after he discovered documentation regarding the idea, which tended to prove he was entitled to compensation for the idea."  Such allegation does not admit that he knew he was not going to be compensated, nor does it say anything about the timing of the resubmittal of the idea.

Discrimination states, "In April, 2003, I submitted my idea again, showing 12 months of profit." (Exh. A). Such facts undermine DOL's conclusion that plaintiff knew in March/April 2002 that he was not going to be awarded compensation. Rather, they reflect plaintiff had an expectation that he would be compensated.

Yet another difficulty with Household's position is the following language in the June 11, 2003 e-mail rejection of the idea:

> "My apologies for the delay in receiving a response on this, due to the history of this idea going back some time, I needed to give it thorough investigation time as well as speak in depth with the management involved." OB, Exhibit F.

In 2003, Household apologizes for making plaintiff endure a long wait. Now, in 2005, Household criticizes plaintiff for waiting. Inasmuch as the centerpiece of the employer's argument, the June 11, 2003 e-mail, expressly explains the employer's reason (albeit a bad one) for delaying the decision until June 11, 2003, it seems somewhat brazen for Household to now contend the employee knew in 2002 that he was not being compensated.

The implication of Household's argument is that to protect one's rights, an employee must sue his employer even before the employer makes a decision on compensation. Certainly some employers would find it difficult to make a just award in the poisoned atmosphere of litigation. Of course, had plaintiff filed a charge of discrimination in March, 2002, it is very likely Household would have argued the claim was not ripe because no decision had been made. As it is, Household contends no adverse employment action was ever taken.

The fact is the implementation of the idea did not harm plaintiff, it helped him. It was not a discriminatory act to implement the idea, and the Charge of Discrimination does not so assert. Upon learning that the idea had been implemented, plaintiff did not assume he would be discriminated against and denied compensation (and therefore seek a remedy through litigation), instead he sought the award of compensation from his employer in accordance with the program documents. After the award was denied, he timely filed the Charge.

The opening brief freely acknowledges that (1) the plaintiff is entitled to file the Charge "within 300 days of the last alleged unlawful employment practice" (emphasis added) (OB, 14, citing statute and case law) and (2) a statute of limitations defense serves as a basis for dismissal "when the bar of the statute clearly appears on the face of the complaint" (OB, citing case law). Here the statute of limitations defense is based on a series of inferences that is contradicted by the Complaint and the Charge attached to it. The Complaint alleges that the discrimination included the manner in which plaintiff's claim was processed (the program documents contemplated the process take only a few weeks; the June 11, 2003 e-mail acknowledges the tardiness of the response). The "last alleged unlawful employment practice" for purposes of the statute of limitations took place on June 11, 2003, less than 90 days before the Charge was filed.

D.    The State law claims should not be dismissed because plaintiff's Title VII claims should not be dismissed.

The opening brief argues that to the extent plaintiff's Title VII claims are dismissed, the State law claims should be dismissed. OB, 16. Plaintiff acknowledges

that the court has discretion to dismiss the pendent State law claims if the federal claims are dismissed.  However, the federal claims should not be dismissed and the court retains jurisdiction over the State claims pursuant to 28 U.S.C. §1367.

## V.     CONCLUSION

For the above stated reasons, the court should deny the motion to dismiss.

Respectfully submitted,

PARKOWSKI, GUERKE & SWAYZE, P.A.

By: _____
JEREMY W. HOMER, ESQUIRE
(Delaware Bar ID#0413)
116 W. Water Street
P.O. Box 598
Dover, DE  19903
(302) 678-3262
E-Mail:  jhomer@pgsegal.com
Attorneys for Plaintiff

DATED: June 1, 2005

36

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SIDI M. CHERKAOUI, | : | |
| | : | |
| Plaintiff, | : | C.A. No.: 05-CV-184-KAJ |
| | : | |
| v. | : | TRIAL BY JURY OF |
| | : | TWELVE DEMANDED |
| HSBC PAY SERVICES, INC. a Delaware corporation, | : | |
| HSBC FINANCE CORPORATION, a Delaware | : | |
| corporation, and HOUSEHOLD INTERNATIONAL, | : | |
| INC., a Delaware corporation, | : | |
| | : | |
| Defendants. | : | |

**CERTIFICATE OF SERVICE**

I, hereby certify that on the _1st_ day of June, A.D. 2005, I electronically filed the

Plaintiff's Answering Brief In Opposition To Defendant's Motion To Dismiss with the

Clerk of the Court using CM/ECF which will send notification of such filing(s) to the

following:

Jennifer C. Jauffret, Esquire
Alyssa M. Schwartz, Esquire
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

PARKOWSKI, GUERKE & SWAYZE, P.A.

By: _____ W. Homer _____

JEREMY W. HOMER, ESQUIRE (I.D. #413)
116 W. Water Street
P.O. Box 598
Dover, DE 19903
Phone: (302) 678-3262
E-Mail: jhomer@pgsegal.com
Attorneys for Plaintiff

H\Cherkaoui\Answering Brief