Not Reported in F.Supp.

Page 2

1997 WL 325846 (E.D.Pa.)

**(Cite as: 1997 WL 325846 (E.D.Pa.))**

The standard for a summary judgment motion in federal court is set forth in Rule 56 of the Federal Rules of Civil Procedure. Rule 56(c) states that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In addition, a dispute over a material fact must be "genuine," i.e., the evidence must be such "that a reasonable jury could return a verdict in favor of the non-moving party." *Id.*

*2 The moving party has the initial burden to identify evidence that it believes shows an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the non-moving party (here the plaintiff) will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'--that is, pointing out to the District Court--that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party may not rely merely upon bare assertions, conclusory allegations or suspicions. *Fireman's Ins. Co. of Newark v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982). The court must consider the evidence of the non-moving party as true, drawing all justifiable inferences arising from the evidence in favor of the non-moving party. *Anderson,* 477 U.S. at 255. Yet, if the evidence of the non-moving party is "merely colorable," or is "not significantly probative," summary judgment may be granted. *Id.* at 249-50. To defeat the motion for summary judgment, the non-moving party must offer specific facts contradicting those set forth by the movant, thereby showing that there is a genuine issue for trial. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

*III. DISCUSSION*

Defendant contends that this Court lacks jurisdiction pursuant to the Tucker Act and the Contract Disputes Act and that the central issue of the instant lawsuit, i.e., the amount of money awarded by HHS, is a labor relations matter covered by the collective bargaining agreement over which this Court has no power of review.

*A. Tucker Act*

The Tucker Act provides the United States Court of Federal Claims [FN2] and the district courts of the United States with concurrent original jurisdiction over non-tort monetary claims against the United States not exceeding $10,000. *See* 28 U.S.C. § 1346(a)(2). Original jurisdiction over such claims seeking amounts in excess of $10,000 vests exclusively in the Court of Federal Claims. *See* 28 U.S.C. § 1491; *Dia Navigation Co. v. Pomeroy,* No. 93-5538, 1994 WL 283268, at *15 (3d Cir. June 28, 1994). The Tucker Act effects a waiver of sovereign immunity but does not create any substantive right enforceable against the United States. *United States v. Mitchell,* 463 U.S. 206, 216-17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). A substantive right must be found in some other source of law, such as the Constitution, any Act of Congress, any regulation of an executive department, or upon any express or implied contract with the United States. *See* 28 U.S.C. § 1346(a)(2); *Mitchell,* 463 U.S. at 216-18. The Supreme Court of the United States has construed the Tucker Act to provide that an implied contract that forms the basis for jurisdiction must be one implied in fact as opposed to one implied in law. *See Mitchell,* 463 U.S. at 218.

> FN2. Originally designated the Court of Claims, in 1982 Congress renamed this court the United States Claims Court. In 1992, the name changed again to its

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3
1997 WL 325846 (E.D.Pa.)
**(Cite as: 1997 WL 325846 (E.D.Pa.))**

present form, United States Court of Federal Claims.

*3 Cooley asserts that this Court has jurisdiction pursuant to the Tucker Act because his claim is founded upon breach of an implied-in-fact contract by the United States. The Supreme Court of the United States has distinguished between a contract implied in fact and a contract implied in law by stating:
> An agreement implied in fact is founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.... By contrast, an agreement implied in law is a fiction of law where a promise is imputed to perform a legal duty, as to repay money obtained by fraud or duress.

*Hercules, Inc. v. United States,* 516 U.S. 417, ----, 116 S.Ct. 981, 986, 134 L.Ed.2d 47 (1996) (citation omitted); *see* Restatement (Second) of Contracts § 4 cmt. b ("As opposed to the inferred from fact ('implied in fact') contract, the 'implied in law' quasi-contract is no contract at all, but a form of the remedy of restitution."); 17A Am.Jur.2d *Contracts* § 12 ("Contracts implied in fact are inferred from the facts and circumstances of the case, and are not formally or explicitly stated in words."); 66 Am.Jur.2d *Restitution* § 2 ("In quasi-contracts the obligation arises, not from consent of the parties as in the case of contracts express or implied in fact, but from the law of natural immutable justice and equity.").

