© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2001 WL 1808554 (Pa.Com.Pl.)
**(Cite as: 2001 WL 1808554 (Pa.Com.Pl.))**
<YELLOW FLAG>
Only the Westlaw citation is currently available.

Pennsylvania Court of Common Pleas.
Michael F. BABIARZ, Plaintiff
v.
BELL ATLANTIC-PENNSYLVANIA, INC.,
Bell-Atlantic Communications and Construction Services, Inc., Bell Atlantic Corporation, and Verizon Communications, Inc.,
Defendants
No. 1863 AUG.TERM 2000.

July 10, 2001.

OPINION

HERRON, J.

**\*1** This action involves the submission of a marketing plan by an employee to his employer, pursuant to the employer's solicitation of its employees for innovative ideas, and the alleged failure of the employer to compensate the employee or to keep the plan confidential from other branches of the company or give credit to the employee for his submission despite the employer's alleged assurances that the employee would receive credit for his idea.

Presently before this court are the Preliminary Objections of defendants, Bell-Atlantic-Pennsylvania ("BA-PA"), Bell Atlantic Communications and Construction Services, Inc. ("BACCSI"), Bell Atlantic Corporation ("Bell Atlantic") and Verizon Communications, Inc. ("Verizon"), to the Amended Complaint of plaintiff, Michael F. Babiarz ("Babiarz"), as well as plaintiff's response in opposition to the Preliminary Objections. Plaintiff has also filed a Petition to Amend his First Amended Complaint, which defendants oppose as to the proposed substantive amendments. For purposes of judicial economy, the court will consider both motions in conjunction with one another.

For the reasons set forth in this Opinion, the Preliminary Objections are overruled in part and sustained in part. Additionally, the Petition to Amend the First Amended Complaint is granted.

BACKGROUND

Taken as true, the operative facts, as pleaded in the Amended Complaint, are as follows. [FN1] Babiarz has been continually employed by defendant BA-PA and did not have an employment relationship with any defendant other than BA-PA. Am.Compl. at ¶ 1. Babiarz was employed in the capacity of a service technician to install and repair telephone lines and other telecommunications products. *Id.* at ¶ 6. Defendants BA-PA is a separate and distinct corporation from BACCSI. *Id.* at ¶¶ 2-3. Bell Atlantic had control over the business operations of BA-PA and BACCSI. *Id.* at ¶ 4. Verizon is the successor in interest to one or more of the defendants. *Id.* at ¶ 5. As alleged, a confidential and/or fiduciary relationship existed between Babiarz and Bell Atlantic and/or BA-Pa. *Id.* at ¶ 7.

> FN1. The Amended Complaint is attached at Exhibit A to the Preliminary Objections. All references to "Exhibits" in this Opinion shall be understood as those exhibits attached to defendants' Preliminary Objections, plaintiff's Response, and/or the respective memoranda.

In 1993, BA-PA began a series of seminars entitled "Bell Atlantic Way" in order to solicit its employees for new and innovative ideas to help BA-PA compete in the marketplace and boost its revenues. *Id.* at ¶ 8. Pursuant to this solicitation, Babiarz approached his immediate supervisor, Bill Fagan to explain that he had an idea but was wary that he might not get recognition for it. *Id.* at ¶ 9. Mr. Fagan assured him that he would protect the idea. *Id.* Under the belief that disclosure would be confidential, Babiarz then revealed the "Bell Atlantic Ready" plan to Mr. Fagan. *Id.*

The "Bell Atlantic Ready" plan was a marketing and technical plan or process whereby new home construction and other premises would be certified "Bell Atlantic Ready", meaning the inside wiring to the premises was in good working order. *Id.* at ¶ 10. The plan included the following elements: advanced home wiring, option for various multimedia taps, options for additional telephone taps, options for pre-wiring a home office, options for providing computer networking support, and options for providing home intercom systems in an integrated

home wiring system. *Id.* at ¶ 11. Babiarz suggested target markets including new home construction, existing homes and businesses being refitted with new wiring technologies. *Id.* He also suggested promotional devices such as gifting customers with complimentary services for a fixed period of time, delivery of promotional materials to home owners and other promotional devices. *Id.* Bell Atlantic Ready was allegedly the intellectual creation of Babiarz and it purportedly represented a new technical plan and business process, including marketing and promotional aspects. *Id.* at ¶ 12. The Bell Atlantic Ready plan was purportedly reduced to writing, in at least two documents which were disclosed by Babiarz. *Id.* at ¶ 13. As alleged, Babiarz, at no time, surrendered, transferred, abandoned and/or assigned his rights or interest in Bell Atlantic Ready to any of the defendants. *Id.* at ¶ 14. In addition, developing concepts, such as the Bell Atlantic Ready program, are purportedly not within Babiarz's usual scope of employment. *Id.* at ¶ 39. The program was allegedly developed by Babiarz during his own personal time. *Id.*

**\*2** Following the presentation of his idea to Mr. Fagan, Babiarz presented his idea to various supervisors in the company. ¶¶ 15-17. During these presentations, Babiarz believed that his disclosure would be held in confidence. *Id.* Babiarz also informed BA-PA that any patent and/or registration pertaining to Bell Atlantic Ready should reflect his invention, authorship and/or origination of the same, and that he should receive appropriate compensation if the idea is successful. *Id.* at ¶ 17. As alleged, Babiarz was assured that he would be recognized for the idea and, if it was successful, he would be entitled to the maximum amounts under the Champion Program and the Spirit of Excellence award program. *Id.* at ¶ 18. Babiarz was also assured that the full extent of the Champion Program benefits would be available to him despite the fact that he was not a member of management, but no such payments or recognition were ever made. *Id.*

Thereafter, BA-PA informed Bell Atlantic and/or BACCSI about Bell Atlantic Ready, who then purportedly acted in concert to deprive Babiarz of his property. *Id.* at ¶ 19. Defendants allegedly credited a non-union management employee, Chris Creager, instead of Babiarz, with the development and invention of Bell Atlantic Ready. *Id.* Incidentally, BA-PA pays full union wages under relevant collective bargaining agreements, while BACCSI is a corporation with either non-union employees or staffed by employees not paid according to full union scale at rates commensurate with employees hired by BA-PA. *Id.* The Bell Atlantic Ready program was disclosed to all defendants, notwithstanding any proprietary rights which Babiarz purportedly had to the program. *Id.* at ¶ 20. Also, the program is now referred to as Verizon Ready and incorporates all of the elements originally disclosed by Babiarz. *Id.* at ¶ 21.

From 1994 through 1995, Babiarz, unaware of the disclosure to BACCSI, cooperated with agents of BA-PA in developing Bell Atlantic Ready. *Id.* at ¶¶ 22-24. During the course of a teleconference in March, 1995, Babiarz was informed that Bell Atlantic would no longer pursue the Bell Atlantic Ready program. *Id.* at ¶ 24. At this time, Babiarz was informed that his offer of Bell Atlantic Ready was rejected. *Id.* at ¶ 25. During this time period, Babiarz maintained a "unit diary" which contained a chronological record of all occurrences related to the submission and development of Bell Atlantic Ready. *Id.* at ¶ 29. At some time after Babiarz was informed that Bell Atlantic would no longer be pursuing the idea, the unit diary disappeared and was purportedly stolen by BA-PA to defeat plaintiff's ability to substantiate that he originated the idea for Bell Atlantic Ready. *Id.*

In September, 1998, Babiarz heard a radio advertisement for Bell Atlantic Ready, which was the first time Babiarz knew that defendants had "appropriated" the program idea for commercial use. *Id.* at ¶ 30. Babiarz then contacted David Rufibach, his immediate supervisor, and requested a meeting with Malik Waliyyudin to discuss why he had not been recognized for the concept. *Id.* at ¶ 31. On October 1, 1998, the meeting took place. *Id.* at ¶ 32. On October 13, 1998, Babiarz encountered Mr. Waliyyudin and was informed that Chris Creager had been given the credit for Bell Atlantic Ready and that Babiarz had "signed away all of his rights." *Id.* at ¶ 33. On October 26, 1998, Babiarz wrote to Terri Dean, General Manager of Philadelphia Region of BA-PA, asking for recognition that he had originated the idea. *Id.* at ¶ 34. Then, in December, 1998, a meeting took place between Babiarz, Ms. Dean and Mr. Waliyyudin, in which they purportedly acknowledged that Bell Atlantic Ready had been developed by Babiarz. *Id.* at ¶ 35. Babiarz stated he would settle the matter if he received acknowledgment and his full compensation under the Champion program and Spirit of Excellence award. *Id.* In January, 1999, BA-PA refused to give Babiarz recognition but referred him to BACCSI. *Id* . at ¶¶ 36-37. On February 12, 1999, Babiarz wrote

BACCSI asking for recognition for the origination of Bell Atlantic Ready, to which BACCSI never responded. *Id.* at ¶¶ 38-39. BACCSI, at the behest of Bell Atlantic and BA-PA, has allegedly proceeded to market the Bell Atlantic Ready concept to the public and has realized profits of millions of dollars. *Id.* at ¶ 40.

