(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EEOC Dec. No. 71-32
1970 WL 3532 (E.E.O.C.), 2 Fair Empl.Prac.Cas. (BNA) 866, EEOC Dec. No. 71-32, EEOC Dec. P 6160
**(Cite as: 1970 WL 3532 (E.E.O.C.))**
<KeyCite Citations>

*1 Decision No. 71-32
July 15, 1970
DECISION

SUMMARY OF CHARGES

Charging Party alleges that Respondent Employer has engaged in and is engaging in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964 by discharging her because of her race (Negro), by discriminating against Negro employees with respect to lunch and coffee breaks and the use of courtesy titles, and by maintaining racially segregated eating and comfort facilities.

JURISDICTION

Respondent sells and distributes beauty supplies and is thereby engaging in an industry affecting commerce. Respondent employs approximately 54 persons, of whom 15 are Negroes. The charge was filed within the time limitations prescribed by Section 706 (d) of the Act.

SUMMARY OF INVESTIGATION

The following facts are not in dispute. Charging Party was hired by Respondent on August 19, 1968, as an order-filler. On or about December 22, 1968, Charging Party received a Christmas bonus in the amount of $50.00. It is Respondent's policy to pay all employees Christmas bonuses of varying amounts, depending upon the employee's length of service and dependability. The amount of the bonus does not depend upon the employee's salary. Charging Party disclosed the amount of her bonus to a Caucasian employee who did not receive as large a bonus, and this employee complained to Respondent. Charging Party was subsequently discharged. Charging Party alleges this action was taken because of her race.

Respondent denies the charges. Respondent's Vice President and manager stated in writing that Charging Party was discharged "because she didn't please us-because she caused problems and disention (sic) among fellow employees." Respondent's personnel records indicate that Charging Party was discharged because of a misunderstanding about her Christmas bonus and a lack of work.

Respondent's record of Christmas bonuses awarded in the year 1968, a copy of which is part of the instant record, reveals a pattern of discriminatory favoring of Caucasians as regards the amount of these bonuses. [FN1] These records show that the average bonus paid to Negro employees was $190.31, while the average bonus paid to Caucasian employees was $399.89. Respondent's Vice President and manager identified one Negro employee as being one of the most dependable employees, yet this employee received a bonus of $250.00 while a Caucasian employee with eight years less seniority received a $1000.00 bonus. This is but one example among many evinced by Respondent's records of the fact that in the vast majority of cases the Caucasians received substantially higher Christmas bonuses in 1968 than the Negroes, irrespective of relative length of service. From the evidence presented we cannot credit Respondent's claim that dependability and length of service account for this racially disparate pattern, and find reasonable cause to believe that Negroes as a class, represented by Charging Party, were discriminated against because of their race.

*2 Respondent contends that it has an unwritten rule against any employee disclosing the amount of his Christmas bonus to another employee and that it discharged Charging Party for violating this rule. The Commission takes note of the fact that it is a wide-spread industrial practice for employers to attempt to keep secret the amounts of bonuses or other forms of compensation paid to individual employees. However, the Commission must assume, absent a claim and evidence to the contrary, that Caucasian employees, prior to December, 1968, occasionally disclosed the amount of their bonuses to other employees, and that Respondent subsequently learned of such disclosure. Yet there is no evidence, and no claim, that a Caucasian employee has ever been disciplined in any way for such an infraction of Respondent's alleged rule. It is significant of course that the sanction of discharge was involved, apparently for the first and only time, on the first occasion (according to the evidence) of a Negro receiving a larger bonus than a similarly situated Caucasian and her then disclosing that fact. We find reasonable cause to believe that Charging Party's race was a factor in her being discharged for such disclosure.

Charging Party further alleges that Respondent discriminates against Negroes as a class by requiring them to use the terms "Mr." or "Mrs." in addressing Caucasian employees, while allowing Caucasians to address Negro employees by their first names. Respondent denies the charge, and states that all employees are expected to use

terms of respect when addressing co-workers.

Negro employees have submitted sworn statements to the Commission to the effect that they have personally observed Respondent's agents introducing Caucasian employees to Negro employees as "Mr." or "Mrs.", the implication being clear, state the witnesses, that Negro employees should thereafter so address the Caucasians. One witness stated, and there is no evidence to the contrary, that Respondent's office personnel, when summoning plant employees use "Mr." or "Mrs." titles in addressing white employees, but first names in addressing Negro employees. All the Negro employees interviewed stated that it is common practice for all white employees to address the Negro employees by their first name.

Respondent offers no evidence which would challenge the accuracy of the above testimony. Based upon such testimony, which we credit, and based upon this record as a whole, we find reasonable cause to believe that Respondent discriminated against Charging Party and Negroes as a class, and is continuing to so discriminate, with respect to the use of courtesy titles because of their race.

Also like and related to the charge filed is the issue of segregated Christmas activities, an issue which grew out of the investigation and thus is appropriate for decision at this time. [FN2] As regards this allegation, the following facts are not in dispute. Caucasian and Negro employees have separate Christmas parties. Respondent's employees draw the names of other employees for the purpose of exchanging Christmas gifts. Negro employees only draw from among the Negro group, and Caucasian employees only draw from among the Caucasian group. This activity takes place on Respondent's premises and on company time. We conclude that Respondent thus discriminates against its Negro employees on the basis of race with respect a condition or privilege of employment, because of their race, and segregates said employees in a way which adversely affects their status as employees, because of their race, within the meaning of Section of 703 (a).

*3 Charging Party further alleges that Respondent denies Negroes equal lunch periods and coffee breaks. Four Negro employees submitted sworn statements to the Commission that all employees, regardless of race, are given a fifteen-minute break each morning and afternoon.

An examination of the employees' time cards indicates that all employees, regardless of race, were permitted a thirty-minute lunch period.

Lastly, Charging Party alleges that Respondent maintains racially segregated restrooms and eating facilities. The evidence in the record is incomplete as to the merits of this allegation and the Commission withholds decision on same at this time.

## DECISION

Reasonable cause exists to believe that Respondent has engaged in, and is engaging in, unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964 by discharging Charging Party because of her race and by discriminating against Negroes as a class with respect to Christmas bonuses, the required use of courtesy titles, and Employer-sponsored Christmas activities, because of their race.

Reasonable cause does not exist to believe the lunch and coffee breaks allegation is true.

The Commission withholds decision on the segregated facilities allegation.

FN1 This issue, although not specifically raised in the charge itself, grew out of the investigation and is so like and related to the issues raised by the charge as to be appropriate for decision herein. See, King v. Georgia Power Co.,295 F. Supp. 943 (N.D. Ga. 1968), n.2, quoting with approval n.10 of the Commission brief in that case. See also, p.947 for the Court's discussion of the "inherent logic" of such a rule.

FN2 See n.1, supra.

1970 WL 3532 (E.E.O.C.), 2 Fair Empl.Prac.Cas. (BNA) 866, EEOC Dec. No. 71-32, EEOC Dec. P 6160

END OF DOCUMENT