© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1997 WL 732859 (E.D.Pa.)
**(Cite as: 1997 WL 732859 (E.D.Pa.))**
<KeyCite History>

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Maria RUFO
v.
METROPOLITAN LIFE INSURANCE COMPANY
No. Civ. A. 96-6376.

Nov. 04, 1997.

William L. McLaughlin, Jr., William L. McLaughlin Law Offices, Paoili, PA, USA, Diane L. Newman, Markowitz & Richman, Phila, PA, USA, for Maria Rufo, plaintiff.

Veronica Winter-Saltz, Frey, Petrakis, Deeb and Blum, Phila, PA, USA, for Metropolitan Life Insurance Company, defendant.

MEMORANDUM

PADOVA, J.

**\*1** Plaintiff Maria Rufo ("Rufo") brings this action against her former employer Metropolitan Life Insurance Company ("Met Life") for sexual harassment and retaliation. Before the Court is Met Life's Motion for Summary Judgment. For the reasons set forth below, the Court will deny Defendant's Motion in its entirety.

I. *FACTUAL BACKGROUND*

Because the Court finds that numerous facts are in dispute, it would be difficult and unproductive for the Court to attempt to set forth a detailed factual statement. Instead, the Court will give illustrative examples of genuine issues of material fact in Section III below, in which the Court analyzes the elements of each of Plaintiff's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.

II. *LEGAL STANDARD*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if there is sufficient evidence with which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is "material" if it might affect the outcome of the case. *Id.*

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial *Celotex* burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554. After the moving party has met its initial burden, "the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial ." Fed.R.Civ.P. 56(e). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor.").

III. *ANALYSIS*

Rufo has asserted four claims against Met Life: (1) quid pro quo sexual harassment (under Title VII, 42 U.S.C.A. §§ 2000e-e17 (West 1994), and the Pennsylvania Human Relations Act, 43 Pa.Stat. §§ 951-963 (West 1991 and Supp.1997)("PHRA"); (2) hostile work environment sexual harassment (also under Title VII and the PHRA); (3) retaliation (under Section 704 of Title VII, 42 U.S.C.A. §

2000e-3, and the PHRA, 43 Pa.Stat. § 955); [FN1] and (4) a claim under Section 510 of the Employee Retirement Income Security Act, 29 U.S.C.A. § 1140 (West 1985)("ERISA"). All of Rufo's claims are based on her allegations that Stuart Piltch ("Piltch"), a regional director for Met Life in charge of Met Life's Philadelphia office and Rufo's direct supervisor, sexually harassed her and retaliated against her when she rebuffed and reported his unwelcome advances.

> FN1. Employer liability for sexual harassment under the Pennsylvania Human Relations Act follows the standards set out for employer liability under Title VII. *Hoy v. Angelone,* 456 Pa.Super. 596, 691 A.2d 476, 480 (Pa.Super.Ct.1997); *West v. Philadelphia Elec. Co.,* 45 F.3d 744 (3d Cir.1995) (applying Title VII standards in case involving PHRA hostile work environment claim).

A. *QUID PRO QUO SEXUAL HARASSMENT*

**\*2** In *Robinson v. City of Pittsburgh,* 120 F.3d 1286 (3d Cir.1997), the Third Circuit for the first time identified the elements of a sexual harassment claim based on a quid pro quo theory. The Third Circuit agreed with the formulation for a quid pro quo sexual harassment claim set out in 29 C.F.R. § 1604.11(a)(1) and (2), which provides:
  Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual....
  *Id.* at 1296.

In *Robinson,* the Third Circuit explained the test for this type of sexual harassment claim as follows:
  Under this test, the consequences attached to an employee's response to the sexual advances must be sufficiently severe as to alter the employee's "compensation, terms, conditions, or privileges of employment," 42 U.S.C. § 2000e-2(a)(1), or to "deprive or tend to deprive [him or her] of employment opportunities or otherwise adversely affect his [or her] status as an employee." 42 U.S.C. § 2000e-2(a)(2). This does not mean that the employee must be threatened with or must experience " 'economic' or 'tangible' discrimination." But by the same token, not every insult, slight, or unpleasantness gives rise to a valid Title VII claim.
  *Id.*

Rufo's quid pro quo claim is based on subsection (2). (Pl.'s Opp. to Def.'s Summ.J.Mot. at 31.) To establish a quid pro quo claim under subsection (2), Rufo
  must show that .. her response to unwelcome advances was subsequently used as a basis for a decision about compensation, etc. Thus, the plaintiff need not show that submission was linked to compensation, etc. at or before the time when the advances occurred. But the employee must show that ... her response was in fact used thereafter as a basis for a decision affecting ... her compensation, etc.
  *Id.* at 1296-97.

