© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 419985 (E.D.Pa.), 83 Fair Empl.Prac.Cas. (BNA) 91
**(Cite as: 2000 WL 419985 (E.D.Pa.))**

<KeyCite Citations>

United States District Court, E.D. Pennsylvania.
Howard PENNICK, Administrator of the ESTATE OF Carolyn BENNETT,
v.
Jessie BROWN, Secretary of the Department of Veteran Affairs.
No. CIV. A. 98-CV-1199.

April 18, 2000.

*MEMORANDUM*

GILES.

**\*1** This is an action in which Carolyn Bennett [FN1] ("Bennett") has asserted an employment discrimination claim under Title VII of the Civil Rights Act of 1964 against Jessie Brown ("Brown") in his official capacity as Secretary of the Department of Veteran Affairs ("VA"). She alleges that information of a retirement "buy-out" incentive was intentionally withheld from her in retaliation for her filing several complaints with the Equal Employment Opportunity Commission ("EEOC") during her career at the VA. Before the court is Brown's unopposed Motion for Summary Judgment. For the reasons that follow, Brown's motion is granted.

> FN1. During the pendency of this action, Bennett passed away. Howard Pennick, Bennett's widower and the Administrator of her estate, has been substituted as the plaintiff.

BACKGROUND

Material Facts

Bennett was employed by the VA from 1976 until she retired from the Philadelphia Veterans Administration Medical Center ("PVAMC") on July 3, 1996. During her twenty-year career with the VA, Bennett filed several complaints, both formal and informal, with the EEOC against various officials at the PVAMC. Bennett never filed a complaint against either Earl Falast ("Falast"), the Director of the PVAMC, or William Stewart ("Stewart"), Employee and Labor Relations Specialist at the PVAMC. [FN2]

> FN2. In an affidavit, Bennett claims to have written a letter to the EEOC complaining of sexual harassment by Stewart; however, she "never used his name." (Bennett Aff. at 7-8.).

In June 1996, Bennett received notice of the opportunity to take early retirement pursuant to Voluntary Early Retirement Authority ("VERA"). Motivated by rumors that buy-outs were coming, Bennett, while deciding whether to take early retirement, approached Stewart on several occasions inquiring about the possibility of a buy-out incentive being offered later in the year. Although he too had heard rumors of buy-outs, Stewart told Bennett that he could not confirm the rumors at that time. Bennett also asked Falast at a staff meeting whether a buy-out was on the horizon. He responded "no."

On July 3, 1996, Bennett retired from the VA. Two days later, a memorandum was transmitted via facsimile to the PVAMC. The memorandum stated that it was "not likely [that] a government-wide buy-out bill [would be] passed [that] year or [the] next" and that it was unlikely that the VA "could receive approval to initiate Buyouts" in fiscal year 1996. (Fax from Veterans Health Administration, Pittsburgh, PA to Veterans Integrated Service Network of July 5, 1996, at 2-5.). Four other PVAMC employees, none of whom had histories of filing EEOC complaints, also retired around the same time as Bennett; two of these employees, Mary Gullatt ("Gullatt") and Kathleen Baldridge ("Baldridge"), worked in the Human Resources Department under Stewart.

In October, 1996, however, buy-outs were made available pursuant to Section 663 of the Treasury, Postal Service, and General Government Appropriations Act of 1997, Pub.L. 104-208, which Congress passed on September 30, 1996. Eligible employees who elected to retire under the buy-out program generally received a $25,000 lump sum payment in addition to any pension to which they were entitled. Bennett was not eligible for the $25,000 payment because she already had been retired three months when the buy-out incentive was announced.

**\*2** Bennett sued Brown contending that both Stewart

and Falast knew that buy-outs would be offered in 1996 and intentionally lied to her in order to retaliate for her prior filings of complaints with the EEOC. Brown argues that, although management at PVAMC was aware of rumors of buy-outs, the official word at the time Bennett retired was that buy-outs were unlikely. Further, Brown insists that officials at the PVAMC did not know that buy-outs would be offered until the legislation authorizing such was passed. Based on the record, summary judgment must be granted in favor of Brown.

## DISCUSSION

Statement of Jurisdiction

This court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as the claim arises under Title VII of the Civil Rights Act of 1964, a law of the United States.

Standard for Uncontested Summary Judgment Motions

Rule 56(e) of the Fed.R.Civ.P. states "that a party cannot rest on the allegations contained in h[er] complaint in opposition to a properly supported summary judgment motion made against h[er]." *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288 (1968). However, "[e]ven though Rule 56(e) requires a non-moving party to 'set forth specific facts showing that there is a genuine issue for trial,' a moving party is not "automatically entitled to summary judgment if the opposing party does not respond." *Anchorage Assoc. v. Virgin Islands Bd. Of Tax Review,* 922 F.2d 168, 175 (3d Cir.1990). A district court must first determine whether summary judgment is appropriate by determining whether the moving party has shown entitlement to judgment as a matter of law. *Id.* A moving party is entitled to such judgment when it proffers evidence that is so one-sided that submission of that evidence to a jury is senseless. *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989).

Analysis

Retaliation claims under Title VII of the Civil Rights Act of 1964 are subject to the burden-shifting framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). *See Stanziale v. Jargowsky,* 200 F.3d 101, 105 (3d Cir.2000). Under this burden-shifting mechanism, the plaintiff must first establish a *prima facie* case of retaliation. *Id.* If the plaintiff is successful in demonstrating her *prima facie* case, the burden then shifts to the defendant-employer, who must articulate a legitimate, nondiscriminatory reason for the prohibited conduct. *Id.* If the employer carries its burden of production, the plaintiff then must persuade the court by a preponderance of the evidence that the employer's legitimate reason is pretextual. *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir.1997) (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506-07 (1993)).

