© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2001 WL 935621 (D.Del.)
**(Cite as: 2001 WL 935621 (D.Del.))**
<KeyCite History>

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
Lt. Mary KNOTT-ELLIS, Plaintiff,
v.
DELAWARE DEPARTMENT OF CORRECTION;
Stanley Taylor, Commissioner; Paul Howard,
Chief of Adult Prisons; Noreen Renard, Bureau
Chief; Phillip Morgan, PCCC; St./
Lt. Bruce Williamson; Lt. James Pietschmann and
Sgt. Wayne Wright, Defendants.
No. Civ.A. 00-826-SLR.

Aug. 3, 2001.
Lt. Mary Knott-Ellis, Newark, Delaware, Plaintiff,
pro se.

Ophelia Michelle Waters, Deputy Attorney General,
Delaware Department of Justice, Wilmington,
Delaware, for Defendants.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

**\*1** Plaintiff Lieutenant Mary Knott-Ellis filed this
action on September 11, 2000 against defendants
Delaware Department of Correction ("DOC"),
Commissioner Stanley Taylor, Chief of Adult Prisons
Paul Howard, Bureau Chief Noreen Renard, Warden
Philip Morgan, St./Lt. Bruce Williamson, Lt. James
Pietschmann, and Sgt. Wayne Wright. (D.I.2)
Plaintiff alleges discrimination based on her race and
sex under Title VII of the Civil Rights Act of 1964,
42 U.S .C. § 2000(e), *et seq.,* ("Title VII"). The court
has jurisdiction over plaintiff's claims pursuant to 28
U.S.C. § 1331. Currently before the court is
defendants' motion to dismiss plaintiff's complaint.
(D.I.14) For the following reasons, defendants'
motion is granted.

II. BACKGROUND

Plaintiff, an African-American female, began
employment with the DOC in April 1983 as a prison
counselor. (D.I.18) In 1996, in connection with a
class action suit filed by female correctional officers
against the DOC, she was promoted to Lieutenant
Correctional Officer at the Plummer Community
Correctional Center ("PCCC"). (D.I. 16 at ¶ 2) On
December 31, 1998, plaintiff and defendant Sgt.
Wright, plaintiff's subordinate, became involved in
an altercation over whether to give an inmate a soda.
(*Id.* at ¶ 3) There were no witnesses to the incident,
but plaintiff alleges that Wright was verbally
aggressive and physically shook her. After an
investigation by the DOC, Sgt. Wright was issued a
10-day suspension and transferred to the Gander Hill
facility. [FN1] (*Id.*) After the incident, plaintiff filed
for worker's compensation with the Delaware
Department of Labor ("DOL"), alleging that she
sustained physical and psychological injuries caused
by her confrontation with Sgt. Wright. (*Id.* at ¶ 4)
Based on a DOL assessment of "total disability,"
plaintiff received over $2,000 in worker's
compensation from January 9, 1999 to February 17,
1999. (D.I.18) In February 1999, the DOC sent
plaintiff a letter requesting that she receive
psychological treatment to verify that she was fit to
return to duty. (D.I.18) During a March 23, 1999
interview with DOC officials concerning her
confrontation with Sgt. Wright, plaintiff stated that
she was unable to return to work. (*Id.*) On May 5,
1999, plaintiff filed a charge of discrimination with
the EEOC, alleging gender discrimination, a hostile
work environment and retaliation over the incident
with Sgt. Wright and her promotion to Lieutenant.
(D.I.18) The EEOC dismissed plaintiff's claims and
notified her of her right to sue. (D.I.2)

> FN1. Plaintiff also filed criminal charges
> against Sgt. Wright, but the record does not
> indicate the result of those charges. (D.I.18)
> Plaintiff claims that her efforts to file the
> criminal charges were impeded by the
> DOC's refusal to release Sgt. Wright's home
> address and date of birth from his
> confidential personnel records. (*Id.*)

In September 1999, pursuant to the recommendation
of plaintiff's physician, defendants assigned plaintiff
to a part-time, light duty position at the Wilmington
Probation and Parole Office. [FN2] (D.I.15, Ex. C)

