© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

95 F.3d 1160 (Table)
95 F.3d 1160 (Table), 1996 WL 477020 (9th Cir.(Wash.))
**Unpublished Disposition**
**(Cite as: 95 F.3d 1160, 1996 WL 477020 (9th Cir.(Wash.)))**
<KeyCite Citations>

Briefs and Other Related Documents

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA9 Rule 36-3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Ninth Circuit.
Joy WALDEN, Plaintiff-Appellant,
v.
James D. WATKINS, Secretary of United States Department of Energy, Defendant-Appellee.
No. 94-36146.

Argued and Submitted Feb. 8, 1996.
Decided Aug. 21, 1996.

Appeal from the United States District Court, for the Western District of Washington, D.C. No. CV-93-00582-PKS; Philip K. Sweigert, District Judge, Presiding.

W.D.Wash.

AFFIRMED.

Before: HALL and TROTT, Circuit Judges, and RAFEEDIE, District Judge. [FN*]

> FN* The Honorable Edward Rafeedie, United States District Judge for the Central District of California, sitting by designation.

MEMORANDUM [FN**]

> FN** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

OVERVIEW

**1 Joy Walden (Walden) brought suit against the Bonneville Power Administration (BPA), an agency in the Department of Energy, claiming that: 1) BPA had discriminated against her when it established her pay grade at a lower level than similarly situated males and had applied stricter standards for the advancement of women; and 2) BPA had retaliated against her for filing a sex discrimination complaint by denying her a monetary award for a money saving suggestion she made and by admonishing her for personal use of an office computer. The district court granted summary judgment in the Government's favor on the discrimination and the retaliation claims. Following the district court's grant of summary judgment, Walden moved the court for relief from judgment based on newly discovered evidence. The district court denied this motion, finding that the new evidence was immaterial. We affirm the district court's grant of summary judgment and its denial of Walden's motion for relief from judgment. [FN1]

> FN1. To the extent that Walden asks this court to reclassify her position to a higher pay scale, judicial review is not appropriate because she did not properly appeal the reclassification decision and exhaust her administrative remedies. *See Karamanos v. Egger,* 882 F.2d 447, 451 (9th Cir.1989) (holding that the Civil Service Reform Act provides the remedy for improper reclassification decisions).

STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 116 S.Ct. 1261 (1996). The appellate court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether any genuine issues of material fact exist and whether the district court correctly applied the relevant substantive law. *Id.*

The district court's denial of a motion for relief from judgment is reviewed for an abuse of discretion. *Export Group v. Reef Indus., Inc.,* 54 F.3d 1466, 1469 (9th Cir.1995).

DISCUSSION
I
Claims of Sex Discrimination

Title VII prohibits an employer's discrimination "against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). In *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248 (1981), the Supreme Court set forth the basic allocation of the burdens of proof in a Title VII case alleging discriminatory treatment:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination.   Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection....   Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Id.* at 252-53.

Walden, who is responsible for the Non-Electrical Plant Maintenance (NEPM) for BPA in the Puget Sound region, is classified as a GS-11 employee. [FN2] Walden claims that she was discriminated against because:  1) males with the same responsibility are paid more;  and 2) the BPA applied more onerous standards for her advancement than it did to male employees.

> FN2. Walden lists the employees responsible for NEPM:
> Puget Sound Area:  Joy Walden, Facility Management Specialist (GS-11);  and Dick Winter, Assistant Operations Superintendent (GS-13).
> Upper Columbia Area:  Philip Prince, Assistant Operations Superintendent (GS-13).
> Snake River Area:  Bill Farrow, Assistant Operations Superintendent (GS-13).
> Lower Columbia Area:  John Straub, Buildings and Grounds Manager (GS-12);  Malcolm Slaughter, Assistant Operations Superintendent (GS-13);  Paul Martin, Facility Manager (GS-11);  and Richard Clark, Facility Manager (GS-11).

*A. Ms. Ciraulo's Statement as Evidence of Discrimination*

**2 Walden offers as evidence of discrimination a statement allegedly made by Marlene Ciraulo (Ciraulo), the BPA supervisor who performed Walden's job audit and recommended her classification as a GS-11.  Walden claims that when she asked Ciraulo why her position would not be classified as a GS-13, Ciraulo stated that "as a woman you need to sit back and bide your time." BPA controverts that this statement was made.

