# EXHIBIT R

Westlaw.

Not Reported in F.Supp.2d  
1999 WL 222459 (D.Del.)

**(Cite as: 1999 WL 222459 (D.Del.))**

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

Page 1

United States District Court, D. Delaware.
Sharon WHITFIELD, Plaintiff,
v.
PATHMARK STORES, INC., Defendant.
**No. CIV.A. 96-246-MMS.**

March 30, 1999.

Teresa C. Fariss, Esq., of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware; attorney for plaintiff.

Susan G. Harron, Esq., of White and Williams LLP, Wilmington, Delaware; Of Counsel: Michael F. Kraemer, Esq., of White and Williams LLP, Philadelphia, Pennsylvania; attorneys for defendant.

MEMORANDUM OPINION

SCHWARTZ, Senior District J.

*1 Sharon Whitfield ("Whitfield") filed this complaint against Pathmark Stores, Inc. ("Pathmark") alleging violation of the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12111 *et seq.* She alleges she was a qualified individual with a disability and Pathmark discriminated against her because of her disability. She further alleges Pathmark retaliated against her for engaging in protected activity under the ADA. A jury trial of the matter has been scheduled beginning May 10, 1999. Before the Court are three [FN1] pre-trial motions in limine from Defendant.

I. FACTS
The relevant facts are simple. [FN2] Whitfield had been employed by Pathmark since 1981, when in 1992 and 1993 she was in two successive automobile accidents injuring her back. After some time away from Pathmark, she returned to work in October 1993 with several doctor's restrictions. When she informed Pathmark her injuries were permanent, she was taken off the work schedule on February 11, 1994

Whitfield filed a disability discrimination charge against Pathmark with the Delaware Department of Labor ("DDOL") on April 27, 1994. [FN3] On May 7, 1994, she returned to work at Pathmark with a note reiterating her medical limitations. When she returned, she was placed on an assignment which included activities she believed were not within her limitations. She asked to be returned to the job she had held immediately after returning from her accident. After Whitfield performed the new job and experienced an aggravation of her symptoms, she provided Pathmark with a doctor's note. She was again taken off the work schedule May 21, 1994.

A series of negotiations regarding a possible return to work in keeping with her medical restrictions followed. These meetings, however, were to no avail, and Whitfield remained off the schedule at Pathmark.

On April 28, 1995, the Delaware Department of Labor issued a decision finding probable cause to believe Pathmark had discriminated against Whitfield. The EEOC issued Whitfield a "Notice of a Right to Sue" on April 19, 1996. On May 1, 1996, Pathmark terminated Whitfield. She instituted this suit on May 13, 1996.

II. DISCUSSION
"The Third Circuit Court of Appeals has approved of pre-trial motions in limine as a method of 'narrow[ing] the evidentiary issues for trial and ... eliminat[ing] unnecessary trial interruptions.' " *Spruill v. Winner Ford of Dover, Ltd.,* 175 F.R.D.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

1999 WL 222459 (D.Del.)

**(Cite as: 1999 WL 222459 (D.Del.))**

Page 2

194, 196 (D.Del.1997) (quoting *Bradley v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064, 1069 (3d Cir.1990)). Pathmark moves to prevent Whitfield from introducing at trial three different types of evidence: (1) evidence of future wage loss, D.I. 106; (2) evidence "concerning or pertaining to the Delaware Department of Labor investigation of plaintiff's disability discrimination charge and subsequent determination," D.I. 107; and (3) evidence of wage loss after June 16, 1994, D.I. 108. A separate discussion of each motion follows.

A. Evidence of Future Wage Loss

*2 Pathmark seeks to exclude evidence of future wage loss. It argues that because Whitfield has asked for reinstatement, the legally preferred remedy, she is not entitled to the alternative remedy of future wages. The Court will deny the motion.