Section 4503 of Title 5 provides for agency awards and authorizes the employee suggestion program implemented by HHS. Section 4503 states:

The head of an agency may pay a cash award to, and incur necessary expense for the honorary recognition of, an employee who--
  (1) by his suggestion, invention, superior accomplishment, or other personal effort contributes to the efficiency, economy, or other improvement of Government operations or achieves a significant reduction in paperwork; or
  (2) performs a special act or service in the public interest in connection with or related to his official employment.

5 U.S.C. § 4503. The permissive language of the statute, in and of itself, fails to establish a substantive right to compensation and, hence, jurisdiction under the Tucker Act cannot exist on this basis alone. *See Adair v. United States,* 227 Ct.Cl. 345, 648 F.2d 1318, 1322 (Ct.Cl.1981). Had HHS rejected the suggestion submitted by Cooley, the inquiry would end, as the decision to accept or reject the suggestion is wholly discretionary. *Rosano v. United States,* 9 Cl.Ct. 137, 145 (1985).

In the instant case, however, HHS adopted the suggestion. Published guidelines and procedures in the HHS manual set forth the manner in which it would determine the amount of an award for an adopted suggestion. *See* Complaint Exhibit C. Cooley contends that once HHS adopted his suggestion and decided to award him money, an implied-in-fact contract arose, binding HHS to act in accordance with its own established procedures.
I agree. *Cf. Rosano,* 9 Cl.Ct. at 145 (finding that because plaintiff's suggestion was not accepted there is no basis on which to find an implied contract); *McGee v. United States,* 5 Cl.Ct. 480, 481 (1984) (denying plaintiff's claim for an incentive award for an idea he submitted because suggestion was not officially adopted).

*4 In *Griffin v. United States,* an officer in the United States Air Force brought suit under facts similar to the case *sub judice. See Griffin v. United States,* 215 Ct.Cl. 710 (1978). The Air Force had adopted a suggestion submitted by Griffin and provided an award, pursuant to 10 U.S.C. § 1124, which permits the Secretary of Defense to authorize payment of a cash award to a member of the armed services for suggestions contributing to the efficiency or improvement of operations relating to the armed forces. Section 1124 is the equivalent of 5 U.S.C. § 4503 for civilian employees. Griffin claimed his award was insufficient. According to Griffin, the Air Force had acted arbitrarily, failing to follow its own regulations when calculating his award. The Court of Claims found that the Secretary of the Air Force originally had uncontrolled and unreviewable discretion pursuant

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.   Page 4
1997 WL 325846 (E.D.Pa.)

**(Cite as: 1997 WL 325846 (E.D.Pa.))**

to the permissive language of the statute authorizing awards, "but as he published procedures and guidelines, as he received responsive suggestions, as he implemented them and through his subordinates passed upon compensation claims, ... he surrendered some of his discretion, and the legal possibility of abuse of discretion came into the picture." Griffin, 215 Ct.Cl. at 714. The court held that the Secretary, upon adopting and implementing the suggestion, had become bound by an implied contract, which required him to establish compensation for the suggestion without abuse of discretion and within the guidelines he had published. Id.

Similarly, in Merrick v. United States, Merrick provided the Internal Revenue Service ("IRS") with information regarding an illegal tax shelter. Merrick v. United States, 846 F.2d 725 (Fed.Cir.1988). As a result, the IRS recovered over $10 million. Pursuant to 26 U.S.C. § 2673, which authorizes the Secretary of the Treasury to pay such sums as he may deem necessary for detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws, the IRS awarded Merrick $31,000. Merrick sought additional compensation in accordance with IRS Publication No. 733, which provided the formula for calculating awards. See id. at 725-26. Although the statute and accompanying regulation gave broad discretion as to whether or not to provide an award, the United States Court of Appeals for the Federal Circuit found that Merrick's allegations that the IRS had published a formula for calculating awards should an award be given, if true, were sufficient to create a contract. Id. at 726.

Like Griffin and Merrick, the record before me shows that (1) HHS published a manual that set forth the procedures and guidelines for calculating compensation should it adopt an employee suggestion, (2) Cooley submitted a suggestion, (3) HHS adopted the suggestion and implemented it, and (4) HHS made an award to Cooley. Under this set of facts, I find that a contract implied in fact arose between Cooley and HHS, which provides a proper basis for jurisdiction under the Tucker Act. See Griffin, 215 Ct.Cl. at 714.