**\*3** With this background, plaintiff filed its original Complaint on August 18, 2000. On October 10, 2000, defendants filed Preliminary Objections. On October 30, 2000, plaintiff filed an Amended Complaint, setting forth counts for civil conspiracy, accounting, conversion, unfair competition-misappropriation of trade secret, misappropriation of invention, breach of fiduciary duty, fraud, breach of contract and/or quasi-contract, unjust enrichment, restitution pursuant to § 136 of the Restatement of Restitution and breach of trust. Am.Compl. at ¶¶ 42-67. Plaintiff seeks both compensatory and punitive damages, as well as requesting the option to rescind its contract(s). Defendants have filed Preliminary Objections, setting forth a demurrer to each count of the Amended Complaint, and contend primarily that Babiarz cannot succeed on any of his claims because he does not have a property interest in the marketing suggestion made in his role as employee. Additionally, plaintiff has filed a Petition to file a Second Amended Complaint and defendants have filed a response, opposing any amendment as to the additional factual or substantive allegations and the proposed additional exhibits.

This court will address the respective motions *seriatim.*

## DISCUSSION
### I. PRELIMINARY OBJECTIONS

Rule 1028(a)(4) of the Pennsylvania Rules of Civil Procedure [Pa.R.C.P.] allows for preliminary objections based on legal insufficiency of a pleading or a demurrer. When reviewing preliminary objections in the form of a demurrer, "all well-pleaded material, factual averments and all inferences fairly deducible therefrom" are presumed to be true. *Tucker v. Philadelphia Daily News,* 757 A.2d 938, 941-42 (Pa.Super.Ct.2000). Preliminary objections, whose end result would be the dismissal of a cause of action, should be sustained only where "it is clear and free from doubt from all the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish [its] right to relief." *Bourke v. Kazara,* 746 A.2d 642, 643 (Pa.Super.Ct.2000) (citation omitted). However, the pleaders' conclusions of law, unwarranted inferences from the facts, argumentative allegations, or expressions of opinions are not considered to be admitted as true. *Giordano v. Ridge,* 737 A.2d 350, 352 (Pa.Commw.Ct.1999), *aff'd.* 559 Pa. 283, 739 A.2d 1052 (1999), *cert. denied,* 121 S.Ct. 307 (U.S.2000). In addition, it is not necessary to accept as true averments in the complaint which conflict with exhibits attached to the complaint. *Philmar Mid-Atlantic, Inc. v. York Street Associates II,* 389 Pa.Super. 297, 300, 566 A.2d 1253, 12 (1989).

Applying this standard to the present case, this court finds that plaintiff may maintain causes of action for rescission and unjust enrichment, breach of fiduciary duty, fraud, civil conspiracy and an accounting, but plaintiff may not maintain his other causes of action based on misappropriation of a trade secret or invention since he voluntarily submitted his marketing concept(s) to BA-PA pursuant to an employee solicitation with the expectation that he would be adequately compensated and given credit for the idea.

A. *Plaintiff Has Sufficiently Stated a Cause of Action for Civil Conspiracy Which May in Conjunction with Valid Rescission, Unjust Enrichment and Breach of Fiduciary Duty Claims*

**\*4** Defendants rely on three grounds for demurrer to this count: (1) there is no underlying cause of action to support the purported conspiracy; (2) plaintiff has failed to allege that defendants acted with the requisite malice; and (3) plaintiff has failed to plead sufficient facts to support his claim. Defs. Mem. of Law, at 8. In response, plaintiff argues that defendants were not acting to further a "legitimate" business purpose, but instead, "stole [Babiarz's] idea and transferred it to their non union (or lower wage scale) subsidiary and credited a non-union management employee with the development of the idea so as to avoid in part any obligation under relevant collective bargaining agreements." Plaintiff contends that this conduct may violate the National Labor Relations Act, 29 U.S.C. 158(a)(1) and (5). [FN2] Pl. Mem. of Law, at 9. Alternatively, plaintiff asserts that defendants fraudulently induced Babiarz to reveal a trade secret, which is not a legitimate business interest. *Id.*

> FN2. Incidentally, in his Complaint, plaintiff does not explicitly present a claim for a violation of the National Labor Relations Act and this court cannot now construe any

of the allegations to imply such a violation.

In order to state a civil action for conspiracy, plaintiff must allege the following: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose and (3) actual legal damage." *McKeeman v. Corestates Bank, N.A.,* 751 A.2d 655, 660 (Pa.Super.Ct.2000) (citations omitted). Further, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Id.* (citing *Pelagatti v. Cohen,* 370 Pa.Super. 422, 431, 536 A.2d 1337, 1342 (1987)). In addition, "[p]roof of malice, i.e., an intent to injure, is essential in proof of a conspiracy." *Skipworth by Williams v. Lead Indus. Ass'n,* 547 Pa. 224, 235, 690 A.2d 169, 174 (1997)(citing *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 211, 412 A.2d 466, 472 (1979)). However, plaintiff need not aver specifically the time, place or date for a conspiratorial meeting or the precise date on which the conspiracy was entered. *Smith v. Wagner,* 403 Pa.Super. 316, 324, 588 A.2d 1308, 1312 (1991)(quoting P.L.E. Conspiracy § 26).

In Count I, plaintiff alleges in pertinent part that:
 43. The actions of the defendants, jointly and severally, constituted a civil conspiracy amongst them to engage in a concerted action for an illegal, unlawful and/or inappropriate purpose, namely to convert plaintiff's interests and property in and to Bell Atlantic Ready for the interests of BACCSI and/or the other defendants and to deprive the plaintiff of his rights and/or entitlements with respect to the appropriation of Bell Atlantic Ready by BACCSI and/or others acting in conjunction with and/or conspiracy with BACCSI.
 44. The defendants herein acted with malice and intent to deprive the plaintiff of his lawful interests in aforesaid.

Am.Compl. at ¶¶ 43-44. Plaintiff also alleged that defendants, acting in concert, were motivated by an improper and/or illegal attempt to have BA-PA avoid paying full union wages as required by the collective bargaining agreements and give the credit for Bell Atlantic Ready to a non-union management employee, Chris Creager. *Id.* at ¶ 19.

**\*5** Taking these allegations as true, as this court must for purposes of a demurrer, it seems that plaintiff has alleged the sufficient elements for a civil conspiracy count. Further, the allegation in paragraph 19 of the Amended Complaint is sufficient to set forth the requisite malice. In addition, the allegations in the Amended Complaint, as a whole, are sufficiently factually specific to enable defendants to prepare their defense and apprise them of the nature of the civil conspiracy claim. *See Krajsa v. Keypunch, Inc.,* 424 Pa.Super. 230, 235, 622 A.2d 335, 357 (1993). "It is not necessary that the plaintiff identify the specific legal theory underlying the complaint." *Id. See also, In re The Barnes Foundation,* 443 Pa.Super. 369, 381, 661 A.2d 889, 895 (1995)("a pleading should formulate the issues by fully summarizing the material facts, and as a minimum, a pleader must set forth concisely the facts upon which [the] cause of action is based.").

The real issue rests with whether plaintiff has stated any viable, underlying cause of action. This court, as discussed below, finds that plaintiff has sufficiently stated his claims for rescission and unjust enrichment, as well as his claims for breach of fiduciary duty and fraud. Plaintiff, thus, may maintain his civil conspiracy claim with respect to these underlying claims.

Therefore, the Preliminary Objections to Count I are overruled.

B. *Plaintiff May Maintain a Cause of Action for an Accounting as Incident to His Underlying and Viable Causes of Action*

Defendants assert that Babiarz's claim for an accounting must also fail under Pa.R.C.P. 1021 because there is no underlying claim for breach of contract. Alternatively, defendants contend that Babiarz has no claim under Pa.R.C.P. 1530 because (1) there is no fiduciary relationship between an employee and employer giving rise to a duty to account for economic activity relating to one of defendants' products; (2) Babiarz failed to allege sufficient facts for a cause of action for fraud; and (3) Babiarz has failed to allege facts which establish that he has no adequate remedy at law. Defs. Mem. of Law, at 11-12. Plaintiff, in turn, argues that it has adequately alleged a fiduciary relationship, as well as fraud and misrepresentation claims against defendants. Pl. Mem. of Law, at 10. Plaintiff also argues that he is entitled to an accounting on an independent basis because of the alleged misappropriation of a trade secret. *Id.* at 10-11.