The Court finds that disputed issues of fact exist with respect to Rufo's quid pro quo claim based on subsection (2). [FN2] The parties' submissions, when analyzed for Rule 56 purposes, support the following. On November 17, 1994, touched Rufo's breast. [FN3] That same day, Rufo reported the incident to Frank King, a member of Met Life's Employee Advisory Services, who advised Rufo to talk to Piltch about his behavior. Rufo then met with Piltch and told him that she was very uncomfortable with his physical contact. Piltch's only response to Rufo's comment was nodding his head.

> FN2. In a quid pro quo claim, lack of knowledge by the employer of the harassment by a supervisor is not a defense. "Courts have unanimously held that an employer is strictly liable for quid pro quo harassment by a supervisor having actual or apparent authority to carry out the threat or promise that is made to the victim." *Robinson v. City of Pittsburgh,* 120 F.3d at 1296 n. 9. Therefore, the remedial action taken by Met Life is irrelevant to Rufo's quid pro quo claim.

> FN3. According to Rufo's submissions, this initial unwelcome touching was followed by subsequent unwelcome physical touching by Piltch, such as patting Rufo's shoulder and rubbing her arm.

Rufo also has made a sufficient factual showing under Rule 56 that the consequences attached to Rufo's opposition to Piltch's sexual advances were

sufficiently severe as to alter her compensation, terms, conditions, or privileges of employment or to deprive her or tend to deprive her of employment opportunities or otherwise adversely affected her status as an employee, as required by 42 U.S.C. § 2000e(a)(1) and (2). Less than a month after the breast touching incident, Piltch gave Rufo her 1994 performance review, in which he dropped her performance rating two levels. Thereafter, Piltch gave Rufo three verbal warnings concerning her alleged performance deficiencies; each warning was documented by a memo to the file written by Piltch. The third verbal warning came just five days after Rufo had advised Piltch's supervisor, Michael McDermott, of Piltch's touching of her breast. In addition, subsequent to her opposition to Piltch's conduct, Rufo did not receive a bonus.

**\*3** Not receiving a bonus obviously affected Rufo's compensation at the time the decision was made, even though the bonus was subsequently given to her. The 1994 performance rating [FN4] and the three verbal reprimands, documented by memos to the file, are the type of "formal reprimands" that the Third Circuit has recognized as sufficiently concrete and severe employment consequences to sustain a quid pro quo sexual harassment claim. *Robinson v. City of Pittsburgh,* 120 F.3d at 1298.

> FN4. A fair performance rating is a tangible job benefit. *See Nichols v. Frank,* 42 F.3d 503, 509 (9th Cir.1994): *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 142 (2nd Cir.1993).

Because Rufo's submissions raise disputed issues of fact, Met Life is not entitled to summary judgment on this claim.

B. *HOSTILE ENVIRONMENT SEXUAL HARASSMENT*

Rufo also claims that the sexual harassment at Met Life was so pervasive that it had the effect of creating an intimidating, hostile, or offensive work environment. *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). An employee's psychological well-being need not be affected in order to maintain an actionable hostile environment claim. *Id.*

There are five elements of a hostile work environment claim under Title VII: (1) the employee suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability. *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir.1990). [FN5]

> FN5. In a number of cases following the Supreme Court's decision in *Harris,* the Third Circuit has reaffirmed the five-part test announced in *Andrews. Knabe v. Boury Corp.,* 114 F.3d 407, 410 (3d Cir.1997), *Robinson v. City of Pittsburgh, supra; Spain v. Gallegos,* 26 F.3d 439, 447 (3d Cir.1994).