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in protected activity; (2) there was an adverse employment action; and (3) there is a causal relationship between the protected activity and the adverse employment action. *Hankins v. City of Philadelphia,* 189 F.3d 353, 370 (3d Cir.1999). If the plaintiff fails to make a *prima facie* showing, summary judgment in favor of the defendant is appropriate. *See, e.g., Nelson v. Upsala College,* 51 F.3d 383, 389 (3d Cir.1995) (upholding district court grant of summary judgment for failure to establish *prima facie* retaliation case).

A. *Bennett Has Not Established a Prima Facie Case of Retaliation.*

**\*3** Although, she has established the first element of her claim by showing that she engaged in the protected activity of filing claims with the EEOC, Bennett cannot show that she suffered an adverse employment action. An action, other than the obvious discharge or refusal to rehire, is "adverse" "only if it alters the employee's 'compensation, terms, conditions, or privileges of employment,' [or] deprives him or her of 'employment opportunities.' " *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1300 (3d Cir.1997). This alleged retaliatory conduct "must be serious and tangible enough" to "adversely affect [the plaintiff's] status as an employee." *Id.*

The crux of Bennett's complaint is that the VA's conduct caused her to miss out on the $25,000 incentive to opt for early retirement. This "buy-out" incentive was an enticement to retire; it was not a part of Bennett's normal compensation and/or retirement package. As such, Bennett has not shown that, by not confirming the rumors of buy-outs, the VA altered a term or condition of her employment. Further, Bennett has failed to show that the VA intentionally misled her regarding the buy-out rumors, and that the incentives, as a privilege of employment, were doled out in a discriminatory

manner . [FN3] In sum, she has failed to offer any evidence to support the allegation that the VA's conduct caused her to suffer serious and tangible employment-related harm.

> FN3. When a "privilege of employment" is at issue, it is irrelevant that the employer had no obligation to provide the particular benefit to its employees, such as the buy-out in this case, because once an employer decides to grant an opportunity to some, "it may not deny th[e] opportunity to others" for discriminatory reasons. *See DiBiase v. Smithkline Beecham Corp.,* 48 F.3d 719, 725 (3d Cir.1995) (quoting *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121 (1985); stating that employer cannot prejudicially dole out privileges in ADEA case)

Although it is understandable that Bennett is disappointed by the fact that she could not avail herself of the additional $25,000 upon retirement, "not everything that makes an employee unhappy qualifies" as an adverse employment action. *Robinson,* 120 F.3d at 1300. Because Bennett has failed to establish that she was the victim of an adverse employment action, she has not established a *prima facie* case of retaliation. Summary judgment in favor of Brown is therefore appropriate. [FN4]

> FN4. Because there has been no adverse employment action, the court need not address the third element, causal link, of Bennett's *prima facie* case.

*B. Bennett Has Not Rebutted the VA's Evidence That Its Conduct Was Legitimate.*

Even if Bennett carried her initial burden of establishing a *prima facie* case of retaliation, she has not rebutted the VA's articulated legitimate reason for its "conduct," *i.e.,* that it would not and could not confirm the rumors of impending buy-outs because no one there knew that such buy-outs were coming. The proffered evidence does not demonstrate that anyone at the VA purposefully withheld information from Bennett. Rather, it suggests that Congress did not pass a law permitting buy-out until three months after Bennett retired.

Brown has introduced into the record a facsimile from VA headquarters dated July 5, 1996, two days after Bennett retired, that states that buy-out authorization for the fiscal year 1996 was "not likely." (Fax from VA of July 5, 1996, at 2.). This fax indicates that, not only was there no official confirmation of buy-outs, but the official word was that buy-outs were not expected for the foreseeable future. With the official declaration that buy-outs likely would not be offered, even amidst the reportedly rampant rumors of upcoming incentives, the only appropriate response to Bennett's buy-out inquiries was "no." Bennett has not introduced any evidence demonstrating that, despite the fax from VA headquarters stating otherwise, the PVAMC knew or should have known that buy-outs were indeed forthcoming and that officials there chose to withhold that information from her. Plaintiff erroneously seeks to hold the VA responsible for not predicting correctly the outcome of pending legislation.

**\*4** Additionally, there is unchallenged evidence that four employees who did not have histories of filing claims with the EEOC retired either shortly before or shortly after Bennett did, and that they too missed out on the October buy-out. Two employees, Gullatt and Baldridge, worked in human resources prior to retiring. The record further shows that Baldridge retired on September 3, 1996--one month prior to the authorization of the $25,000 buy-outs. Even when viewed in a light most favorable to Bennett, this evidence tends to corroborate the VA's contention that it did not have authorization to offer buy-outs until the passage of the September 30, 1996 legislation and did not have authority to cause employees to rely upon rumors or predictions of what might happen legislatively. In the face of this record, Bennett has failed to rebut the inference that no one at the PVAMC knew that the October buy-outs would be authorized by Congress when she retired in July.

Brown has carried his burden of articulating a legitimate nondiscriminatory reason for its alleged bad conduct; Bennett has not in turn met her burden of persuading the court by a preponderance of the evidence that the VA's articulated reason is pretextual. As such, there are no issues of material fact to be submitted to a jury. Accordingly, summary judgment is granted in favor of Brown and against Bennett.

An appropriate Order follows.

### *JUDGMENT*

AND NOW, this __ day of April, 2000, upon consideration of the Defendant's Motion for Summary Judgment, and the opposition thereto, it is hereby ORDERED that the Defendant's motion is

GRANTED. Judgment is ENTERED IN FAVOR of the Defendant.

All pending motions are DENIED AS MOOT.

2000 WL 419985 (E.D.Pa.), 83 Fair Empl.Prac.Cas. (BNA) 91

END OF DOCUMENT