On her first day of work, defendants claim that plaintiff appeared to be heavily medicated and had difficulty following instructions. (D.I. 16 at ¶ 4) The next day, the DOC's human resources director sent plaintiff a letter stating that she was unable to perform "even routine and non-demanding job tasks" and should not return to work without medical documentation that she was able to do so. (D.I.18) In a letter dated January 13, 2000, plaintiff's psychiatrist informed the DOC that plaintiff's "mental status has regressed" and that "she is not ready to return to work of any kind." (D.I.15, Ex. D) After additional medical treatment, plaintiff was assigned to a prison counselor position at the Gander Hill facility with no loss of pay. (D.I. 16 at ¶ 4) Plaintiff declined the assignment, and instead applied for a disability retirement pension, which she subsequently received. [FN3] (D.I. 16 at ¶ 5)

> FN2. At or around this time, plaintiff admitted to the DOC that an offender was residing at her home, in violation of DOC regulations. (D.I.18)

> FN3. This fact is based upon the representation by defendants' counsel that the DOC granted plaintiff's request for a disability pension. (D.I.15) Plaintiff also states that she was "forced into disability retirement." (D.I.18) Neither party has provided exhibits that attest to this fact.

 **\*2** On May 30, 2000, plaintiff filed another charge of discrimination with the EEOC, alleging retaliation by defendants for her prior claims of discrimination. Plaintiff also alleged that defendants falsely informed an employment agency that plaintiff was on medical leave without pay from the DOC, which prevented her from being hired by the agency. [FN4] (D.I.18)

> FN4. There is no indication of the outcome of this EEOC complaint in the record.

## III. STANDARD OF REVIEW

 Because the parties have referred to matters outside the pleadings, the court shall treat defendants' motion to dismiss as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b)(6). A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial." ' *Matsushita,* 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Revis v. Slocomb Indus.,* 814 F.Supp. 1209, 1215 (D.Del.1993) (*quoting Hankins v. Temple Univ.,* 829 F.2d 437, 440 (3d Cir.1987)).

## IV. DISCUSSION  [FN5]

> FN5. Plaintiff filed a form complaint with the court, in which she alleged discrimination based on her race and sex by defendants' failure to employ her, failure to promote her, and "forc[ing] her into disability pension after 17 yrs. of service." (D.I.2) In her summary judgment brief, plaintiff makes additional allegations of discrimination, retaliation and a hostile work environment. (D.I.18) Where the plaintiff is a *pro se* litigant, the court has an obligation to construe the complaint liberally. *See*

*Haines v. Kerner,* 404 U.S. 519, 520 (1972). Moreover, the parameters of the resulting civil complaint that may follow a notice of a right to sue from the EEOC are "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Hicks v. ABT Assocs,. Inc.,* 572 F.2d 960, 966 (3d Cir.1978). To the extent that plaintiff's May 5, 1999 EEOC charge of discrimination encompasses plaintiff's later allegations, the court will consider them in addition to those in her complaint. The court, therefore, finds that plaintiff has alleged a disparate treatment claim, hostile work environment claim, and retaliation claim under Title VII.

**\*3** As a preliminary matter, Congress did not intend to hold individual employees liable under Title VII. *See Sheridan v. E .I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1078 (3d Cir.1996). Thus, plaintiff's claims against the individual defendants are dismissed.

In her remaining claims against the DOC, plaintiff alleges that she was subject to discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. [FN6] Claims brought pursuant to Title VII are analyzed under a burden-shifting framework; if plaintiff makes a prima facie showing of discrimination or retaliation, the burden shifts to defendants to establish a legitimate, nondiscriminatory reason for their actions. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). If defendants carry this burden, the presumption of discrimination drops from the case, and plaintiff must "cast sufficient doubt" upon defendants' proffered reasons to permit a reasonable factfinder to conclude that the reasons are fabricated. *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1072 (3d Cir.1996) (en banc). In the case at bar, the court need not engage in an extensive burden shifting analysis because plaintiff has not presented facts sufficient to state a prima facie case on any of her Title VII claims.

> FN6. The anti-discrimination provision of Title VII provides:
> It shall be an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color,

religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
42 U.S.C. § 2000e-2(a).
The anti-retaliation section of Title VII provides:
It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he had made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. § 2000e-3a.