In *Schnidrig v. Columbia Machine, Inc.,* 80 F.3d 1406 (9th Cir.1996), in the context of an age discrimination claim, this court discussed the burdens of proof in a discrimination case.  In that case, there were several alleged statements made by directors that the company wanted a president in the 45-50 year old range (Schnidrig was 62 years old).   The allegations of discrimination were supported by direct evidence in the form of affidavits and notes from board meetings reflecting that the discriminatory statements were made.   The court in *Schnidrig* reversed summary judgment, pointing out that the standard to grant summary judgment in employment discrimination cases is a high one:

> We require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a "searching inquiry"--one that is most appropriately conducted by the fact finder, upon a full record.

80 F.3d at 1410.

However, Ciraulo's statement is not viewed in isolation.  In *Schnidrig,* there were several alleged statements by directors indicating an intent to hire someone younger than the plaintiff.   Here, on the other hand, there is the single statement by Ciraulo. *Compare Nesbit v. Pepsico, Inc.,* 994 F.2d 703, 705 (9th Cir.1993) (comment to plaintiff by supervisor that "we don't necessarily like grey hair" was at best weak circumstantial evidence of discriminatory animus) and *Merrick v. Farmers Ins. Co.,* 892 F.2d 1434, 1438 (9th Cir.1990) ("stray remarks" insufficient to establish discrimination) *with Burns v. Gadsden State Community College,* 908 F.2d 1512, 1517-19 (11th Cir.1990) (finding that statement that "no woman would be named to a B scheduled job" was direct evidence of discriminatory motive when its author made the employment decision at issue). Thus, we must consider Ciraulo's statement in light of the other evidence in this case and in light of Walden's specific claims to determine whether Walden established a prima facie case of discrimination.

*B. Males with Same Responsibility Paid More* [FN3]

> FN3. Walden also argues that the men classified at the same pay grade have less responsibility than she does. That argument is simply a variation on the claim that males with the same responsibility are paid more. She cannot base an independent claim of sex discrimination on the ground that she was performing more duties than men receiving the same pay. Instead, the claim is properly framed as one where she is paid *less* than similarly situated males.

Walden claims that male employees with the same responsibilities receive higher compensation than she does. "When a Title VII claimant contends that she has been denied equal pay for substantially equal work, as here, Equal Pay Act standards apply." *Foster v. Arcata Associates, Inc.,* 772 F.2d 1453, 1465 (9th Cir.1985). In *Foster,* this court explained:

> The Equal Pay Act standards require the plaintiff to bear the initial burden of showing that: 1) the work of the employees of one sex required the exercise of substantially equal skill, effort, and responsibility and was performed under working conditions similar to that of employees of the opposite sex; and 2) the pay of men and women was unequal.
>
> **\*3** *Id.*

The Government argues, and the district court agreed, that the male employees with whom Walden compares herself have substantially different jobs with greater responsibilities than Walden. The Government points out:

> It is especially difficult to show wage based discrimination in the federal sector [because] wages are determined by the grade level assigned to a position, and the grade level is determined by a classification system. The wage is tied to the position not the person. All employees at the same grade level and step within the grade have the same salary, regardless of sex.
>
> Red Brief pp. 21-22.

Here, Walden compares herself to the Assistant Operations Superintendents, Prince and Farrow (GS-13s), at two of the BPA facilities and to the Building Grounds Manager, Straub (GS-12), at the Ross Complex. In 1991, because she felt that she should be compensated at the level of her male comparators, Walden requested a reclassification of her pay grade. BPA management at the Puget Sound facility concluded that Walden's position as a Facility Management Specialist should be reclassified from a GS-9 to a GS-11 based on additional responsibilities related to new environmental issues. Because she was dissatisfied with the GS-11 classification, she requested that a desk audit be done. Ciraulo's desk audit determined that the GS-11 classification was appropriate based on the job responsibilities of Walden's position as a Facility Management Specialist. In making her determination and recommendation, Ciraulo consulted the Puget Sound Operations and Maintenance Manager and the Operations Superintendent. They determined that Walden's position should be reclassified from GS-9 to GS-11 based on additional responsibilities resulting from new environmental issues.

BPA alleges that the Assistant Operations Superintendents Farrow and Prince (GS-13 employees) have responsibilities in addition to their NEPM duties thereby justifying their higher pay grade. The Department of Energy Investigative Report stated that they have operations duties in addition to their NEPM duties, such as overall planning and direction of area substation operations. The report further noted that they had in depth knowledge and experience in electrical power transmission operating procedures and practices. The report found Straub's position (GS-12) to be most similar to Walden's, but pointed out that the Ross Complex, at which Straub performs the primary NEPM functions, is much larger than the Puget Sound facility. [FN4] The report emphasized that while Walden had only been employed with BPA for 10 1/2 years, Straub had been with BPA for 29 years, Prince had 22 years with BPA, and Farrow had 18 years with BPA. The report also indicated that, unlike Walden, the men had at least some college education.