The Third Circuit Court of Appeals has made plain that absent circumstances in which reinstatement is not feasible, back pay with reinstatement is the preferred remedy in a case such as this. *E.g., Starceski v. Westinghouse Electric Corp.,* 54 F.3d 1089, 1103 (3d Cir.1995); *Feldman v. Philadelphia Housing Authority,* 43 F.3d 823, 831-32 (3d Cir.1995). Here, Whitfield not only includes reinstatement in her prayer for damages [FN4], but she also testified in her deposition that she was seeking reinstatement to active employment at Pathmark, D.I. 106, Exh. B ("I want my job back."). It is clear, therefore, that Whitfield is seeking reinstatement.

Whitfield argues, however, that after trial the Court may decide reinstatement is inappropriate in this case because 1) no comparable employment would be available; and 2) a history of hostility exists in the workplace. *See, e.g., Starceski,* 54 F.3d at 1103 (3d Cir.1995) (listing grounds for granting front pay rather than reinstatement); *Maxfield v. Sinclair International,* 766 F.2d 788, 796 (3d Cir.1985) ("There may be no position available at the time of judgment or the relationship between the parties may have been so damaged by animosity that reinstatement is impracticable."). Pathmark notes that it "does not argue that it cannot reinstate plaintiff, if ordered to do so by this Court." [FN5] D.I. 106, ¶ 10.

The Third Circuit Court of Appeals has explicitly explained that "[s]ince reinstatement is an equitable remedy, it is the district court that should decide whether reinstatement is feasible[,] .... [but] the amount of damages available as front pay is a jury question." *Maxfield,* 766 F.2d at 796 (3d Cir.1985). It has further noted,

[T]he preferable course for a plaintiff seeking the equitable remedy of reinstatement is for such a plaintiff to ask for a jury interrogatory concerning the amount of damages attributable to front-pay in order to avoid a double recovery. In the future, we may require such a practice in order to preserve a claim for reinstatement.

*Squires v. Bonser,* 54 F.3d 168, 176 n. 16 (3d Cir.1995) (outlining the preferred practice when dealing with the alternative remedies of reinstatement and front pay). Other cases have also ratified this approach. *Starceski,* 54 F.3d at 1103 (discussing presence of jury instructions on front pay); *Anastasio v. Schering Corp.,* 838 F.2d 701, 708-710 (analyzing *jury* calculation of front pay for reasonableness). Thus, the Court, if Pathmark is found to have unlawfully discriminated or retaliated against Whitfield, will be asked to determine if reinstatement is appropriate. The Court declines, without a full presentation on the reinstatement issue, to preclude the possibility that front pay damages may be warranted. *See Feldman,* 43 F.3d at 832 (describing approvingly trial court's practice of deferring issue of availability of front pay until after presentation of evidence and then determining whether issue of front pay damages should be put to the jury). The Court therefore denies Pathmark's motion to exclude evidence of front pay damages.

B. DDOL Investigation and Determination

*3 Pathmark requests the Court exclude both the factual and legal findings of the DDOL's Determination, all testimony regarding the determination and all evidence concerning the DDOL investigation of Whitfield's charges. The Court will grant Pathmark's motion as to the Determination itself and any testimony regarding

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 3

1999 WL 222459 (D.Del.)

**(Cite as: 1999 WL 222459 (D.Del.))**

the Determination, but will reserve decision as to any evidence concerning the DDOL investigation, including the contents of the DDOL file, until Whitfield seeks to introduce them at trial.

Pathmark argues the Determination must be excluded as hearsay evidence because it is an out of court statement being "offered for the truth of the matter asserted." Fed.R.Evid. 801(c). It further argues that the exception to the hearsay rule embodied in Federal Rule of Evidence 803(8)(C) which permits admission of

> [r]ecords, reports, statemetns, or data comilations, in any form, of pulic offices or agencies, setting forth ... (C) in civil actions ... factual findings resulting from an investigation made pursuant to authoirty granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

In determining the admissibility of documents under this exception, this Court has previously held that the trustiworthiness of the information is the primary factor to be considered. *Spruill v. Winner Ford of Dover, Ltd.,* 175 F.R.D. 194, 196 (D.Del.1997). However, as this Court noted, "With the record silent as to trustworthiness, the Court is loathe to hold the findings of the DDOL are inadmissible based on lack of trustworthiness, despite gereral recognition that the quality of these findings may vary." [FN6] *Id.* at 197. However, because the Court finds that the Determination is inadmissible on other grounds, it need not further consider this issue.