*B. Contract Disputes Act*

**\*5** Defendant contends that this Court lacks jurisdiction under the Contract Disputes Act. [FN3] The Contracts Disputes Act ("CDA"), 41 U.S.C. §§ 601 et seq., amended the Tucker Act and removed district court jurisdiction over actions or claims against the United States, regardless of the amount in controversy, when founded upon an express or implied in fact procurement contract with the federal government. See Sims v. Local 308 Mailhandling, No. Civ.A.93-6814, 1994 WL 268252, at \*3 (E.D.Pa. June 15, 1994). Only a few courts have addressed the application of the CDA in the present context. Two courts have found that the implied contract created through an employee suggestion program is subject to the CDA and actions based upon such implied contracts are proper only in the United States Court of Federal Claims. See Hayes v. United States Postal Serv., 859 F.2d 354, 356-57 (5th Cir.1988) ( "Hayes I "); Piazza v. United States Postal Serv., No. CIV.A. 89-0115-Z, 1989 WL 160991, at \*2 (D.Mass. Dec.29, 1989). To the contrary, the United States Claims Court in Hayes v. United States ("Hayes II ") found that the CDA did not apply to the employee suggestion program in question [FN4] Hayes v. United States, 20 Cl.Ct. 150 (1990), aff'd, 928 F.2d 411 (Fed.Cir.1991). Like the United States Claims Court in Hayes II, I find that the transaction between Cooley and HHS does not fall within the parameters of the CDA because the employee suggestion program does not constitute procurement of a good or service. In Hayes II, the United States Claims Court found illogical the conclusion of the Court of Appeals for the Fifth Circuit that the employee suggestion program at issue constitutes "procurement of services." Hayes II, 20 Cl.Ct. at 153. I agree that the voluntary submission of a suggestion by plaintiff is not tantamount to providing a service. Cf. Lucas v. United States, 25 Cl.Ct. 298 (1992) (Contest competition creates a contract but does not constitute procurement contract.). Nor am I persuaded by defendant's contention that the substance of the suggestion constitutes property. Defendant has failed to cite any cases, and I have found none, to support its proposition that the idea

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 5

1997 WL 325846 (E.D.Pa.)

**(Cite as: 1997 WL 325846 (E.D.Pa.))**

submitted is property as defined by the CDA. In addition, modern jurisprudence reveals that ideas, in and of themselves, are not considered property worthy of legal protection. *See Masquerade Novelty, Inc. v. Unique Indus., Inc.,* 912 F.2d 663, 671 (3d Cir.1990) (Copyrights protect only expressions of ideas and not ideas themselves.); *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1253 (3d Cir.1983) (Patent affords protection only to the means of reducing an inventive idea to practice.).

> FN3. Defendant raised the issue of jurisdiction pursuant to the Contract Disputes Act for the first time in its reply brief. Because Cooley had the opportunity to respond and did respond to this particular argument in his sur-reply brief, I will consider the issue.

> FN4. After the Court of Appeals for the Fifth Circuit dismissed his claim, on the grounds that the United States Claims Court had exclusive jurisdiction over his lawsuit, Hayes brought his claim in that court.

Moreover, I find that the simplistic reasoning of the *Hayes I* court and the *Piazza* court, concluding that the CDA applies to employee suggestion programs, ignores the underlying purpose and spirit of the CDA. The CDA applies to contracts for the procurement of goods and services entered into by an executive agency. Title 41 provides the context for the type of contracts that fall within its purview. For example, subchapter IV of Title 41 delineates procurement procedures and discusses solicitation of bids and proposals, competitive bidding, and evaluation of sealed bids and competitive proposals. *See* 41 U.S.C. §§ 253, 253(a), 253(b), 253(c). There are no analogous procedures in an employee suggestion program. Therefore, I find that the CDA does not apply to the employee suggestion program, and the CDA does not preclude this Court from exercising jurisdiction.