In requesting an accounting, a complaint "seeks to turn over to the party wrongfully deprived of possession all benefits accruing to defendant by reason of its wrongful possession." *Boyd & Mahoney v.. Chevron U.S.A.,* 419 Pa.Super. 24, 35, 614 A.2d

1191, 1197 (1992). In reviewing a request for an accounting, "it is reasonable for the court to permit some latitude since often times it is not certain what claims a plaintiff may have until the accounting is completed." *In re Estate of Hall,* 517 Pa. 115, 136, 535 A.2d 47, 58 (1987). An equitable accounting is proper where a fiduciary relationship exists between the parties, where fraud or misrepresentation (of the correct amount due) is alleged, or where the accounts are mutual or complicated, and plaintiff does not possess an adequate remedy at law. *Rock v. Pyle,* 720 A.2d 137, 142 (Pa.Super.Ct.1998)(citing *Buczek v. First Nat'l Bank of Mifflintown,* 366 Pa.Super. 551, 556, 531 A.2d 1122, 1124 (1987)). *See also, Pittsburgh's Airport Motel, Inc. v. Airport Asphalt and Excavating Co.,* 469 A.2d 226, 229 (Pa.Super.1983); *Meier v. Maleski,* 648 A.2d 595 (Pa.Commw.Ct.1994).

**\*6** Alternatively, plaintiff may seek his remedy for an accounting under Pa.R.C.P. 1021. However, the right to relief pursuant to Rule 1021 is "merely an incident to a proper assumpsit claim." *Buczek,* 366 Pa.Super. at 555, 531 A.2d at 1123. Additionally, a plaintiff may seek an accounting for profits under a contract to assign a purported invention. *See Sylvester v. Simplex Engineering Co.,* 326 Pa. 235, 241-42, 192 A. 125, 128 (1937)(affirming decree ordering an accounting for profits earned by defendant corporation from invention assigned by alleged inventor/employee).

In Count II, plaintiff avers that defendants should provide an accounting to the plaintiff for all economic activity which they have engaged in pertaining to the marketing and/or sale of Bell Atlantic Ready, on account of the defendants' alleged misappropriation of the program. Am.Compl. at ¶ 46. Plaintiff also has alleged that a confidential and/or fiduciary relationship existed between himself and Bell Atlantic and BA-PA. *Id.* at ¶¶ 6, 15. Like the civil conspiracy claim, the count for an accounting may only survive if one or more of the other counts also survive. Since some of plaintiff's other claims will withstand demurrer, the count for an accounting may also remain. Therefore, the Preliminary Objections to Count II are overruled.

C. *Plaintiff May Not Maintain a Cause of Action for Conversion Where His Idea--the "Bell Atlantic Ready" Plan Was Voluntarily Submitted by Plaintiff to His Employer Pursuant to an Employee Solicitation to Boost the Company's Revenues*

Defendants demur to Count III, sounding in conversion, on the grounds that plaintiff has not sufficiently pled and cannot prove that he has any property interest in Defendants' Verizon Ready program. Defs. Mem. of Law, at 13. Defendants argue that Babiarz admits he submitted his idea for Bell Atlantic Ready to the Champion Program, which purportedly provides that once the marketing suggestion is made, it becomes the "sole property of Bell Atlantic and the Champion Program." *Id. See also,* Prel.Obj., Exhibit B. Plaintiff, in turn, argues that he alleged a property interest in Bell Atlantic Ready in paragraphs 10 thru 13 of the Amended Complaint, and that the concept is a business method giving rise to a property interest. Pl. Mem. of Law, at 16. Plaintiff also argues that he alleged that defendants used or possessed Bell Atlantic Ready without lawful justification and without Babiarz's permission. Id. at 17. [FN3]

> FN3. Alternatively, defendants argue that Babiarz admits, in paragraphs 9 and 47 of his first complaint, that his idea is a "shop right," allowing BA-PA as employer to a non-exclusive and non-transferrable royalty-free license. Defs. Mem. of Law, at 14. At oral argument, plaintiff's council clarified that the allegation in the first complaint "was that [plaintiff] had a shop right, not the defendant, [b]ut that was a misuse of the notion of a shop right ... and there was certainly nothing to suggest that defendant had a shop right." 4/23/01 N.T. at 35.
> As explained by the Pennsylvania Superior Court, a "shop right" arises "where the employee devises the invention on the employer's time and at the latter's expense using his materials and facilities, and allows him to use the invention without special compensation." *Aetna-Standard Engineering Co. v. Rowland,* 343 Pa.Super. 64, 70-71, 493 A.2d 1375, 1379 (1985). The court explained that the shop-right rule creates an exception from the employee's patent right to exclude others from making or using his invention. *Id.* at 70, 493 A.2d at 1379. It also stated that "[a]s in the law on assignment of inventions, the employment relationship, standing alone, does not give the employer a shop right; the employer might have to show an express agreement for the right." *Id.* Additionally, "absent an express contrary agreement, an employee must assign his invention to his employer if he was hired for the purpose of using his

inventive ability to solve a specific problem or to design a certain procedure or device for the employer." *Id.* at 70, 493 A.2d at 1378.

Here, plaintiff explicitly alleges that he was hired as a service technician and that developing concepts, like the Bell Atlantic Ready plan, are not within the usual scope of plaintiff's employment and was developed by plaintiff during his own personal time. Am.Compl. at ¶¶ 6, 39. Further, plaintiff's disclosure of his plan was allegedly made pursuant to assurances that he would receive appropriate compensation and credit and that the plan would be kept confidential. *Id.* at ¶¶ 9, 15-18. Additionally, plaintiff alleged that he, at no time, surrendered, transferred, abandoned or assigned his rights or interest in Bell Atlantic Ready to any of the defendants. *Id.* at ¶ 14. However, plaintiff also alleges that he participated with other Bell Atlantic employees in developing his idea for Bell Atlantic Ready between June of 1994 and January of 1995 when the idea was recommended for a trial study in the Baltimore Region to be conducted in April of 1995. *Id.* at 23. Since these allegations are somewhat contradictory, this court cannot now determine whether any of the defendants had a "shop right" in the Bell Atlantic Ready concept, which remains a factual issue. Yet, it appears that some sort of agreement did exist between plaintiff and BA-PA to use and develop the Bell Atlantic Ready plan in exchange for appropriate compensation. Still, plaintiff does not state a cause of action for conversion.

Conversion is defined under Pennsylvania law as: "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *McKeeman v. Corestates Bank, N.A.,* 751 A.2d 655, 659 n. 3 (Pa.Super.Ct.2000)(quoting *Stevenson v. Economy Bank of Ambridge,* 413 Pa. 442, 451, 197 A.2d 721, 726 (1964)). Accord, *L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc.,* 2001 WL 515071, at *5 (Pa.Super.Ct. Apr. 30, 2001). The party claiming conversion must have had actual or constructive possession of a chattel or an immediate right to possession of a chattel at the time of the alleged conversion. *Chrysler Credit Corp. v. Smith,* 434 Pa.Super. 429, 434, 643 A.2d 1098, 1100 (1994) (citation omitted). "Money may be the subject of conversion." *McKeeman,* 751 A.2d at 659 n. 3 (quoting *Shonberger v. Oswell,* 365 Pa.Super. 481, 484-85, 530 A.2d 112, 114 (1987)). However, "failure to pay a debt is not conversion." *Bernhardt v. Needleman,* 705 A.2d 875, 878 (Pa.Super.Ct.1998)(citing *Petroleum Marketing v. Metropolitan Petroleum Corp.,* 396 Pa. 48, 52, 151 A.2d 616, 619 (1959)).

**\*7** Additionally, a fraudulent conversion claim requires that "the money or property so fraudulently withheld or converted by the defendant must have belonged to the party so injured." *Pearl Assurance Co. v. National Ins. Agency, Inc.,* 151 Pa.Super. 146, 155, 30 A.2d 333, 337 (1943). The *Pearl Assurance* court also stated the following with regard to this tort:

> [i]t did not apply to one who borrowed money, even though he may have had no intention of paying the loan, for by the act of lending, the money became the property of the borrower ...; nor to articles or property transferred to the defendant with the purpose and intent of passing to him the property and title; nor is it to be applied as a means of collecting a mere debt; nor to assignment of a debt. It does apply, however, where the money, securities, or property belonging to A. are intrusted [*sic*] to the defendant to deliver to B., or to sell or dispose of the same, and to collect and pay the money received or the net proceeds arising from such sale or disposal to A., and instead he fraudulently applies the same to his own use ....

*Id.* at 155, 30 A.2d at 337 (citations and internal quotations omitted).

Plaintiff repeatedly alleged that Bell Atlantic Ready was his idea or his property, which he disclosed to supervisors of BA-PA under the belief that the information would be confidential and that he would receive recognition and compensation. Am.Compl. at ¶¶ 9-12. He also alleged that he never abandoned, transferred or assigned his interest in the concept to any of the defendants. *Id.* at ¶ 14. He also alleged that he was assured that if the idea was successful, he would be entitled to the maximum amounts under the Champion Program and Spirit of Excellence award program, but that no such payments or recognition were ever made. *Id.* at ¶ 18. Plaintiff further alleged that notwithstanding the fact that Bell Atlantic Ready was a proprietary concept and property belonging to Babiarz, BA-PA and Bell Atlantic caused the concept to be transferred and disclosed to BACCSI for its commercial purposes, and/or to its successor, Verizon. *Id.* at ¶ 20. Such conduct is alleged to have

unlawfully deprived Babiarz of the use and possession of Bell Atlantic Ready and have interfered with his ability to benefit from his invention, ownership and control. *Id.* at ¶ 48.