An employer is not strictly liable for hostile environments. *Meritor Sav. Bank v. Vinson,* 477 U.S. at 72-73, 114 S.Ct. at 2408. "[T]he liability of an employer is not automatic even if the sexually hostile work environment is created by a supervisory employee." *Knabe v. Boury Corp.,* 114 F.3d at 411. To determine if respondeat superior liability exists, principles of agency law must be used. *Meritor Sav. Bank v. Vinson,* 477 U.S. at 72, 106 S.Ct. at 2408. With respect to a hostile workplace claim, an employer faces liability for its own negligence or recklessness, typically its negligent failure to discipline or fire or its negligent failure to take remedial action upon notice of the harassment. *Knabe v. Boury Corp.,* 114 F.3d at 411. In addition, employer liability attaches if the harassing employee relied upon apparent authority or was aided by the agency relationship. [FN6] *Id.* Under a theory of apparent authority, an employer may be liable where the agency relationship aids the harasser "by giving the harasser power over the victim." *Bouton v. BMW of North America, Inc.,* 29 F.3d 103, 108 (3d Cir.1994). Here, Rufo attempts to impute liability to Met Life for Piltch's actions on the grounds that Met Life knew or should have known of the harassment and failed to take prompt remedial action. (Pl.'s Supp. to Pl.'s Opp. to Def.'s Summ. J. Mot. at 5.)

> FN6. Liability of an employer for torts committed by their employees within the

scope of their employment can only be imputed when an employee acts with actual authority. *Bouton v. BMW of North America,* 29 F.3d at 107.

**\*4** Met Life concedes that Rufo has established the first element of her hostile environment claim. The Court finds that genuine issues of material fact exist as to the remaining four elements. With respect to the regularity and pervasiveness of the discrimination, the submissions by Rufo include the following: Pilch [FN7] touched Rufo's breast [FN8] and made other unwelcome physical contact with Rufo; Pitch talked to female employees while obviously staring at their breasts; and Piltch constantly touched and pulled on his genitals and discussed matters of a sexual nature in front of Rufo and other women in the office. With respect to the detrimental effect the discrimination had on Rufo and whether the discrimination would detrimentally affect a reasonable person of the same sex in that position, the submissions by Rufo include the following: Rufo became quiet and withdrawn; she sought medical treatment and was diagnosed as suffering from post-traumatic stress disorder; another female worker described the Met Life office where Rufo worked as a very hostile environment.

> FN7. It is a significant factor in Rufo's hostile workplace claim that Piltch was the head of the Philadelphia office and Rufo's immediate supervisor. *See King v. Hillen,* 21 F.3d 1572, 1580 (Fed.Cir.1994).

> FN8. According to the EEOC, the unwelcome, intentional touching of an intimate body area, such as a women's breast, is so offensive standing alone as to alter the conditions of the employee's work environment. Lindemann and Grossman, *Employment Discrimination Law* at 795 (3d ed.1996)(citing EEOC Policy Guidance on Sexual Harassment (March 19, 1990)).

With respect to whether Met Life knew or reasonably should have known about the harassment and failed to take prompt remedial action, the submissions by Rufo include the following: Rufo reported Piltch's touching of her breast to Frank King, a member of the Employee Advisory Services; Rufo reported Piltch's touching of her breast and his subsequent retaliation against her to McDermott, Piltch's supervisor, and to Jill Schwartz, an EEOC representative for Met Life; and Rufo told Joyce Parsze and Nancy Henlotter of Human Resources that she had an appointment to file a charge with the EEOC.

Met Life asserts that the remedial action it took was adequate as a matter of law. In defining the type of remedial action that will be deemed "adequate," the Third Circuit has held that an ineffective remedial action may be adequate as a matter of law if it is found to be "reasonably calculated to prevent future harassment." *Knabe v. Boury Corp.,* 114 F.3d at 411 n. 8. The inquiry made with respect to remedial action is not whether it was effective in stopping the unlawful conduct of the harasser. Instead, the question is whether the remedial action was prompt and adequate. The Court finds that genuine issues of fact exist as to whether the remedial action was taken promptly by Met Life and was reasonably calculated to prevent future harassment. For example, Rufo disputes that her reassignment from Piltch to work for James Golden was reasonably calculated to prevent future harassment of Rufo by Piltch because Piltch remained in constant contact with Rufo, Piltch still asked Rufo to perform work for him, and Piltch retained ultimate authority over Rufo. Because the parties' submissions raise genuine issues of material fact, Defendant is not entitled to summary judgment on this claim.

C. *RETALIATION*

Rufo contends that, after she engaged in protected activity (e.g., filing an EEOC complaint), she was retaliated against at work, which ultimately culminated in her constructive discharge. Section 704(a) of Title VII, 42 U.S.C. S 2000e-3 (a), makes it "an unlawful employment practice" for "an employer" to "discriminate" against an employee "because [the employee] has opposed any practice made an unlawful practice by [Title VII], or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."