A. Disparate Treatment Claim

Generally, to state a disparate treatment in employment claim under Title VII, a plaintiff must offer evidence "adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the act." *EEOC v. Metal Serv. Co.,* 892 F.2d 341, 348 (3d Cir.1990). First, plaintiff must state a prima facie case of race or gender discrimination. *See McDonnell Douglas,* 411 U.S. at 802. She can do so by showing by a preponderance of the evidence that: (1) she is a member of the protected class; (2) she suffered an adverse employment action; and (3) similarly situated members of the opposite sex were treated more favorably. *See id.*

In the present action, plaintiff fails to establish a prima facie case. Although plaintiff, an African-American female, is a member of a protected class, she has failed to demonstrate that she suffered an "adverse employment action." The Supreme Court has defined an "adverse employment action" as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change of benefits ." *Burlington Indus. Inc. v. Ellerth,* 524 U.S. 742, 749 (1998). Although the DOC reassigned plaintiff to different positions after she returned from disability leave, the reassignments occurred without loss of pay or benefits, and were made to accommodate plaintiff's medical needs as demonstrated by her physicians. Plaintiff first left her position at the DOC

because of her poor physical condition. She received worker's compensation for a period, and later was accommodated in a light duty position at the DOC on the recommendation of her physician. Plaintiff was unable to perform the tasks required, and then refused to accept a different position at the same rate of pay. The court declines to characterize such medically required reassignments as "adverse." *See, e.g., Sanchez v. Henderson,* 188 F.3d 740, 745 (7th Cir.1999) (expressing "serious doubt" that employer's action in transferring employee to accommodate employee's request for light duty work could be considered adverse employment action in absence of less pay, responsibility, prestige or opportunity for advancement).

**\*4** Furthermore, even if plaintiff's reassignments are considered "adverse," plaintiff does not demonstrate that similarly situated male or white employees were treated more favorably. Plaintiff generally alleges that male correctional officers were not treated in the same manner as female correctional officers, but she fails to provide sufficient evidence for comparison of the treatment of similarly situated male and female employees. At most, plaintiff states that the "DOC used PCQ's to upgrade males and to move around from going to the Register where qualified females were on the [R]egister" and that the "DOC has made special position[s] for other security staff to work while suffering from cancer, heart conditions, substance abuse[ ], etc." (D.I. 18 at ¶ 4) Neither of these allegations supports an adequate comparison between similarly situated male and female correctional officers. The record also reflects no indication of disparate treatment based on race. Because the court finds that plaintiff did not suffer an adverse employment action and cannot infer any discriminatory intent by the DOC, plaintiff fails to state a prima facie case of race or gender discrimination.

### B. Hostile Work Environment Claim

To state a Title VII claim premised on a hostile work environment, plaintiff must show: (1) that she suffered intentional discrimination because of race or sex; (2) that the discrimination was pervasive and regular; (3) that the discrimination detrimentally affected plaintiff; (4) that the discrimination would detrimentally affect a reasonable person of the same race or sex in that position; and (5) the existence of respondeat superior liability. *See Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1081 (3d Cir.1996).

By stating only one act of discrimination, plaintiff fails to allege that she has been detrimentally affected by a hostile work environment. Plaintiff's isolated confrontation with Sgt. Wright does not constitute a "pervasive and regular" atmosphere of discrimination. Moreover, plaintiff's other complaints cannot be construed as discriminatory, as the record reflects that plaintiff was unable to perform the tasks of even a light duty position. Therefore, based on the record presented, the court concludes that plaintiff fails to carry her burden of proving a prima facie case on her hostile work environment claim.

### C. Retaliation Claim

To establish a prima facie case of retaliation under Title VII, plaintiff must show: (1) that she engaged in protected activity; [FN7] (2) that defendants took adverse employment action against her; and (3) that a causal link exists between the protected activity and the adverse action. *See Kachmar v. Sungard Data Sys., Inc.,* 109 F.3d 173, 177 (3d Cir.1999). "The timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 503 (3d Cir.1997).

> FN7. Title VII defines a "protected activity" as an instance when an employee has "opposed any practice made an unlawful employment practice by this subchapter, or ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

**\*5** Plaintiff did engage in the protected activities of participating in the class action suit filed against the DOC in 1996, and filing her first EEOC complaint. However, as stated above, plaintiff did not suffer an adverse employment action when the DOC reassigned her to light duty positions on account of her medical needs. Therefore, plaintiff fails to state a claim of retaliation under Title VII.

### V. CONCLUSION

For the reasons stated, defendants' motion to dismiss is granted. An appropriate order shall issue.

### ORDER

At Wilmington, this 3rd day of August, 2001, consistent with the memorandum opinion issued this same day;

 IT IS ORDERED that defendants' motion to dismiss plaintiff's complaint  (D.I.14) is granted. The Clerk of Court is directed to enter judgment in favor of defendants and against plaintiff.

 2001 WL 935621 (D.Del.)

    Motions, Pleadings and Filings (Back to top)

.                1:00CV00826                (Docket) (Sep. 11, 2000)

END OF DOCUMENT