> FN4. Also, as the BPA points out, Straub has also tried to have his position reclassified from GS-12 to GS-13, but has not been successful.

Accordingly, Walden has not produced evidence indicating that her job responsibilities were equal to those of her male comparators. Instead, the evidence shows that Walden's job duties and qualifications were less than, not equal to, those of the men at pay grades of GS-12 and GS-13. Thus, Walden failed to establish an essential element of her prima facie case of sex-based wage discrimination (i.e., that her job was substantially similar to higher paid males). Therefore, we affirm summary judgment in the Government's favor on this claim. [FN5]

> FN5. Walden argues that she is not

precluded from establishing sex-based wage discrimination under theories other than the equal work theory. Based on *County of Washington v. Gunther,* 452 U.S. 161 (1981), Walden can pursue wage discrimination claims under Title VII separate from a claim under the Equal Pay Act. However, the heart of Walden's complaint is that she is paid less than men with substantially the same responsibilities. Thus, it involves an equal work theory of discrimination, and is appropriately analyzed under the Equal Pay Act analysis. *Foster,* 772 F.2d at 1465. Walden has not asserted different claims of discrimination, such as those described by the Supreme Court in *Gunther,* that give rise to a different analysis under Title VII.

*C. Stricter Standards for Advancement*

**\*\*4** Walden alleges that the BPA discriminated against women by setting stricter standards for the advancement of all women employees. Specifically, she argues that while she had to request job audits in 1985 and in 1991 in order to be reclassified to higher levels of pay, BPA "automatically" reclassified the men with the NEPM responsibilities. This claim has no merit.

Walden began working at BPA in 1981 as an Administrative Technician at a GS-6 level, and in 1982 she was upgraded to a GS-7. In 1983, Walden assumed responsibility for the NEPM program in the Puget Sound Area as a Facility Management Specialist. In 1985, following a job audit to determine her pay grade, she was promoted to a GS-9. In 1991, Walden again requested an increase in her pay grade classification. Ciraulo performed the desk audit to determine the correct classification of Walden's position. When Walden's position as the Facility Management Specialist was upgraded to a GS-11 level, other employees with the same position and title were also upgraded to the GS-11 level. Thus, by requesting the job audits in 1985 and 1991, Walden chose to avail herself of one manner in which a grade increase can be achieved. And, since 1981, she went from a GS-6 employee to a GS-11 employee.

However, nothing would preclude the BPA from reclassifying positions on their own initiative when positions changed and entailed new responsibilities, as in the case of the reclassification of the Assistant Operations Superintendents to the GS-13 level. Employees, male or female, may or may not have chosen to request job audits to achieve increases in pay level as did Walden. The fact that she requested job audits, while other positions had their pay grade increased without job audits, does not indicate discrimination.

In the same vein, Walden argues that after her job audit and subsequent reclassification from a GS-9 to GS-11, the male Facility Management Specialists were "automatically" reclassified, without having to request a job audit. The BPA explains that the men's "automatic" reclassification occurred because pay grades are assigned to a position and not a person. When Walden's position as a Facility Management Specialist was reclassified to the GS-11 level, all other Facility Management Specialists were also reclassified.

These facts do not indicate that it was easier for men to get pay grade increases. Instead, they simply show that the BPA has certain policies and procedures in place for upgrading positions. The BPA determined the appropriate pay level based on the position and its correlating responsibilities, not based on gender. Straub, the male employee in charge of the NEPM duties at the Ross Complex, had also tried unsuccessfully to have his position reclassified from GS-12 to GS-13. Thus, the facts alleged by Walden do not give rise to an inference that BPA intentionally discriminated against women by setting stricter standards for their advancement. Therefore, the district court correctly granted summary judgment for the Government on this discrimination claim. [FN6]

> FN6. We could have examined the discrimination claims differently, and reached the same result. If we had determined, or assumed, that Walden had established her prima facie case, she still would not have survived summary judgment. As indicated above, the BPA offered extensive evidence of its legitimate reasons for grading Walden at the GS-11 level, which would have rebutted the prima facie case of discrimination. Walden did not offer evidence to show that these reasons were pretextual. Therefore, summary judgment would have been appropriate based on her failure to offer evidence refuting the legitimacy of the BPA's nondiscriminatory reasons. *See Wallis v. Simplot,* 26 F.3d 885, 890 (9th Cir.1994).