Neither the factual findings nor the legal findings in the Determination are admissible under the Federal Rules of Evidence. The facutal findings are inadmissible because they are unnecessarily cumulative. Under the Federal Rules of Evidence, "all relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules presribed by the Supreme Court ...." Fed.R.Evid. 402; *see also Beech Aircraft v. Rainey,* 488 U.S. 153, 168 (1988) (noting that relevance requirements of the Federal Rules of Evidence further limit the admissibility official reports). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the aciton more probably or less probably than it would be without the evidence." Fed.R.Evid. 401.

The factual findings of the determination clearly echo the facts for which this Court has, in previous opinions, found supporting evidence. After Whitfield's return from work after a back injury, when her doctor provided Pathmark a note indicating her limitations were permanent, she was taken off the work schedule in February 1994. She returned to work on May 7, 1994, but experienced problems with her back doing the work assigned to her. She was taken off the work schedule again on May 21, 1994. Because the facts oulined in the DDOL report are duplicative of undisputed facts, they are cumulative and therefore have little relevance. [FN7] *Spruill,* 175 F.R.D. at 197. Therefore, the factual findings of the DDOL Determination will not be admitted at trial.

*4 The legal findings of the Determination are likewise inadmissible because they could have a highly prejudicial effect. Federal Rule of Evidence 403 permits exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." As this Court has previously noted, several courts have excluded such opinions or conclusions by the EEOC because of the prejudice it might have toward one of the parties. *Id.* at 198. Indeed, in *Brom v. Bozell, Jacobs, Kenyon & Eckhardt,* 867 F.Supp. 686 (N.D.Ill.1994), the Court noted noted that admitting such administrative conclusions were "tantamount to saying 'this has already been decided and her is the decision[.]' " *Id.* at 692 (quotation omitted). *Id.* at 692.

In this case, the DDOL Determination makes several conclusions of law. For example, the Determination states "Respondent failed to provide a valid reason for taking Charging party off the schedule," "Respondent discriminated against Charging party," and "failed to accomodate."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                    Page 4
1999 WL 222459 (D.Del.)

**(Cite as: 1999 WL 222459 (D.Del.))**

Furthermore, the Determination assumes Whitfield has a disability, a conclusion this Court has declined to make as a matter of law. By drawing this conclusion, the Determination has the potential to confuse the jurors and would be highly prejudicial against Pathmark since it draws many of the same conslusions the jury will be asked to draw. Therefore, the Conclusion of the Determination is also inadmissible. Similarly, any testimony regarding the DDOL Determination will likewise be excluded.

Pathmark also seeks to exclude all evidence concerning the DDOL investigation, including all materials submitted by Pathmark to the DDOL as part of the investigation. However, neither party has apprised the Court of the contents of the investigative file. That file could contain relevant evidence or impeachment evidence, which, if otherwise admissible, should not be excluded. Without further knowledge of the contents of the investigative file, the Court cannot rule upon the admissibility of any one item in the investigative file. However, counsel are advised not to mention before the jury any evidence in the investigative file without first requesting a bench conference and obtaining a ruling and not to mention the contents of the DDOL investigative file during opening argument.

C. Wage Loss After June 16, 1994

This particular motion in limine borders on the frivolous. Pathmark requests this Court to exclude all evidence of wage loss after June 16, 1994, on the ground that Whitfield failed to accept an unconditional offer of reinstatement by Pathmark on that date. D.I. 108. While it is true that under the Supreme Court's holding in *Ford Motor Co. v. EEOC,* 458 U.S. 219 (1982), failure to accept an unconditional offer of reinstatement tolls accrual of back pay from the date of the offer, Pathmark has not come anywhere close to showing uncontroverted evidence of an unconditional offer of reinstatement.