*C. Labor Management Relations*

*6 Defendant contends that the amount of the monetary award is a labor management relations matter not subject to review by this Court. At the relevant time, a collective bargaining agreement ("CBA") was in effect between SSA and AFGE, of which Cooley is a member. Article 17 of the applicable CBA governs incentive awards, including suggestion awards. *See* Memorandum of Plaintiff, Exhibit 2. According to defendant, the terms of the CBA show that the employee suggestion program directly relates to the labor management relationship between plaintiff and SSA.

To support its contention, defendant cites to *Kroll v. United States,* 58 F.3d 1087 (6th Cir.1995), *Licata v. United States Postal Service,* No. CIV.A. 93-1386, 1995 WL 138940 (D.N.J. Mar.14, 1995), and *Hayes v. United States,* 20 Cl.Ct. 150 (1990). All three cases involved employees seeking additional compensation for suggestions adopted by their employer. Unlike the instant case, however, the cases cited by defendant involved postal service employees. Title 5 of the United States Code and the Postal Reorganization Act ("PRA") make clear that the employee suggestion program for the postal service is not authorized by 5 U.S.C. § 4503, the authorizing statute for other civilian employee suggestion programs. *See Kroll,* 58 F.3d at 1090 n. 4. A few courts have reasoned that the PRA is a comprehensive scheme governing benefits and compensation, that the PRA requires benefits and compensation to be determined through collective bargaining, and that the employee suggestion programs infer benefits and compensation, which leads to the conclusion that employee suggestion programs for the postal service are to be governed by the applicable CBA and thus part of the employment contract between the postal worker and the Postal Service. *Kroll,* 58 F.3d at 1091 & n. 4; *Hayes,* 20 Cl.Ct. at 154-55; *see Licata,* 1995 WL 138940, at *4.

Cooley is not a postal service employee and is not subject to the PRA. Unlike the courts in *Kroll, Hayes,* and *Licata,* I find that 5 U.S.C. § 4503 is the applicable statute authorizing the employee suggestion program and the attendant relationship between Cooley and HHS, and that there exists no

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1997 WL 325846 (E.D.Pa.)

**(Cite as: 1997 WL 325846 (E.D.Pa.))**

applicable comprehensive scheme analogous to the PRA. Therefore, I do not find the analyses of the cited postal-worker cases controlling.

Even more revealing, the CBA to which defendant directs this Court's attention was entered into by the AFGE and SSA. Memorandum of Plaintiff, Exhibit 2. Article 17 of the CBA provides:

> The Administration will encourage employees to file suggestions under the SSA Suggestion Program. Suggestions will be considered in a fair and equitable manner. Suggestion awards will be appropriate for tangible suggestions, intangible suggestions, and problem identification as defined in the SSA Suggestion System.

*See* Memorandum of Plaintiff, Exhibit 2, Article 17. However, SSA sent the suggestion to HHS, at that time the senior organization to the SSA; HHS has its own employee suggestion program and accompanying guidelines; HHS adopted the suggestion; and HHS distributed the award at issue. HHS is not a party to the CBA. Therefore, the terms of the CBA do not govern the relationship between Cooley and HHS, thus defeating the contention of defendant that the subject matter of the instant suit is a labor relations matter.

### IV. CONCLUSION

*7 In sum, I find that this Court has jurisdiction under the Tucker Act, as there exists a contract implied in fact between Cooley and the United States. Having found that the employee suggestion program at issue in the instant case is not subject to the provisions of the Contract Disputes Act and the subject of the instant lawsuit is not a labor relations matter, I find that jurisdiction in this Court is proper.

An appropriate Order follows.

### ORDER

AND NOW, this 9th day of June, 1997, upon consideration of the motion of defendant United States (Document No. 7) and the responses and various briefs of the parties relating thereto, having considered matters outside the pleadings submitted by both parties and construing the motion as one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and upon review of the pleadings, depositions, answers to interrogatories, admissions on file, affidavits, and other discovery of record, for the reasons set forth in the foregoing memorandum, having found that this Court properly exercises subject matter jurisdiction under the Tucker Act, it is hereby ORDERED that the motion is DENIED.

1997 WL 325846 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

- 2:96CV04310  (Docket)
  (Jun. 11, 1996)

END OF DOCUMENT

Page 6

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.