Even taking these allegations as true, this court finds that plaintiff has not stated a cause of action for conversion. Rather, plaintiff alleges, and therefore admits, that he voluntarily submitted his idea for Bell Atlantic Ready pursuant to a solicitation of employees for new ideas to help BA-PA compete in the marketplace and boost its revenues. *Id.* at ¶ 9. He alleges, and therefore admits, that he worked with other employees of BA-PA in developing his idea. *Id.* at ¶¶ 22-23. [FN4] Further, he alleges, and therefore admits, that he expected to be compensated to the maximum extent allowed by the Champion Program and Spirit of Excellence award(s). *Id.* at ¶¶ 18, 35. These allegations, in their clearest and truest sense, reflect that Babiarz did not have actual or constructive possession of his idea in the Bell Atlantic Ready plan, or an immediate right to possession of his idea. Rather, all of plaintiff's allegations, taken together, sound more like a failure to appropriately compensate plaintiff for his idea despite an alleged agreement or assurances that he would be paid such compensation. No conversion action would lie in this instance under the facts alleged. Admittedly, "parties are liberally granted leave to amend their pleadings." *Frey v. Pennsylvania Elec. Co.,* 414 Pa.Super. 535, 538, 607 S.2d 796, 797 (1992). However, this court cannot now surmise how plaintiff will be able to plead facts to sustain a cause of action in conversion.

> FN4. The allegations in paragraphs 22 and 23 of the Amended Complaint indicate that defendants could arguably have had a "shop right" in Bell Atlantic Ready, since they helped develop the idea. Nonetheless, factual issues exist which prevent the court from making that determination at this time. *See* note 3 *supra.*

**\*8** For these reasons, the Preliminary Objections to Count III are sustained with prejudice.

D. *Plaintiff Cannot Maintain Causes of Action for Misappropriation of Trade Secret, Or Misappropriation of Invention since Plaintiff Voluntarily Disclosed His Idea for the Benefit of His Employer and Plaintiff Is Still an Employee of the Defendant BA-PA*

With respect to Count IV of the Amended Complaint for misappropriation of trade secret, defendants assert that Pennsylvania law does not recognize a cause of action for unfair competition or misappropriation of a trade secret by an employee against his employer. Defs. Mem. of Law, at 15-19. In response, plaintiff contends that no Pennsylvania court has limited trade secret actions to those claims brought by an employer against an employee; that trade secret claims are recognized in relationships other than an employer/employee; and that it sufficiently alleged that plaintiff had disclosed the Bell Atlantic Ready business method under the belief that a confidential relationship existed between plaintiff and defendants. Pl. Mem. of Law, at 24-28.

As to Count V for misappropriation of invention, defendants argue that plaintiff has failed to allege that he is the owner of an invention; that any such invention has not been patented, trademarked or otherwise safeguarded; or that it was Babiarz who invested the time, effort and money in developing the Bell Atlantic Ready idea. Defs. Mem. of Law, at 19-20. Plaintiff, in turn, contends that he has sufficiently alleged that he was in possession of an invention in the Bell Atlantic Ready plan, which was misappropriated when defendants unlawfully seized it. Pl. Mem. of Law, at 29-35.

Notwithstanding plaintiff's allegations, this court finds that plaintiff cannot maintain either a cause of action for misappropriation of trade secret or misappropriation of an invention since plaintiff's allegations belie themselves and negate the essential requirement that defendants somehow "misappropriated" property belonging to the plaintiff where plaintiff submitted the Bell Atlantic Ready program to be used in defendants' business.

Black's Law Dictionary (6th ed.1990) defines "misappropriation" as "[t]he unauthorized, improper, or unlawful use of funds or other property for purpose other than that for which intended." The Pennsylvania Superior Court also described the tort of "misappropriation" as having three elements: (1) plaintiff "has made a substantial investment of time, effort and money into creating the thing misappropriated such that the court can characterize that 'thing' as a kind of property right," (2) the defendant "has appropriated the 'thing' at little or no cost, such that the court can characterize defendant's own actions as 'reaping where it has not sown,' " and (3) the defendant "has injured plaintiff by the misappropriation." *Sorbee Int'l. Ltd. v. Chubb Custom Ins. Co.,* 735 A.2d 712, 716 (Pa.Super.Ct.1999)(quoting *Lebas Fashion Imports*

of USA, Inc. v. ITT Hartford Ins. Group, 50 Cal.App.4th 548, 561, 59 Cal.Rptr.2d 36, 43 (1996)). [FN5]

> FN5. Though *Sorbee* addressed a very different issue, i.e., whether a manufacturer's misuse of certain terms involved a misappropriation of advertising ideas within the meaning of a commercial liability insurance policy, this court finds its definition of "misappropriation" to be persuasive in the present case, notwithstanding that it relied on a California case.

**\*9** A cause of action for misappropriation of trade secrets requires the plaintiff to plead the following elements:

> (1) that there was a trade secret ...; (2) that it was of value to *employer* [owner] and important in the conduct of his business; (3) that by reason of discovery of ownership the *employer* had the right to the use and enjoyment of the secret; and (4) that the secret was communicated to the employee while he was in a position of trust and confidence and under such circumstances to make it inequitable and unjust for him to disclose it to others, or to make use of it himself, to the prejudice of his employer.

*A.M. Skier Agency, Inc. v. Gold,* 747 A.2d 936, 940 (Pa.Super.Ct.2000)(citing *Gruenwald v. Advanced Computer Applications, Inc.,* 730 A.2d 1004, 1012-13 (Pa.Super.Ct.1999)(emphasis added). Moreover, an employer is entitled to protect its confidential or trade secret information, independent of a non-disclosure agreement, pursuant to the law of agency or unfair trade practices. *Carl A. Colteryahn Dairy, Inc. v. Schneider Dairy,* 415 Pa. 276, 284, 203 A.2d 469, 473 (1964); *Morgan's Home Equip. v. Martucci,* 390 Pa. 618, 622, 136 A.2d 838, 842 (1957).

Further, as provided by Section 1 of the Restatement (Third) of Unfair Competition,

> One who causes harm to the commercial relations of another by engaging in a business or trade is not subject to liability to the other for such harm unless: (a) the harm results from ... other acts or practices of the actor determined to be actionable as an unfair method of competition, taking into account the nature of the conduct and its likely effect on both the person seeking relief and the public; ...

Rest. (Third) Unfair Competition § 1 (1995). Comment (g) to that section states the following in pertinent part:

> A primary purpose of the law of unfair competition is the identification and redress of business practices that hinder rather than promote the efficient operation of the market .... An act or practice is likely to be judged unfair only it if substantially interferes with the ability of others to compete on the merits of their products or otherwise conflicts with accepted principles of public policy recognized by statute or common law. As a general matter, if the means of competition are otherwise tortious with respect to the injuries, they will also ordinarily constitute an unfair method of competition.... *A competitor who diverts business from another by means of fraudulent misrepresentations or through the wrongful use of confidential information, for example, may in some circumstances be subject to liability for unfair competition even if the conduct is not specifically actionable under the rules relating to deceptive marketing or the appropriation of trade secrets* .... A person likely to be damaged by unfair competition of another may obtain an injunction against a continuation of the conduct. The court may also award appropriate monetary relief.

**\*10** Rest. (Third) Unfair Competition § 1, cmt. (g) (emphasis added). *See also, Lakeview Ambulance and Medical Servs., Inc. v. Gold Cross Ambulance and Medical Servs., Inc.,* 1995 WL 842000, At \*3 (C.P. Mercer Cty. Oct. 18, 1995)(denying demurrer to count for unfair competition).

Such an action usually involves a former employee who acquires the trade secrets or inventions of his former employer and utilizes them to the employer's disadvantage after leaving the company. *Gruenwald,* 730 A.2d at 1012. However, similar to the present case, in *Gruenwald,* the plaintiff, a former employee/director of the corporation, alleged that he retained "ownership" of the technology he created for the company, and that the company's use of his technology was a misappropriation of his trade secret. *Id.* at 1013. The court ruled that "[b]y reserving ownership of his 'inventions' rather than assigning them to the corporation, [the director/employee] was not operating in the company's best interest. *Id.* The court also found that plaintiff had produced no patents issued to him for the technology or a licensing agreement permitting the company to use the technology, but that the defendant/company had produced a licensing agreement to use certain language, and plaintiff had registered his trademark in the technology, on behalf of the company. *Id.* Therefore, the court found that

any protectable trade secrets belonged to the company, which, at least, held a shop right or a license to use the technology. *Id.* at 1013-14.