**\*5** In *Nelson v. Upsala College,* 51 F.3d 383, 386 (3d Cir.1995), the Third Circuit set forth the elements of a retaliation claim:
> To establish discriminatory retaliation under Title VII, a plaintiff must demonstrate that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.

With respect to the first element, Met Life concedes

that by filing an EEOC complaint, Rufo engaged in protected activity. Rufo does not limit her protected activity to just filing the EEOC complaint. She properly lists as protected activities, pursuant to Section 704(a) of Title VII, her complaints to Piltch about his unwanted touching of her, her internal complaints to McDermott and others at Met Life about Piltch's conduct, and the notice she gave to Met Life that she had an appointment to file a charge with the EEOC. *Monteiro v. Poole Silver Co.,* 615 F.2d 4, 8 (1st Cir.1980).

As discussed in Section A above, the Court finds that genuine issues of material facts exist as to whether Met Life took adverse employment actions against Rufo. There also exist genuine issues of fact as to the causal connection between Rufo's protected activity and the adverse employment actions taken against her. For example, Piltch dropped her performance rating two levels less than a month after Rufo had confronted him about the breast touching incident. A causal connection can be demonstrated when adverse action closely follows protected activity, thereby justifying the inference of retaliatory motive. *Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir.1989), *cert denied,* 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). Because genuine issues of material fact exist, summary judgment on this claim is not warranted.

D. *SECTION 510 OF ERISA*

Section 510 of ERISA provides in relevant part:
> It is unlawful for any person to discharge ... or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act....

To recover under Section 510, Rufo does not need to prove that the sole reason for her constructive discharge was to interfere with her right to disability payments; she must however prove that Met Life had the "specific intent" to violate ERISA. *Gavalik v. Continental Can Co.,* 812 F.2d 834, 851 (3d Cir.), *cert. denied,* 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987). Such proof can be in the form of circumstantial evidence. *Id.* In addition, to establish a claim under Section 510 of ERISA, "an employee must demonstrate (1) prohibited employer conduct [FN9] (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Id.* at 852. [FN10]

FN9. Rufo contends that the retaliation culminated in her constructive discharge. She does not plead a separate claim for constructive discharge. (Pl.'s Am. Compl.) Rather, Rufo's constructive discharge is a part of her substantive claims of sexual harassment, retaliation, and violation of Section 510 of ERISA. As such, Rufo's constructive discharge is a relevant factor in calculating her damages if she prevails on her substantive claims. *Knabe v. Boury Corp.,* 114 F.3d at 408 n. 1. The Court finds that genuine issues of material fact exist as to whether Rufo was constructively discharged. *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061, 1075 (3d Cir.1996)(a plaintiff who voluntarily resigns is deemed to have been constructively discharged where the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign).

FN10. This claim will not be determined by a jury. There is no right to a jury trial for a claim under Section 510 of ERISA. *Cox v. Keystone Carbon Co.,* 894 F.2d 647 (3d Cir.1990); *Cox v. Keystone Carbon Co.,* 861 F.2d 390 (3d Cir.1988); *Turner v. CF & I Steel Corp.,* 770 F.2d 43, 46-47 (3d Cir.1985).

**\*6** Key to this claim is the relationship between Met Life and Met Disability. If Met Life and Met Disability are common entities, then a reasonable inference can be drawn that Met Disability knew about Rufo's complaints about Piltch and denied her short term disability benefits because she had complained about sexual harassment at Met Life and had filed an EEOC complaint. Whether Met Life and Met Disability are common or separate entities is in dispute. In addition, genuine issues of material fact exist with respect to the issue of Met Life's intent.

IV. *CONCLUSION*

In summary, the Court finds that genuine issues of disputed material fact exists as to each of the elements of Rufo's four claims. For this reason, the Court will deny Met Life's Motion for Summary Judgment in its entirety.

An appropriate Order follows.

ORDER

AND NOW, this 4th day of November, 1997, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 33), Plaintiff's Response thereto (Doc. No. 36), and Defendant's Reply (Doc. No. 40), IT IS HEREBY ORDERED that Defendant's Motion is DENIED.

1997 WL 732859 (E.D.Pa.)

Motions, Pleadings and Filings (Back to top)

.                2:96CV06376            (Docket) (Sep. 19, 1996)

END OF DOCUMENT