## II
### Retaliation Claims

**\*\*5** In order to establish a prima facie case of retaliation, Walden must show: 1) she engaged in an activity protected by Title VII;  2) her employer subjected her to an adverse employment action;  and 3) a causal connection between the protected activity and the adverse action. *Jordan v. Clark,* 847 F.2d 1368, 1376 (9th Cir.1988), *cert. denied,* 488 U.S. 1006 (1989).  Walden argues that she was retaliated against for filing her sex discrimination complaints when:  1) her supervisor denied her a monetary award for a suggestion she made pursuant to the BPA suggestion program;  and 2) she received a written admonishment about her private use of a government computer.

*A. Denial of Cash Award*

The district court found that BPA's denial of a cash award pursuant to the company suggestion program was not an "adverse employment action." *See Weber v. Department of the Army,* 9 F.3d 97, 100 (Fed.Cir.1993) (refusal of an agency to adopt a suggestion was not a "personnel action").  We agree with the district court.  The award was merely discretionary and did not adversely affect the terms or conditions of her employment.  Furthermore, Walden did not establish a causal connection between her filing of the discrimination complaint and the denial of the cash award.  Instead, BPA explained the award was denied, not as an adverse action, but because Walden's suggestion was within the scope of her employment and did not qualify for an award. Accordingly, the denial of the award did not constitute an "adverse employment action," and Walden failed to establish a prima facie case of retaliation. [FN7]

> FN7. Also, as explained by the district court, even if Walden had established a prima facie case of discrimination on this retaliation claim, the BPA offered a legitimate, nonretaliatory reason for withholding the award when it alleged that the suggestion was within the scope of her employment and did not qualify her to receive an award.  Walden produced no evidence suggesting that the Government's explanation was pretextual.  Thus, summary judgment could have been sustained on these grounds. *See Wallis,* 26 F.3d at 890.

*B. Letter Admonishing Her for Personal Use of Computer*

The district court found that the letter also did not constitute an "adverse employment action" because it did not result in any consequences to Walden. The memorandum was not placed in her personnel file and no disciplinary action was taken.  Consequently, the letter did not affect the terms or conditions of Walden's employment.  Therefore, again Walden did not sufficiently allege evidence establishing an "adverse employment action," an essential element of a retaliation claim.  We affirm the district court's grant of summary judgment in favor of the Government on this claim.

## III
### Relief from Judgment

Walden moved the district court for relief from its grant of summary judgment for the Government based on newly discovered evidence.  Walden asserted that a proposed vacancy announcement for a new NEPM position at the GS-13 level indicated that the BPA's reasons for the difference in Walden's pay grade and that of her male comparators were pretextual.  The district court found that the evidence of the vacancy announcement was immaterial, and it denied Walden's motion.  This court reviews the district court's denial of the motion for relief from judgment for an abuse of discretion. *Export Group,* 54 F.3d at 1469.

In order for Walden to establish that the district court abused its discretion when it refused to reopen the case based on newly discovered evidence, she must show that the newly discovered evidence is "of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.,* 833 F.2d 208, 211 (9th Cir.1987).  In response to Walden's motion for relief from judgment, BPA stated that it did consider creating a new NEPM position at a GS-13 level, but that it later decided against creating that position.  BPA contended that the GS-13 position, if it had been created, would not have been the same as Walden's GS-11 position as a Facility Management Specialist, but instead would involve additional responsibilities warranting the GS-13 classification.  Also, the position location listed in the vacancy announcement listed several possible locations in Washington, so it was not restricted to the Puget Sound facilities.

**\*\*6** Thus, the evidence about the possible creation of a new GS-13 position does not indicate that Walden was discriminated against because her

position was classified at the GS-11 level. The new position was not in fact created, and Walden can only speculate as to what the precise duties of that position would have been, where it would have been, and how it would have compared to her own position. Walden has not shown that this new evidence was material or that it would have changed the disposition of the case. Therefore, the district court did not abuse its discretion by denying Walden's motion for relief from the judgment.

AFFIRMED.

95 F.3d 1160 (Table), 1996 WL 477020 (9th Cir.(Wash.)) Unpublished Disposition

Briefs and Other Related Documents (Back to top)

. (Appellate Brief) Reply Brief (Sep. 21, 1995)Original Image of this Document (PDF)

. (Appellate Brief) Appellant's Brief (Jul. 11, 1995)Original Image of this Document (PDF)

END OF DOCUMENT