*5 Pathmark relies on a letter dated June 16, 1994, memorializing a meeting on June 8, 1994, where, according to the letter, Pathmark agreed to all the terms set forth by Whitfield and offered to return her to work immediately. D.I. 108, Exh. A. However, Whitfield argues the offer at this meeting, far from being unconditional, was conditioned upon her withdrawing the charges she had filed with the EEOC and DDOL. Indeed, Richard McGinley, the Director of Associate Relations at Pathmark, testified the terms of Whitfield's reinstatement were included on a sheet of paper given to her at the June 8, 1994, meeting and marked as an exhibit in his deposition. D.I. 114, Exh. A at 90, 92. Indeed, that exhibit states, in handwriting at the bottom, "EEOC/Del DOL disability charges to be withdrawn." D.I. 114, Exh. B. The Court cannot, therefore, conclude Pathmark gave Whitfield an unconditional offer of employment precluding her from seeking back pay after that date. *See also Whitfield v. Pathmark,* No. Civ. A. 96-246, 1998 WL 372313, at *3 (D. Del. June 22, 1998) (reciting as a fact in a summary judgment opinion that "Pathmark's proposal required that Whitfield drop her disability discrimination charge."). The Court therefore will deny Pathmark's motion to exclude evidence of wage loss after June 16, 1994.

III. CONCLUSION
Therefore, the Court will deny Pathmark's motion to exclude evidence of future wage loss. Pathmark's motion to exclue evidence of the DDOL investigation will be granted with respect to the DDOL Determination in its entirety, but judgment is reserved as it relates to evidence of the DDOL investigation. Finally, Pathmark's motion to exclude evidence of wage loss after June 16, 1994, will be denied.

> FN1. Pathmark has informed the Court by letter that it no longer intends to pursue a fourth motion in limine, D.I. 109, in light of this Court's March 12, 1999, decision in this case reinstating Whitfield's discrimination claim, ___ F.Supp.2d ___ (D.Del. March 12, 1999).

> FN2. The Court has twice outlined more fully the facts underlying this matter in two summary judgment opinions. *Whitfield v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

1999 WL 222459 (D.Del.)

**(Cite as: 1999 WL 222459 (D.Del.))**

Page 5

*Pathmark Stores, Inc.,* No. Civ. A. 96-246 MMS, 1998 WL 372313 (D. Del. June 22, 1998); *Whitfield v. Pathmark Stores, Inc.,* 971 F.Supp. 851 (D.Del.1997), *vacated in part by,* ___ F.Supp.2d ___ (D.Del. March 12, 1999).

FN3. Whitfield's attorney, Richard Zappa ("Zappa") later gave Pathmark notice of the complaint.

FN4. This alone is not conclusive since the the Third Circuit Court of Appeals has held that a plaintiff who does not request reinstatement cannot claim damages in the form of frontpay, since front pay is in lieu of reinstatement. *Wehr v. Burroughs Corp.,* 619 F.2d 276 (1980); *but see Maxfield v. Sinclair International,* 766 F.2d 788, 796 (3d Cir.1984) (where plaintiff specifically prayed for front pay and did not specifically disavow desire for reinstatement, front pay not waived).

FN5. The Court notes that the principal of judicial estoppel will bind Pathmark from later asserting a different position in bad faith. *E.g. Stairmaster Sports/Medical Products, Inc. v. Groupe Procycle, Inc.,* 25 F.Supp.2d 270, 280 (D.Del.1998) (holding party to patent litigation was judicially estopped from asserting position inconsistent with position taken at *Markman* proceedings).

FN6. While Pathmark suggests that the Determination is untrustworthy because it assumes Whitfield is disabled. However, this alone, does not render the report untrustworthy, particularly since the Court has recently held that whether Whitfield is disabled is an issue for the jury. ___ F.Supp.2d ___ (D.Del. March 12, 1999).

FN7. This discussion of the facts is not exhaustive with respect to every fact detailed by the DDOL or undisputed in this matter. For purposes of deciding this motion in limine, the Court has focused on the "meat" of the Determination.

1999 WL 222459 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:96CV00246 (Docket)
(May. 13, 1996)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.