Here, plaintiff's own allegations indicate that his Bell Atlantic Ready plan was intended to be used to boost BA-PA's revenues; that plaintiff would be compensated pursuant to the company's rewards program--the Champion Program; and that the idea was developed in 1994 to 1995 by plaintiff and other Bell Atlantic employees until the company decided to no longer pursue it, but rejected the plaintiff's offer. Am.Compl. at ¶¶ 9, 18, 23-25. The problem rests with what occurred after the plan was purportedly rejected, i.e., the alleged failure to credit or compensate plaintiff for the idea, giving credit instead to a non-union management employee and causing the plan to be disseminated to BACCSI, a purportedly separate corporation from BA-PA, which also refused to give plaintiff credit despite plaintiff's inquiry. *Id.* at ¶¶ 30-39. This conduct of defendants is alleged to constitute unfair competition by appropriation of a trade secret and unlawful appropriation of an invention from its rightful inventor, resulting in the destruction of plaintiff's patent rights. *Id.* at ¶¶ 50, 52. Even taking as true these allegations, this court does not find that plaintiff has stated a claim for "misappropriation" as to either count. Rather, plaintiff's redress is more properly addressed by contract or quasi-contract principles. [FN6]

> FN6. In making this determination, this court does not now say that the plaintiff's idea is not sufficiently novel or concrete. Rather, the circumstances of the disclosure and the use by the defendants appear to be fundamentally based on contract or quasi-contract principles, rather than misappropriation of a trade secret. *See* Rest. (Third) Unfair Competition § 39, cmt. h (1995).

Therefore, the demurrers to Counts IV and V are sustained with prejudice.

E. *Plaintiff Has Pled The Bare Allegations To Make Out A Cause of Action For Breach of Fiduciary Duty In Order To Withstand Demurrer*

**\*11** Defendants demur to Count VI on the grounds that Pennsylvania law does not recognize a claim for breach of fiduciary duty by an employee against his employer based the employee's claimed property interest from submission of a marketing concept and that plaintiff has failed to allege any misrepresentation made by defendants or the other requisite elements for this cause of action. Defs. Mem. of Law, at 21. In response, plaintiff argues that he has sufficiently stated a cause of action for breach of fiduciary duty relating to his submission of the Bell Atlantic Ready plan. Pl. Mem. of Law, at 36-37.

This court now finds that the plaintiff has sufficiently stated the elements for a breach of fiduciary duty based on the alleged confidential relationship.

Recently, the Pennsylvania Superior Court repeated the general concepts for finding a confidential relationship and the resulting fiduciary duty in *Basile v. H & R Block, Inc.,* 2001 WL 460913, at \*4-5 (Pa.Super.Ct. May 3, 2001). "The essence of [a confidential] relationship is trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other." *Id.* at \*4 (quoting *In re Estate of Scott,* 455 Pa. 429, 432, 316 A.2d 883, 885 (1974). A confidential relationship thus exists where the parties do not deal on equal terms, "but, on the one side there is an overmastering influence, or on the other, weakness, dependence or trust, justifiably reposed." *Id.* (quoting *Frowen v. Blank,* 293 Pa. 137, 145-46, 425 A.2d 412, 416-17 (1981). "[T]he party in whom the trust and confidence are reposed must act with scrupulous fairness and good faith in his dealings with the other and refrain from using his position to the other's detriment and his own advantage." *Id.* (quoting *Young v. Kaye,* 443 Pa. 335, 342, 279 A.2d 759, 763 (1971). "[A] confidential relationship and the resulting fiduciary duty may attach 'wherever one occupies toward, another such a position of advisor or counsellor [*sic* ] as reasonably to inspire confidence that he will act in good faith for the other's interest'." *Id.* at \* 5 (citation omitted). Such a relationship may be found as between trustee and cestui que trust, guardian and ward, attorney and client, or principal and agent, or where the facts and circumstances so indicate and are apparent on the record. *Id.*

Here, plaintiff alleged that a confidential and/or fiduciary relationship existed between plaintiff and defendants Bell Atlantic and/or BA-PA. Am.Compl. at ¶ 7. Plaintiff also alleged that he disclosed his idea for Bell Atlantic Ready to his supervisors, at different instances, under the belief and representation that his disclosure would be held confidential and the representation by management that his idea would be protected and he would receive recognition. *Id.* at ¶¶

9, 15, 16, 26, 27. Further, plaintiff alleged that BA-PA and Bell Atlantic caused the Bell Atlantic Ready plan to become known to BACCSI in order to deprive plaintiff of his property and avoid BA-PA from having to pay full union wages for the plan as was required by the relevant collective bargaining agreements by crediting a non-union management employee and not the plaintiff with the development and invention of Bell Atlantic Ready. *Id.* at ¶ 19. Plaintiff also alleged that BA-PA stole the plaintiff's "unit diary" to hinder plaintiff's ability to substantiate that he originated the idea for Bell Atlantic Ready. *Id.* at ¶ 29. Additionally, plaintiff alleged that Bell Atlantic and BA-PA acted in a fiduciary and/or confidential capacity with respect to plaintiff's interests and caused plaintiff to "trust and rely upon their treating him fairly and dealing with him at a non-arms length, good faith, fair dealing basis" but they failed to treat plaintiff in this way. *Id.* at ¶¶ 54-55.

**\*12** Accepting these allegations as true, this court cannot now say with certainty that plaintiff cannot maintain his count for breach of fiduciary duty. Therefore, the demurrer to Count VI is overruled. [FN7]

> FN7. This court also notes that normally, it is the agent or employee who owes the fiduciary duty to his principal or employer, and not the other way around. *See* Restatement (Second) of Agency § 395 (1957). However, it is not clear that an employer can never owe a confidential or fiduciary duty to his employee if the circumstances warrant finding such a duty. Here, plaintiff will have to adduce clear and precise evidence to maintain his claim and prove the existence of a fiduciary relationship.

F. *Plaintiff's Claim for Fraud Withstands Demurrer Where it Alleges That Defendants Had a Present Intent to Not Honor Their Promises to Adequately Compensate Plaintiff failed to Recognize Plaintiff for His Idea Despite Their Assurances*

Defendants demur to plaintiff's count for fraud on the grounds that (1) the terms and conditions of the Champion program negate plaintiff's cause of action for fraud; (2) defendants were not under a duty to inform plaintiff as to any information concerning the Bell Atlantic Ready plan and plaintiff cannot duplicate his conversion claim and recast it in fraud; (3) plaintiff cannot maintain a fraud claim based on a promise to pay him in the future; and (4) plaintiff's allegations for fraud are insufficiently specific. Defs. Mem. of Law, at 22-26. In response, plaintiff argues that (1) defendants improperly rely upon Champion program documents which are outside of the record and not verified by defendants; (2) defendants were under a duty to disclose information concerning their plans for Bell Atlantic Ready which they failed to do; (3) plaintiff sufficiently alleges that at the time defendants made their promises, they had no present intent to honor them; and (4) that plaintiff has set forth sufficient facts to show that defendants fraudulently induced the disclosure of the Bell Atlantic Ready plan. Pl. Mem. of Law, at 37-41.

"Fraud is a claim easily made but difficult to support. Once an allegation of fraud is injected into a case, even though it may ultimately be shown to be without any arguable merit, the whole tone and tenor of the matter changes." *New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.,* 387 Pa.Super. 537, 553, 564 A.2d 919, 927 (1989). It "consists of anything calculated to deceive whether by single act or combination, or by suppression of truth, or suggestion of what is false whether it be by direct falsehood or by innuendo, by speech or silence, word of mouth, or look or gesture." *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 107, 464 A.2d 1243, 1251 (1983)(citing *Frowen v. Blank,* 493 Pa. 137, 143, 425 A.2d 412, 415 (1981)). It is also true that "the breach of a promise to do something in the future is not actionable in fraud." *Shoemaker v. Commonwealth Bank,* 7000 A.2d 1003, 1006 (Pa.Super.Ct.1997)(citing *Krause v. Great Lake Holdings, Inc.,* 387 Pa.Super. 56, 67, 563 A.2d 1182, 1187 (1989)). However, a statement of present intention, made at the time of contracting, which is false when uttered may constitute a fraudulent misrepresentation of fact. *Brentwater Homes, Inc. v. Weibley,* 471 Pa. 17, 23, 369 A.2d 1172, 1175 (1977). *See also, College Watercolor Group, Inc. v. Newbauer,* 428 Pa. 103, 115, 360 A.2d 200, 206 (1976).

**\*13** To establish a cause of action for fraudulent misrepresentation, the plaintiff must allege the following elements:
(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Bortz v. Noon,* 556 Pa. 489, 499, 729 A.2d 555, 560 (1999)(citing *Gibbs v. Ernst,* 538 Pa. 193, 207, 647 A.2d 882, 889 (1994). Further, "[t]he tort of intentional non-disclosure has the same elements as intentional misrepresentation 'except in the case of intentional non-disclosure, the party intentionally conceals a material fact rather than making an affirmative misrepresentation." ' *Id. See* Restatement (Second) of Torts, § 550 (1976)(describing liability for fraudulent concealment). "Mere silence in the absence of a duty to speak, however, cannot suffice to prove fraudulent concealment." *Sevin v. Kelshaw,* 417 Pa.Super. 1, 9, 611 A.2d 1232, 1236 (1992) (citation omitted). In addition, "[a] misrepresentation is material if it is of such character that had it not been made, or ... had it been made, the transaction would not have been consummated." *Id.* at 10, 611 A.2d at 1237.

Moreover, under Pa.R.C.P. 1019(b), allegations of fraud must be pled with particularity. *See also, Martin v. Lancaster Battery Co.,* 530 Pa. 11, 18, 606 A.2d 444, 448 (1992)(an allegation of fraud must "explain the nature of the claim to the opposing party so as to permit the preparation of a defense" and be "sufficient to convince the court that the averments are not merely subterfuge.").

In Count VII of the Amended Complaint, which was mislabelled as Count V,   [FN8] plaintiff sets forth the following allegation:

> FN8. As discussed *infra,* plaintiff, in his Petition to Amend the Complaint, moves to correct this defect in numbering. As defendants do not oppose this correction, the court will grant this portion of plaintiff's petition.

58. The actions of the defendants, acting in concert with each other, constituted a fraud upon the plaintiff in that, inter alia, they materially concealed from the plaintiff that Bell Atlantic Ready, in which the plaintiff had an interest, property and otherwise, would be converted to the use of BACCSI and/or one or more of the other defendants without the permission and/or knowledge of the plaintiff. The defendants also defrauded the plaintiff in that they falsely represented to the plaintiff that he would be paid for Bell Atlantic Ready and/or receive compensation, adequate in nature, for the use of Bell Atlantic Ready.

Am.Compl. at ¶ 58. Plaintiff also alleged that he was assured by Bill Fagan, his supervisor, and Joe Sheely, Fagan's supervisor, that he would be recognized for his idea and would be entitled to the maximum amounts under the Champion Program and Spirit of Excellence award program if the idea was successful and despite the fact that he was not a member of management. *Id.* at ¶ 18. However, as alleged, no such payments or recognition were ever made. *Id.* Further, plaintiff alleged that his offer of Bell Atlantic Ready was rejected in 1995 after certain development meeting had taken place, but that, in 1998, plaintiff had learned that defendants had appropriated Bell Atlantic Ready for their own use. *Id.* at ¶¶ 24-25, 30. Additionally, plaintiff alleged that the assurance(s) that he would receive adequate and appropriate compensation and recognition for Bell Atlantic Ready were material inducements for him to disclose Bell Atlantic Ready, were made with the intent to deceive the plaintiff, caused plaintiff to believe that he would be appropriately and adequately compensated, and constituted fraud in the inducement. *Id.* at ¶ 41.

**\*14** Taking these allegations as true, this court finds that plaintiff has sufficiently stated a cause of action for fraud. It is true that plaintiff cannot support his fraud claim based on a defective claim for conversion. However, this court can reasonably infer that plaintiff is alleging that defendants' assurances that plaintiff would be adequately paid and protected to the maximum limits of the Champion Program were false when uttered in order to induce plaintiff to reveal his idea. Further, though plaintiff does not explicitly allege justifiable reliance, this court may infer this requisite element when reviewing the other allegations in the Amended Complaint. This court also finds that plaintiff's allegations are sufficient to enable defendants to prepare their defense.

Moreover, though the court may review the Champion documents attached to the defendants' Preliminary Objections, it is not clear that these documents constitute an enforceable contract which would bar plaintiff's claim for fraud.

The general rule is that a demurrer cannot aver the existence of facts not apparent from the face of the challenged pleading. *Martin v. Commonwealth, Dept. of Transp.,* 124 Pa.Commw. 625, 629, 556 A.2d 969, 971 (1989) (citation omitted). A limited exception to this rule is recognized where a plaintiff avers the existence of a written agreement and relies upon it to establish his cause of action. *Id.* In such instance, a defendant may properly annex that agreement without creating an impermissible speaking demurrer since the agreement is a factual matter arising out of

the complaint itself. *Id. See also, Detweiler v. School Dist, of Hatfield,* 376 Pa. 555, 559, 104 A.2d 110, 11 (1954)(allowing the court to review the documents attached to defendants' preliminary objections were such documents formed the foundation of the lawsuits, but not accepting, as true, the averment as to the legal effect of such documents); *Eberhart v. Nationwide Mut. Ins. Co.,* 238 Pa.Super. 558, 563-64, 362 A.2d 1094, 1097 (1976)(holding that the trial court cannot consider the policy, introduced into the record by the defendant making preliminary objections, in order to construe the intent of the parties until it is established that the policy is in fact the one issued to the plaintiff).

Here, plaintiff's counsel at oral argument clarified that plaintiff did not have an objection to letting the documents in the record but did object as to defendants' assertion that the documents form a contract. 4/23/01 N.T. at 40. Additionally, plaintiff refers to the Champion Program and his entitlement to benefits under the program in several places in his Amended Complaint. Am.Compl. at ¶¶ 18, 35, 36. Under these circumstances, the court may consider these documents.

The Champion Program appears to govern how ideas from employees are submitted, what compensation will be paid to employees who are associates and what compensation will be paid to managers, as well as the responsibilities of the company. *See* Preliminary Objections, Exhibit B. Specifically, after an idea is accepted, associates (or managers who submit ideas only) will receive compensation of $250 for an idea that results in an approved Business Opportunity Assessment (BOA). *Id.* After which, the associates "will be kept abreast of development of the idea and may receive additional compensation once the product or service is implemented." *Id.* If an idea results in a product or service that generates $10,000 in gross revenue, the employee will receive additional compensation of $2,500 and recognition. *Id.* Managers, on the other hand, may become involved in the BOA and the product's development and can be eligible for additional compensation, up to $50,000 once the product or service has resulted in $1 million or more in revenue. *Id.* The documents also included a "Champion Program Idea Submission Form" which included the following language above the lines for the employee's signature:

> **\*15** I acknowledge that this idea is the *sole property* of Bell Atlantic and the Champion Program. My *claim to this idea is limited to any rewards instituted as part of the Champion Program.* I understand that submission of an idea does not guarantee acceptance to the Champion Program.
> Signature
> _____
> _____ Date _____ Title ____

*Id.* (emphasis added). The record does not contain a page with plaintiff's signature on the above form. In a separate exhibit, attached by defendants, it appears that plaintiff received $250 pursuant to the Champion Program. *See* Preliminary Objections, Exhibit C. Plaintiff did admit having received the $250, which plaintiff maintains is "clearly a prize that the plaintiff got for reaching level one consideration," but plaintiff disputes that an enforceable contract was formed from the receipt of these monies which would bar plaintiff from any additional recovery. 4/23/01 N.T. at 42-43.

Notwithstanding the terms of the Champion Program, it is not clear that the parties had an enforceable contract which would bar the plaintiff's claim for fraud, or that the terms of the Champion Program solely govern the agreement between the parties, or that the agreement was fully integrated. Rather, certain issues of fact exist regarding whether an enforceable contract was formed and what constitutes that contract. [FN9]

> FN9. For this reason, the court need not now address whether the parol evidence rule would apply to the present case to bar the admission of parol evidence to vary the terms of the written agreement.

For these reasons, the demurrer to Count VII, sounding in fraud, is overruled.

G. *Plaintiff May Maintain Causes of Action for Rescission And/or Unjust Enrichment, but May Not Recover for Damages on a Breach of Contract Theory and May Not Recover on a Restitution Theory for Tortious Use of a Trade Secret*

This court addresses together plaintiff's contract and quasi-contract claims, which were mis-labeled as Counts VII, VIII and IX, but are really Counts VIII, IX and X. [FN10] Defendants argue that plaintiff's claims for quasi contract and/or implied contract are legally insufficient because an enforceable contract existed between the parties, plaintiff fails to allege facts sufficient to support his request to rescind the contract or avoid it on the grounds of misrepresentation, and defendants are the owners of Verizon Ready, which defendants contend is not

Babiarz's marketing suggestion. Defs. Mem. of Law, at 26-29. In response, plaintiff argues alternatively that no contract exists between the parties, entitling him to quasi-contractual remedies, or if a contract does exist, it has been rescinded through defendants' willful failure to pay and defendants' alleged fraudulent inducement. Pl. Mem. of Law, at 41-50.

> FN10. In Plaintiff's Petition to Amend his Complaint, he proposes to correct this mis-numbering, and defendants do not oppose this correction. Therefore, the court is granting that part of the petition.

In Count VIII of the Amended Complaint, entitled "Breach of Contract and/or Quasi Contract and/or Implied Contract" against BA-PA, Bell Atlantic and Verizon, plaintiff alleges, in pertinent part, that "[he] had a contract, and/or implied contract and/or quasi contract with [BA-PA] wherein [BA-PA] was to secure, compensate and protect the plaintiff's interests in Bell Atlantic Ready, which they failed to do. The contractual relationship consisted, inter alia, of oral representations, conduct, courses of conduct, and writings which are not fully in the possession of plaintiff .... As a result of the aforesaid, the plaintiff has been injured in an amount in excess of Fifty Thousand ($50,000.00).". Am. Compl. at ¶¶ 58-59. As to this count, plaintiff demands monetary damages, or in the alternative, the election to rescind the contract on the grounds of misrepresentation or abuse, of fiduciary relation and proceed on a restitution theory. *See id.* Alternatively, in Count IX, plaintiff alleges that "[t]he actions of the defendants as aforesaid caused the defendants, jointly and severally, to [be] unjustly enriched." *Id* . at ¶ 61. Additionally, in Count X, plaintiff pleads a cause of action for restitution pursuant to Section 136 of the Restatement of Restitution based on the defendants allegedly tortious use of a trade secret owned by or developed by the plaintiff. *Id.* at ¶ 63.

**\*16** For the following reasons, this court finds that plaintiff has sufficiently stated a claim for rescission in Count VIII and a claim for unjust enrichment in Count IX, but may not recover damages on a breach of contract theory or restitution for tortious use of a trade secret.

It is true that a plaintiff may plead alternative causes of action for breach of contract and unjust enrichment in the same complaint. *See* Pa.R.C.P. 1020(c); *J.A. & W.A. Hess, Inc. v. Hazle Township,* 465 Pa. 465, 468, 350 A.2d 858, 860 (1976)(holding that trial court erred in refusing to consider unjust enrichment claim along with breach of contract claim); *Lampl v. Latkanich,* 210 Pa.Super. 83, 88, 231 A.2d 890, 892 (1967). Further, the complaint is not defective merely because the causes of action are inconsistent or conflicting. *Baron v. Bernstein,* 175 Pa.Super. 608, 610, 106 A.2d 668, 669 (1954). However, it is also true that a plaintiff cannot recover on a claim for unjust enrichment if such claim is based on a breach of a written contract. *See Birchwood Lakes Community Ass'n v. Comis,* 296 Pa.Super. 77, 442 A.2d 304, 308 (1982); *Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828 F.2d 989, 999 (3d Cir.1987). Otherwise, there would be an election of remedies problem.

The Pennsylvania Superior Court has established that a plaintiff "may not maintain at the same time in separate counts of one action, or in two different suits claims for rescission of a contract and restitution on the one hand and for damages for breach of the same contract together with expectation interest, on the other hand." *Wedgewood Diner, Inc. v. Good,* 368 Pa.Super. 480, 483, 534 A.2d 537, 538 (1987)(quoting *Raw v. Lehnert,* 238 Pa.Super. 324, 329 n. 3, 357 A.2d 574, 576 n. 3 (1976). As noted in *Good,*

> [i]t is a general rule that a person defrauded in a sales or other contract has a choice of remedies; he may rescind the contract and recover what he has paid, or he may affirm the contract and recover damages for the fraud and deceit practiced upon him. Once such a person has made a binding election of one remedy over the other, however, he will be precluded from thereafter maintaining an action on the other ....

*Id.* at 482, 534 A.2d at 538 (citation omitted). *Accord Baker v. Cambridge Chase, Inc.,* 725 A.2d 757, 766 (Pa.Super.Ct.1999).

To maintain a cause of action for breach of contract, the plaintiff must allege and ultimately prove (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages. *CoreStates Bank, N.A. v. Cutillo,* 723 A.2d 1053, 1058 (Pa.Super.1999) (citations omitted). Further, "[w]hile not every term of a contract must be stated in complete detail, every element must be specifically pleaded." *Id.* at 1058. Additionally, "where contractual promises or covenants are mutual and dependent, the failure of one party to perform authorizes the other to rescind the contract." *Id.* (citation omitted). Rescission is proper where the plaintiff "has suffered a breach so material and substantial in nature that it affects the very essence of the contract and serves to defeat the

objective of the parties." *Keenheel v. Commonwealth,* 134 Pa.Commw. 494, 502, 579 A.2d 1358, 1362 (1993).

**\*17** On the other hand, unjust enrichment is a quasi-contractual doctrine based in equity which requires plaintiffs to establish the following: (1) benefits conferred on defendants by plaintiffs; (2) appreciation of such benefits by defendants; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendants to retain the benefit without payment of value. *Wiernik v. PHH U.S. Mortgage Corp.,* 736 A.2d 616, 622 (Pa .Super.Ct.1999), *appeal denied,* 561 Pa. 700, 751 A.2d 193 (2000).

In support of their objections, defendants attached various documents, encompassing the terms of the Champion Program to show that an enforceable contract existed between BA-PA and the plaintiff. It may be inappropriate to raise this defense in preliminary objections. *See, Graham v. Harleysville Ins. Co.,* 429 Pa.Super. 444, 446-47, 632 A.2d 939, 940-41 (1993)(noting that issue of contractual limitation in insurance policy as a defense should have been pleaded as new matter in responsive pleading, rather than by preliminary objection in the nature of a demurrer). Further, as noted above, it is unclear that the plaintiff's submission of Bell Atlantic Ready pursuant to the Champion Program did constitute an enforceable contract or whether the limitations in the Champion documents would preclude plaintiff from recovering on an unjust enrichment theory.

This court finds *Schott v. Westinghouse Electric Corp.,* 436 Pa. 279, 259 A.2d 443 (1969) directly on point. In *Schott,* the plaintiff-employee submitted a suggestion on a standard form to the defendant company regarding certain panels used on circuit brakers manufactured by the defendant. *Id.* at 283, 259 A.2d at 445. The Suggestion Committee rejected the employee's suggestion on the grounds that it would necessitate large expenditures, but it allowed the employee to resubmit his suggestion after one year. *Id.* The employee did resubmit his suggestion on the form prescribed by the Company, but it again was rejected. *Id.* at 284, 259 A.2d at 445. The company then allegedly adopted the suggestion and used it in a redesign without compensating the plaintiff. *Id.* at 284, 259 A.2d at 446. The employee then filed his complaint, praying for an accounting and demanding damages for a percentage of the company's savings from the use of the employee's suggestion,. *Id.* at 284, 259 A.2d at 446. The lower court sustained the company's preliminary objections, finding that the suggestion program was an invitation to the company's employees to make an offer, that the employee's offer was subject to acceptance or rejection by the company through its committees and that the offer had been duly and consistently rejected by the company. *Id.* The lower court also sustained the objections to the amended complaint which sought damages under a contract theory and under an unjust enrichment theory, properly set forth in separate counts. *Id.* at 286, 259 A.2d at 447.

**\*18** The Pennsylvania Supreme Court in *Schott* reversed and found that the employee had stated a cause of action in unjust enrichment but could not recover under a theory of performance of a unilateral contract. *Id.* at 287, 259 A.2d at 447. The court found that there was never an offer and an acceptance of the offer on its own terms. *Id.* at 289, 259 A.2d at 448. [FN11] However, the court also reasoned that the employee could maintain an unjust enrichment claim for benefits conferred on the company by the employee's submission of a valuable idea since it was not clear on the facts alleged that the employee expected no payment for his idea or conferred the benefit of his idea officiously. *Id.* at 292, 259 A .2d at 449.

> FN11. The *Schott* court did not address whether the purported contract was unilateral or bilateral in nature since it found that the employee's idea had not been "accepted" in any event. *Id.* at 287-88, 259 A.2d at 447. Similarly, here, this court need not address whether the plaintiff's purported contract was unilateral or bilateral.

Here, as in *Schott,* it is not clear whether the plaintiff had an enforceable contract with any of the defendants, notwithstanding the terms of the Champion Program. Further, unlike in *Schott,* this court is faced with allegations of fraud in the inducement. The Champion Program documents clearly indicated that the company would keep an associate informed of development of the idea and allow the associate to receive additional compensation of $2500 if the idea generated $10,000 in gross revenue. Preliminary Objections, Exhibit B. Plaintiff alleged that he was not so informed or compensated pursuant to the Champion Program. Am.Compl. at ¶ 18. Even assuming that the Champion Program did govern the terms of the contractual relationship between the plaintiff and BA-PA, defendant BA-PA could have so materially breached the contract as to give grounds for the

plaintiff to rescind the contract. *See Keenheel,* 134 Pa.Commw. at 502, 579 A.2d at 1362. In addition, notwithstanding the title of Count VIII, the allegations appear to state a claim for rescission based on misrepresentation or abuse of a fiduciary relation rather than damages on a breach of contract theory. [FN12] Moreover, the plaintiff may rescind the contract and proceed on an unjust enrichment theory for the value of the benefit he conferred on the defendants, i.e., the value of the Bell Atlantic Ready plan.

> FN12. When faced with a conflict between the allegations of a count and the count's titled, Pennsylvania courts look at the allegations and not the title. *See, e.g., Zernhelt v. Lehigh County Office of Children and Youth Servs.,* 659 A.2d 89 (Pa.Commw.Ct.1995)(treating a count titled "negligent infliction of emotional distress" as a claim for intentional infliction of emotional distress); *Maute v. Frank,* 441 Pa.Super. 401, 403-04, 657 A.2d 985, 986 (1995)("since the complaint states a viable mandamus claim, we will treat that portion of the action as such, regardless of the fact that the complaint is not titled properly as one involving mandamus").

Since this court cannot say with certainty that plaintiff has not pled sufficient facts to be able to rescind the contract and proceed on an unjust enrichment theory, the court is overruling the Preliminary Objections to Counts VIII and IX.

However, this court also finds that plaintiff has not stated a cause of action for restitution pursuant to Section 136 of the Restatement (First) of Restitution (1936). This section provides that "[a] person who has tortiously used a trade name, trade secret, franchise, profit a prendre, or other similar interest of another, is under a duty of restitution for the value of the benefit thereby received." Rest. (1st) of Restitution, § 136 (1936). This court found no Pennsylvania case, nor has either party cited one, which adopts this section of the Restatement, or provides for liability of an employer to his current employee for tortious use of a trade secret, when that alleged secret was voluntarily disclosed to the employer by the employee under the employee's expectation that he would be compensated and credited with the idea. As noted above, plaintiff remains an employee of defendant BA-PA. Am.Compl. at ¶ 1. Further, this court did not find that plaintiff could maintain an action for misappropriation of trade secret or invention. Similarly, this court must conclude that plaintiff cannot claim restitution based on tortious use of a trade secret. Moreover, this claim for restitution appears to be redundant of plaintiff's claim for unjust enrichment in Count IX.

**\*19** Therefore, the demurrer to Count X is sustained with prejudice.

H. *Plaintiff May Maintain His Cause of Action For Imposition of A Constructive Trust As Incident to His Claims For Unjust Enrichment, Breach of Fiduciary Duty and Fraud*

Defendants also demur to Count XI on the grounds that plaintiff has not averred facts which are legally sufficient to establish that the marketing suggestion or the Verizon Ready program of defendants is subject to a trust, constructive or otherwise, for the benefit of Babiarz. Defs. Mem. of Law, at 31-32. Plaintiff asserts that it would be appropriate for this court to impose a constructive trust since he has alleged sufficient facts to state a claim for misappropriation of a trade secret. Pl. Mem. of Law, at 55.

Establishing a constructive trust is an equitable remedy that is applied "when a person holding title to property is subject to an equitable duty to convey it to another on the ground he would be unjustly enriched if he were permitted to retain it." *DeMarchis v.. D'Amico,* 432 Pa.Super. 152, 166, 637 A.2d 1029, 1036 (1994) (citing *Yohe v. Yohe,* 466 Pa. 405, 411, 353 A.2d 417, 421 (1976)). A court's focus in determining whether a constructive trust should be established is the existence of unjust enrichment:
> Generally, an equitable duty to convey property arises only in the presence of fraud, duress, undue influence, mistake or abuse of a confidential relationship. There is, however, no rigid standard for determining whether the facts of a particular case require a court of equity to impose a constructive trust; the test is merely whether unjust enrichment can be avoided.

*Koffman v. Smith,* 453 Pa.Super. 15, 32, 682 A.2d 1282, 1291 (1996) (citations omitted) (rejecting the argument that establishment of a constructive trust requires a fiduciary relationship). *See also Hercules v. Jones,* 415 Pa.Super. 449, 458, 609 A.2d 837, 841 (1992) ("[t]he controlling factor in determining whether a constructive trust should be imposed is whether it is necessary to prevent unjust enrichment").

In addition, certain sections of the Restatement (First) of Restitution (1936) are relevant for ascertaining whether a constructive trust may be imposed. For instance, Section 166 states that "[w]here the owner of property transfers it, being induced by fraud, duress or undue influence of the transferee, the transferee holds the property upon a constructive trust for the transferor." Rest. (First) of Restitution § 166. Also, Section 190 provides that "[w]here a fiduciary relation to another acquires property, and the acquisition or retention of the property is in violation of his duty as a fiduciary, he holds it upon a constructive trust for the other." Rest. (First) of Restitution § 190.

Here, in Count XI, plaintiff sets forth the following allegations:

> 65. The transfer of the trade secret and/or trade name by plaintiff to the defendants as aforedescribed was induced by fraud and/or undue influence exerted by the defendants, jointly and severally and, as such, the defendants hold said property upon a constructive trust for the benefit of the plaintiff pursuant to Section 166 of the Restatement of Restitution.
>
> **\*20** 66. Defendants, jointly and severally, are also trustees and/or trustees ex malificio [*sic*] for the plaintiff, of the plaintiff's property as aforesaid. Said rights of the plaintiff arise, inter alia, pursuant to Section 190 of the Restatement of Restitution.

Am.Compl. at ¶¶ 65-66. Taking these allegations as true, it cannot be said with certainty that plaintiff cannot maintain a cause of action for the imposition of a constructive trust on defendants for the benefit of the plaintiff. Further, as noted above, plaintiff has sufficiently stated causes of action for breach of fiduciary duty, fraud and unjust enrichment.

Therefore, the Preliminary Objections to Count XI are overruled.

II. PETITION TO AMEND COMPLAINT

In his Petition to Amend his Complaint, plaintiff seeks to amplify his allegations with reference to actual documents produced by defendants, as well as correcting certain mis-numbered paragraphs and counts, and adding *ad damnum* clauses to Counts IV (misappropriation of trade secret) and V (misappropriation of invention). Defendants do not object to the plaintiff's proposed amendments which correct mis-numbered paragraphs and counts and include missing *ad damnum* clauses. However, defendants do object to the inclusion of new factual averments and exhibits which they argue does not revive the fatal deficiencies in plaintiff's cause of action for fraud.

Pursuant to Pa.R.C.P. 1033, a party may amend his complaint either by filed consent of the adverse party or by leave of court. The rule also provides that "[t]he amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense." Pa.R.C.P. 1033. The trial court has broad discretion in determining whether to allow amendment. *Capobianchi v. BIC Corp.,* 446 Pa.Super. 130, 134, 666 A.2d 344, 346 (1995). "Amendments are to be liberally permitted except where surprise or prejudice to the other party will result, or where the amendment is against a positive rule of law." *Burger v. Borough of Ingram,* 697 A.2d 1037, 1041 (Pa.Commw.Ct.1997) (citation omitted). While recognizing this liberal amendment policy, a court is not required to allow amendment of a pleading if a party will be unable to state a claim on which relief could be granted. *Werner v.. Zazyczny,* 545 Pa. 570, 583, 681 A.2d 1331, 1338 (1996).

Here, plaintiff's Proposed Second Amended Complaint adds additional factual averments and includes additional exhibits which give some background to plaintiff's claims, but these additions do not add a new cause of action. For instance, the new allegations reveal that plaintiff submitted his idea in order to help create union jobs and improve relations between Bell Atlantic and its union employees. *See* Proposed Second Am.Compl. at ¶ 10(a). Other allegations do add to the circumstances in which the Bell Atlantic Ready plan was rejected and then ultimately pursued by the defendants. *See id.* at ¶¶ 25(a)-(f), 29(a).

**\*21** This court does not find that permitting the plaintiff's amendment is against a positive rule of law since it has already found that plaintiff's first amended complaint already stated a cause of action for fraud. The proposed amendment merely adds additional facts and content relating to the defendants' intent. Moreover, defendants do not oppose the amendment to correct mis-numbered paragraphs or counts. In any event, however, plaintiff may not reassert his claims for conversion, misappropriation of trade secret or misappropriation of invention, which this court has dismissed with prejudice.

Therefore, the Petition to Amend the Complaint is granted.

## CONCLUSION

For the reasons set forth above, the Preliminary Objections to Counts III, IV and V of the (First) Amended Complaint are sustained with prejudice and these counts are stricken. The remaining Preliminary Objections are overruled. The court is also granting the plaintiff's Petition to Amend his Complaint. The court will enter a contemporaneous Order in accordance with this Opinion.

## ORDER

AND NOW, this 10th day of July, 2001, upon consideration of defendants' Preliminary Objections to the Amended Complaint, plaintiff's opposition thereto, all respective memoranda, as well as plaintiff's Petition to Amend his Complaint, defendants' opposition thereto, all other matters of record, and having heard oral argument on this matter, it is hereby ORDERED that:

(1) defendants' Preliminary Objections to Counts III, IV and V of the Amended Complaint are sustained with prejudice and these counts are stricken;

(2) the remaining Preliminary Objections to the Amended Complaint are overruled;

(3) plaintiff's Petition to Amend his Complaint is granted, except with regard to Counts III, IV and V of his Second Amended Complaint; and

(4) defendants shall file an Answer to the Second Amended Complaint within twenty (20) days of entry of this Order.

2001 WL 1808554 (Pa.Com.Pl.)

END OF DOCUMENT