## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIDI CHERKAOUI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v | ) | C A No : 05-CV-184-KAJ |
| | ) | |
| HSBC PAY SERVICES, INC , a | ) | JURY TRIAL DEMANDED |
| Delaware corporation, HSBC FINANCE | ) | |
| CORPORATION, a Delaware | ) | |
| corporation, and HOUSEHOLD | ) | |
| INTERNATIONAL, INC, a Delaware | ) | |
| corporation, | ) | |
| | ) | |
| Defendants | ) | |

## REPLY BRIEF IN SUPPORT OF HSBC'S MOTION TO DISMISS

Jennifer C. Jauffret (#3689)
jauffret@rlf com
Alyssa M Schwartz (#4351)
schwartz@rlf com
Richards, Layton & Finger
One Rodney Square
P O Box 551
Wilmington, Delaware  19899
(302) 651-7700

Attorneys for Defendants
HSBC Pay Services, Inc , HSBC Finance
Corporation and Household International, Inc

Dated: June 15, 2005

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS .................................................................................. ii

NATURE AND STATE OF PROCEEDINGS ........................................................ 1

SUMMARY OF ARGUMENT ............................................................................ 2

COUNTERSTATEMENT OF THE FACTS .......................................................... 3

ARGUMENT ................................................................................................... 6

   I    STANDARD FOR A RULE 12(B)(6) MOTION TO DISMISS ................... 6

   II   PLAINTIFF'S COMPLAINT DOES NOT PLEAD A COGNIZABLE
        TITLE VII CLAIM ................................................................................ 8

        A   Plaintiff Was Not Discriminated Against "With Respect to His
            Compensation" Under Title VII ................................................... 9

        B   Household's Decision Not to Reward Plaintiff Did Not Deprive
            Him of A "Privilege of Employment " ....................................... 12

   III  PLAINTIFF'S CHARGE WAS UNTIMELY, AND AS SUCH,
        PLAINTIFF'S TITLE VII CLAIM MUST BE DISMISSED ...................... 15

   IV  AS PLAINTIFF'S TITLE VII CLAIM SHOULD BE DISMISSED, PLAINTIFF'S
        STATE LAW CLAIMS SHOULD ALSO BE DISMISSED FOR LACK OF
        SUBJECT MATTER JURISDICTION ................................................. 18

CONCLUSION .............................................................................................. 19

RLF1-2883067-3

# TABLE OF AUTHORITIES

## CASES

Aiken v. Reilly,
    1991 WL 126000 (D D C  June 26, 1991), aff'd, 1993 WL 267511
    (D C  Cir  July 7, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Babiarz v. Bell Atlantic-Pennsylvania, Inc.,
    2001 WL 1808554 (Pa  Comm  Pl  July 10, 2001) . . . . . . . . . . . . . . . . . . . 10

Bell v. Waste Management, Inc.,
    2004 WL 2451416 (D  Del  Oct  29, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 8

Boardley v. First Correctional Medical,
    2004 WL 2980727 (D  Del  Dec  21, 2004) . . . . . . . . . . . . . . . . . . . . . . 18

Borough of West Mifflin v. Lancaster,
    45 F 3d 780 (3d Cir  1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Carlini v. U.S. Rubber Co.,
    154 N W 2d 595 (Mich  App  1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Conley v. Gibson,
    355 U S  41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Cooley v. United States,
    1997 WL 325846 (E D  Pa  June 10, 1997) . . . . . . . . . . . . . . . . . . . . . . . . 10

Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc.,
    344 F  Supp  2d 923 (D  Del  2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cygan v. Megathalin,
    96 N E 2d 702 (Mass  Supr  1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

deCiutiis v. Nynex Corporation,
    1996 WL 512150 (S D N Y  Sept  9, 1996) . . . . . . . . . . . . . . . . . . . . . . . . 10

DiBiase v. SmithKline Beecham Corp.,
    48 F 3d 719 (3d Cir  1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Dicks v. Info. Technologist, Inc.,
    1996 WL 528890 (E D  Pa  August 29, 1996) . . . . . . . . . . . . . . . . . . . . . . 13

EEOC Decision No. 71-32,
    1970 WL 3532 (E E O C  July 15, 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

RLF1-2883067-3

Edwards v. General Motors Assembly Division,
    63 P 3d 563 (Okla App 2002) . . . . . . . . . . . . . . . . 10

Fremont v. E.I. duPont de Nemours & Co.,
    988 F Supp 870 (D Del 1997) . . . . . . . . . . . . . . . . 10

Goodman v. Lukens Steel Co.,
    580 F Supp 114 (E D Pa 1984) . . . . . . . . . . . . . . . . 11

Hishon v. King & Spalding,
    467 U S 69 (1984) . . . . . . . . . . . . . . . . . . . 6

Hodgkins v. New England Telephone Co.,
    83 F 3d 1226 (1st Cir 1996) . . . . . . . . . . . . . . . . 10

Igwe v. E.I. duPont de Nemours & Co., Inc.,
    2005 WL 196577 (D Del Jan 26, 2005) . . . . . . . . . . . . 8

Kipnis v. Baram,
    949 F Supp 618 (N D Ill 1996) . . . . . . . . . . . . . 13, 14

Knott-Ellis v. Del. Department of Correction,
    2001 WL 935621 (D Del Aug 3, 2001) . . . . . . . . . . . . 8

Kopin v. Orange Products, Inc.,
    688 A 2d 130 (N J App Div 1997) . . . . . . . . . . . . . 10

Lone Star Steel Co. v. Scott,
    759 S W 2d 144 (Tex App 1988) . . . . . . . . . . . . . . 10

McDonnel Douglas Corp. v. Green,
    411 U S 792 (1973) . . . . . . . . . . . . . . . . . . 8

McIntyre v. City of Wilmington,
    2002 WL 1586280 (D Del July 9, 2002), aff'd, 80 Fed Appx 287 (3d Cir 2003)
    (TABLE) . . . . . . . . . . . . . . . . . . . . . 4, 7, 8

Menkowitz v. Pottstown Mem'l Medical Ctr.,
    154 F 3d 113 (3d Cir 1998) . . . . . . . . . . . . . . . 7

Morning v. Polytech School District,
    1998 WL 957259 (D Del Dec 29, 1998) . . . . . . . . . . . 18

O'Neil v. E.I. duPont de Nemours & Co.,
    106 A 50 (Del Ch 1919) . . . . . . . . . . . . . . . . 10

Oatway v. America International Group, Inc.,
    2002 WL 187512 (D. Del. Feb. 5, 2002), 325 F.3d 184 (3d Cir. 2003)       18

Peake v. International Harvester Co.,
    489 N.E.2d 102 (Ind. App. 1986)             10

Pennick v. Brown,
    2000 WL 419985 (E.D. Pa. Apr. 18, 2000)          12

Plummer v. Tisch,
    1989 WL 141388 (D.D.C. Aug. 31, 1989)         13

Rabinovitz v. Pena,
    89 F.3d 482 (7th Cir. 1996)             14

Raiszadeh v. Department of Veterans Affairs,
    2001 WL 1580128 (Fed. Cir. Dec. 10, 2001)        11

Rufo v. Metropolitan Life Insurance Co.,
    1997 WL 732859 (E.D. Pa Nov. 4, 1997)         11

Russell v Principi,
    257 F.3d 815 (D.C. Cir. 2001)          10, 11, 14

Schott v. Westinghouse Electric Corp.,
    259 A.2d 443 (Pa. 1969)             10

Swierkiewicz v. Sorema,
    534 U.S. 506 (2002)              7

Walden v. Watkins,
    1996 WL 477020 (9th Cir. Aug. 21, 1996)        13

Washington v. State of Delaware/Supreme Court of Delaware,
    2003 WL 21697403 (D. Del. July 17, 2003)         8

Zaken v. Boerer,
    964 F.2d 1319 (2d Cir. 1992)            11

RLF1-2883067-3

## STATUTES AND OTHER AUTHORITIES

42 U S C  § 2000e-(5)(2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 U S C  § 1367(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed  R  Civ  P  8(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

Fed  R  Civ  P  8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed  R  Civ  P  12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

Fed  R  Civ  P  12(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

19 <u>Del. C.</u> § 712(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

19 <u>Del. C.</u> § 712(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

v

## NATURE AND STATE OF PROCEEDINGS

On March 24, 2005, plaintiff Sidi M Cherkaoui ("Plaintiff") filed a complaint (the "Complaint") against defendants HSBC Pay Services Inc ("Pay Services"), HSBC Finance Corporation ("Finance Corporation") and Household International Inc ("Household") (collectively, "HSBC")  The Complaint was brought pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") for alleged employment discrimination and for related state law claims Complaint at ¶ 1

On May 11, 2005, HSBC moved to dismiss the Complaint in its entirety and filed its Opening Brief in support thereof  D I  8   On June 1, 2005, Plaintiff filed his Answering Brief D I  10  This is HSBC's Reply Brief

## SUMMARY OF ARGUMENT

1       Plaintiff's Complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Even under Fed. R. Civ. P. 8(a)'s less stringent standard of notice pleading, the Complaint fails to plead facts to sustain a Title VII claim. Based on the facts as alleged in the Complaint and in the documents properly attached to HSBC's Opening Brief, Plaintiff has no basis for recovery under federal law. Household's failure to compensate Plaintiff for an idea submitted to its voluntary employee suggestion programs – programs by no means tied to Plaintiff's job – does not translate into a Title VII claim.

2       Specifically, Plaintiff has not suffered an "adverse employment action" with respect to his "compensation" or "privileges of employment," and as such his Title VII claim should be dismissed.

3       Assuming, *arguendo*, that Plaintiff's failure to plead an "adverse employment action" does not operate as a bar to his Title VII claim, the Title VII claim must still be dismissed as untimely because Plaintiff failed to file his charge of discrimination (the "Charge") within the requisite time frame.

4       Lastly, to the extent Plaintiff's Title VII claim is dismissed, Plaintiff does not dispute that the entire Complaint should be dismissed for lack of pendent jurisdiction over his remaining state law claims.

2

## COUNTERSTATEMENT OF THE FACTS

Nothing in either the Winning Ideas Now ("WIN") or Great Ideas programs "promised" to reward Plaintiff for the idea he submitted to both programs. As outlined in HSBC's Opening Brief, WIN and Great Ideas are Household's voluntary employee suggestion programs by no means tied to its employees' jobs. Participation in these programs neither affects nor is related to any core job benefit such as continued employment, promotion or higher salary. Most importantly, under both programs, all decisions "regarding eligibility, adoption, rejection or award are final and binding on the suggester." OB at Exs C and D [1]

On March 8, 2002, when Plaintiff submitted to the WIN program the idea for Household's customers to make automatic check payments by telephone (two years after allegedly first approaching Household with the idea), he agreed to the following disclaimer:

> I have read the rules of this program as stated in the WIN PROGRAM OVERVIEW and agree to be bound by the program guidelines. I hereby assign all my rights to my idea to Household International in accordance with the rules of the employee suggestion system. I understand Household International has sole, exclusive right to determine the amount of the award. I acknowledge that all ideas submitted become the exclusive property of Household International. I also agree that Household International can amend the system at any time and has the right to determine all policies regarding eligibility of participants and ideas.

OB at Ex C (emphasis added). The WIN program specified: "Household International reserves the right to withdraw or change the system and to vary the procedure for handling suggestions at any time." Id.

When Plaintiff resubmitted the idea to the Great Ideas program in April 2003, he agreed to the following disclaimer, almost identical to the one used for the WIN program:

---

[1] As used herein, "OB at ___" refers to HSBC's Opening Brief. As used herein, "AB at __" refers to Plaintiff's Answering Brief.

3

> I have read the rules of this program as stated in the Great Ideas PROGRAM
> OVERVIEW and agree to be bound by the program guidelines. I hereby assign
> all my rights to my idea to Household in accordance with the rules of the
> employee suggestion program. I acknowledge that all ideas submitted become the
> exclusive property of Household. I understand Household has the sole, exclusive
> right to determine the amount of the award, and all decisions are final. I also
> agree that Household can amend the program at any time and has the right to
> determine all policies regarding eligibility of participants and ideas.

OB at Ex. D (emphasis added). Further, general information about Great Ideas provided to all employees included: "This program and awards thereunder shall not give any employee any right to continued employment and does not constitute a contract of employment. Management reserves the right to amend, suspend or terminate this program at any time." Id.

Although both programs' written guidelines focus on such concepts as recognition and reward structure, nothing therein promised or guaranteed that Plaintiff's submissions would be rewarded. See OB at Exs. C and D.[2] Plaintiff argues that the WIN guidelines do "not state that

---

[2] Notably, Plaintiff fails to cite any case law to suggest that the WIN and Great Ideas programs' written guidelines are not properly before the Court. Nor does Plaintiff contest HSBC's attachment of Plaintiff's WIN and Great Ideas submission forms.

As for the Delaware Department of Labor (the "DDOL") dismissal, Plaintiff "objects to Household's use of the DOL Notice," arguing that the DDOL's findings are inadmissible at trial. See AB at 31. This Court, however, in the process of deciding a motion to dismiss has considered the DDOL and United States Equal Employment Opportunity Commission's (the "EEOC") determinations. See McIntyre v. City of Wilmington, 2002 WL 1586280, at *6 (D. Del. July 9, 2002) (granting an employer's motion to dismiss and holding that "[i]n his DDOL claim, McIntyre failed to produce any facts or allegations which could convince the DDOL that he had a legitimate racial discrimination claim. Similarly, upon filing a claim with the EEOC, McIntyre failed to produce any evidence of racial discrimination"), aff'd, 80 Fed Appx. 287 (3d Cir. 2003) (TABLE). A court may consider documents specifically referenced in a complaint and/or attached to a complaint. OB at 9. Here, the DDOL proceeding is referenced in the Complaint. See Complaint at ¶ 28. Further, the EEOC issued its dismissal based on the DDOL's findings. Complaint at Ex. B. As the EEOC decision was attached to Plaintiff's Complaint, the DDOL decision is incorporated by reference and properly before the Court for consideration.

As for the June 11, 2003 e-mail, Plaintiff fails to cite any case law to suggest that it is not properly before the Court. Plaintiff's Complaint references and relies upon the June 11, 2003 e-mail (just as it references his WIN and Great Ideas submission forms to which Plaintiff does not (Continued)

Household has the right to deny an award altogether if an idea is implemented." See AB at 6-7

Plaintiff misses the point — Household had total discretion to reward (or in this case not reward)

ideas submitted to either program. See OB Exs. C and D. Both programs were clear that:

- Household had the "exclusive" right to make such determinations and that such decisions were "final";

- all ideas submitted became the "exclusive property of Household"; and

- Household could amend the programs at any time and had "the right to determine all polices regarding eligibility of participants and ideas."

Id. Based on the foregoing, Household, for reasons not relevant to the motion[3] (as evident in the

June 11, 2003 e-mail), rejected Plaintiff's submissions. Pursuant to the unequivocal terms of

both programs, Plaintiff has no recourse from Household's decision.

---

object to the attachment of). See Complaint at ¶ 21. Thus, the June 11, 2003 e-mail is incorporated by reference and properly before the Court for consideration.

Lastly, Plaintiff does not argue that the attachment of any of these documents converts the motion to dismiss to a motion for summary judgment. See AB at 27 ("Even if the case were properly before the court on a motion for summary judgment, which it is not . . .") (emphasis added).

[3] Plaintiff does not disagree that "Household's reasons for denying the award are not relevant for purposes of the motion to dismiss." AB at 27.

RLF1-2883067-3

# ARGUMENT

## I.    STANDARD FOR A RULE 12(B)(6) MOTION TO DISMISS.

Plaintiff has no cognizable claim under Title VII, and as such his Title VII claim (and in turn his state law claims) must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). HSBC is well aware of the limited review of the Court on a motion to dismiss and does "confin[e] the argument to the alleged facts." See AB at 11. Because HSBC has properly attached various documents to its Opening Brief − something Plaintiff largely does not contest[4] − it is not strictly limited to the facts as alleged in the Complaint. As discussed in HSBC's Opening Brief, the Court may consider the allegations of the Complaint, as well as documents attached to or specifically referenced in the Complaint. Id.

Applying this standard, no relief can be granted to Plaintiff "under any set of facts that could be proved consistent with the allegations"[5] because Household's failure to compensate Plaintiff for an idea submitted under its voluntary suggestion programs does not establish a cognizable claim under Title VII.[6] Plaintiff fails to recognize that even under Fed. R. Civ. P.

---

[4] See note 2 supra.

[5] Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

[6] Although discrimination claims are subject to notice pleading, to the extent that Plaintiff makes unsupported legal conclusions, his Title VII claim must fail. As stated in HSBC's Opening Brief, while a court may accept all well-pled allegations as true for the purposes of a motion to dismiss, "it will not accept <u>unsupported conclusions</u>, unwarranted inferences or sweeping legal conclusions cast in the form of factual allegations." OB at 9 (emphasis added). Plaintiff's Complaint, without more, states: "Other HRS employees, not of the Plaintiff's national origin, received compensation for their ideas that were presented to and implemented by HRS." Complaint at ¶ 24. This unsupported conclusion is not enough to survive a motion to dismiss. With that said, the thrust of HSBC's argument is not that Plaintiff failed to properly plead the existence of a comparator (which he did), but rather that Household's failure to compensate Plaintiff for an idea submitted under its voluntary suggestion programs does not establish a cognizable claim under Title VII.

8(a)'s[7] less stringent standard of notice pleading, a plaintiff still must be able to bring a valid cause of action – something Plaintiff cannot do. For this very reason, Plaintiff's reliance on Swierkiewicz v. Sorema is misplaced. In Swierkiewicz, the plaintiff brought a Title VII claim alleging that he was demoted and ultimately terminated based on his national origin. Swierkiewicz v. Sorema, 534 U.S. 506, 508-09 (2002). Although the case was initially brought on a Rule 12(b)(6) motion to dismiss, the United States Supreme Court focused on the requirements of notice pleading in its decision, ultimately holding (as Plaintiff points out) that "under a notice pleading system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case." Id. at 511. However, the fact remains that even pursuant to Rule 8(a)(2), a plaintiff must still be "entitled to relief" for his claim to survive. Fed. R. Civ. P. 8(a)(2). See also Swierkiewicz 534 U.S. at 514 (holding, "These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. In addition, they state claims upon which relief could be granted under Title VII and the ADEA.") (citations omitted) (emphasis added). Thus, a complaint must be dismissed when a plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45 (1957). In other words, a complaint must set forth the material facts, and the inferences drawn from those facts must create a basis for recovery. Menkowitz v. Pottstown Mem'l Med. Ctr., 154 F.3d 113, 124-25 (3d Cir. 1998).

For example, in McIntyre v. City of Wilmington, decided after Swierkiewicz, this Court dismissed a Title VII claim pursuant to Rule 12(b)(6), as the plaintiff could not "prove any set of facts consistent with the allegations in the complaint which would entitle him to relief."

---

[7] Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).

McIntyre v. City of Wilmington, 2002 WL 1586280, at *1 (D Del July 9, 2002)  In reaching this conclusion, the Court analyzed the plaintiff's complaint under the Price Waterhouse and McDonnell Douglas frameworks, ultimately concluding that the plaintiff failed to state a claim under either analysis  Id. at *4-6  Like the plaintiff in McIntyre, the facts as set forth in Plaintiff's Complaint and in the documents attached to the Opening Brief do not create a basis for recovery under Title VII  As such, Plaintiff's Title VII claim must be dismissed [8]

## II.     PLAINTIFF'S COMPLAINT DOES NOT PLEAD A COGNIZABLE TITLE VII CLAIM.

As Plaintiff cannot prove facts to establish a *prima facie* case of discrimination, his Title VII claim must be dismissed  Under McDonnell Douglas Corp. v. Green's three-step burden-shifting analysis for Title VII employment discrimination claims, a plaintiff has the initial burden of establishing a *prima facie* case of discrimination [9]  411 U S  792, 802 (1973)  This is done by showing that the plaintiff:  (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was treated differently than employees who are not members of his protected class  Id.  Specifically, Plaintiff has not suffered an "adverse employment action" with respect to his "compensation" or "privileges of employment "

---

[8] Plaintiff's attack of HSBC's use of Igwe v. E.I. duPont de Nemours & Co., Inc., 2005 WL 196577 (D Del Jan 26, 2005), Bell v. Waste Management, Inc., 2004 WL 2451416 (D Del Oct 29, 2004), Knott-Ellis v. Del. Dept. of Correction, 2001 WL 935621 (D Del Aug 3, 2001) and Washington v. State of Delaware/Supreme Court of Delaware, 2003 WL 21697403 (D Del July 17, 2003), is baseless  HSBC did not cite those cases for the proposition "that a failure to compensate an employee pursuant to a voluntary employer suggestion plan is not a prohibited act of discrimination under Title VII "  AB at 24  Rather, HSBC relied on those cases to establish the standard for an "adverse employment action" under Title VII  See OB at 10-11

[9] The parties do not dispute that the McDonnell Douglas framework applies  OB at 10; AB at 14

A.    **Plaintiff Was Not Discriminated Against "With Respect to His Compensation" Under Title VII.**

The dispute in this case centers on whether Household's denial of Plaintiff's submissions made to Household's voluntary employee suggestion programs – programs by no means tied to his job (something Plaintiff does not contest) – constituted a significant change in his "compensation" to support his Title VII claim  The clear answer is no

In support of his Title VII claim, Plaintiff states:

> Numerous cases hold that employee suggestion programs give rise to enforceable rights to compensation notwithstanding program language which purports to give the employer unfettered discretion in making awards and determining their value  The cases so hold on various theories including express and implied contract, unjust enrichment, and the implied covenant of good faith and fair dealing.

AB at 17 (emphasis added)  Plaintiff's argument is inapplicable here  Plaintiff may have potential claims under some contract theory, but he does not have a claim under Title VII  Plaintiff did not suffer, nor does he allege that he suffered, any adverse change in his compensation, benefits or core job duties necessary to give rise to a Title VII claim  Plaintiff only alleges that he was not rewarded for an idea he submitted to Household as part of its voluntary suggestion programs  Complaint at ¶ 24  Household's failure to reward Plaintiff for a suggestion submitted as part of its nonwork-based programs does not constitute a significant change in "compensation" to sustain his Title VII claim

In fact, none of the cases Plaintiff cites suggest otherwise [10]  All involve state law claims, grounded in contract theories of recovery [11]  These cases only demonstrate that Plaintiff is free to pursue any state law claims he has in state court [12]  See OB at 16-18

---

[10] See note 10 infra

For purposes of Title VII, bonuses tied to an employee's work performance are markedly different from those awards given pursuant to Household's voluntary suggestion programs Plaintiff fails to grasp this distinction  For example, Russell v. Principi dealt with a bonus tied to an employee's work performance, rather than a voluntary suggestion program   Russell v Principi, 257 F 3d 815, 817 (D C Cir 2001)  As noted by the court, the "bonus was directly tied to [the plaintiff's] performance rating "  Id. at 819 (emphasis added)  Likewise, EEOC Decision

---

[11] See Hodgkins v. New England Telephone Co., 83 F 3d 1226 (1st Cir 1996) (claims for breach of contract, quantum meruit, equitable estoppel, unjust enrichment and negligent misrepresentation for a cost-saving idea submitted under employee suggestion program); Schott v. Westinghouse Electric Corp., 259 A 2d 443, 445 (Pa 1969) (a claim for relief on the theory of quasi contract for business suggestions made to employer); Kopin v. Orange Products, Inc., 688 A 2d 130 (N J App Div 1997) (a claim on the theory of quantum meruit or quasi-contract for business suggestions made to employer); deCiutiis v. Nynex Corporation, 1996 WL 512150 (S D N Y Sept 9, 1996) (claims for breach of contract, breach of the implied covenant of good faith, and unjust enrichment for employer's failure to grant employee an award for suggestions that it adopted); Carlini v. U.S. Rubber Co., 154 N W 2d 595, 598 (Mich App 1967) (suit for compensation for suggestions submitted to employer); Cooley v. United States, 1997 WL 325846 (E D Pa June 10, 1997) (claim seeking compensatory damages for employer's failure to properly compensate employee for suggestion); Babiarz v. Bell Atlantic-Pennsylvania, Inc., 2001 WL 1808554 (Pa Comm Pl July 10, 2001) (action for civil conspiracy, accounting, conversion, unfair competition-misappropriation of trade secret, misappropriation of invention, breach of fiduciary duty, fraud, breach of contract and/or quasi-contract,  unjust enrichment, restitution pursuant to § 136 of the Restatement of Restitution and breach of trust based on the submission of marketing plan to employer); Cygan v. Megathalin, 96 N E 2d 702 (Mass Supr 1951) (action to recover compensation for services rendered); O'Neil v. E.I. duPont de Nemours & Co., 106 A 50 (Del Ch 1919) (seeking an injunction against employer for taking steps to obtain patents on a process discovered by employee and for an accounting of employer's profits from the discovery); Fremont v. E.I. duPont de Nemours & Co., 988 F Supp 870 (D Del 1997) (involving breach of implied duty of good faith for failure to award employee bonus for role in employer's patent infringement lawsuit); Lone Star Steel Co. v. Scott, 759 S W 2d 144 (Tex App 1988), (action for failure to pay employee for suggestion); Edwards v. General Motors Assembly Division, 63 P 3d 563 (Okla App 2002) (action for breach of contract against employer seeking compensation for a cost-savings suggestion); Peake v. Int'l Harvester Co., 489 N E 2d 102 (Ind App 1986) (action against an employer seeking compensatory and punitive damages for wrongful appropriation of an idea submitted in a suggestion box)

[12] See note 10 supra

10

No. 71-32, relied on by Plaintiff, is irrelevant, as it involved a Christmas bonus tied to an "employee's length of service and dependability." EEOC Decision No. 71-32, 1970 WL 3532, at *1 (E E O C July 15, 1970). Similarly, Rufo v. Metropolitan Life Insurance Co. and Zaken v. Boerer, also relied upon inappropriately by Plaintiff, both involved bonuses tied to the employees' performance. Rufo v. Metro. Life Ins. Co., 1997 WL 732859, at *3 (E D Pa Nov 4, 1997); Zaken v. Boerer, 964 F 2d 1319, 1321 (2d Cir 1992).[13]

Neither the WIN nor Great Ideas programs were "directly tied" to Plaintiff's performance or his "length of service and dependability." See Russell, 257 F 3d at 819; EEOC Decision No. 71-32, 1970 WL 3532, at *1. Further, neither program guaranteed that Plaintiff would be rewarded for any idea submitted. Under both programs, all decisions "regarding eligibility, adoption, rejection or award are final and binding on the suggester." OB at Exs C and D.

---

[13] Plaintiff's reliance on Goodman v. Lukens Steel Co., Aiken v. Reilly and Raiszadeh v. Dept. of Veterans Affairs is also misplaced. In Goodman, the court merely looked at statistics of suggestion program awards as potential evidence of racial inequality, and not as grounds to support a Title VII claim as Plaintiff seeks here. Goodman v. Lukens Steel Co., 580 F Supp 114, 1151 (E D Pa 1984).

In Aiken, plaintiff filed two internal discrimination complaints with the Environmental Protection Agency (the "EPA"), where he worked as a chemist. Aiken v. Reilly, 1991 WL 126000, at *1 (D D C June 26, 1991), aff'd, 1993 WL 267511 (D C Cir July 7, 1993). In the first compliant, plaintiff alleged that he had been denied an appropriate monetary award for a suggestion submitted to the EPA pursuant to its employee suggestion program because, among other things, he is black. Id. The preliminary investigation by the EPA's Office of Civil Rights (the "OCR") found no merit in either complaint. Id. The OCR found the plaintiff had failed to make a *prima facie* case of discrimination. Id.

In Raiszadeh, the court held that the Department of Veteran's Affairs' decision not to adopt an employee's suggestion for departmental reorganization did not amount to a retaliatory "personnel action," nor did the evidence support a finding that the employee's whistleblowing activities contributed to a subsequent agency decision to deny him a "special contribution" monetary award. Raiszadeh v. Dept. of Veterans Affairs, 2001 WL 1580128, at *2 (Fed Cir Dec 10, 2001).

11

Importantly, any amount awarded to an employee is not considered by Household as "compensation," regardless of its treatment as such for tax purposes.

Fatal to his Title VII claim, Plaintiff has failed to cite any case law in support of his proposition that he has a Title VII claim for discrimination based on Household's decision not to reward him for the idea submitted to its voluntary suggestion programs. While Plaintiff may have state law claims against HSBC for breach of contract and the like, Plaintiff has not suffered an "adverse employment action" regarding his "compensation" sufficient to support his Title VII claim. Thus, Plaintiff's Title VII claim must be dismissed.

**B.     Household's Decision Not to Reward Plaintiff Did Not Deprive Him of A "Privilege of Employment."**

Plaintiff's second argument, that the WIN and Great Ideas programs constitute a "privilege of employment," also fails. Although Household's employee suggestion programs were designed to reward its employees for "great ideas," the fact remains that the programs were in no way tied to its employees' jobs. Regardless of the fact that an employee could draw ideas from his job responsibilities or department, an employee's participation in the WIN and Great Ideas programs (or nonparticipation) in no way affected or resulted in a core job benefit such as continued employment, promotion or higher salary – something that Plaintiff does not deny.

A "privilege of employment" is "a benefit that is part and parcel of [an] employment relationship." DiBiase v. SmithKline Beecham Corp., 48 F.3d 719, 724 (3d Cir. 1995). In other words, a "privilege of employment" includes "benefits that are part of an employment contract." Hishon, 467 U.S. at 74 (1984). Plaintiff fails to cite case law to suggest that either the WIN or Great Idea program fits within this definition. Specifically, in DiBiase v. SmithKline Beecham Corp., a separation benefit plan for certain terminated employees was at issue. 48 F.3d at 722. Pennick v. Brown dealt with a buyout incentive intended to "entice" retirement. 2000 WL

12

419985, at *3 (E.D. Pa. Apr. 18, 2000). And <u>Dicks v. Info. Technologist, Inc.</u> dealt with a "commission program." 1996 WL 528890, at *7 (E.D. Pa. Aug. 29, 1996). While separation benefit plans, buyout incentives and commission programs may be considered "privileges of employment," Household's voluntary employee suggestion programs are not.

Further, Plaintiff fails to distinguish <u>Plummer v. Tisch</u>, <u>Walden v. Watkins</u> and <u>Kipnis v. Baram</u>,[14] relied upon by HSBC. All three cases held that the denial of cash awards pursuant to company suggestion programs did not adversely affect the terms and conditions of the plaintiffs' employment. See <u>Walden v. Watkins</u>, 1996 WL 477020, at *5 (9th Cir. Aug. 21, 1996) (holding denial of a cash award pursuant to a company suggestion program was merely discretionary and did not adversely affect the terms or conditions of the employee's employment); <u>Plummer v. Tisch</u>, 1989 WL 141388, at *5 (D.D.C. Aug. 31, 1989) (holding an employee failed to establish a *prima facie* case of race or sex discrimination when his employer failed to award him compensation and recognition for a suggestion he submitted that was ultimately put into effect). Specifically, as to <u>Kipnis v. Baram</u>,[15] although the court converted the motion to dismiss into a motion for summary judgment pursuant to Fed. R. Civ. P. 12(c), the motion was initially brought for <u>failure to state a claim</u>. <u>Kipnis v. Baram</u>, 949 F. Supp. 618, 620 (N.D. Ill. 1996). The issue

---

[14] The fact that <u>Walden</u> and <u>Kipnis</u> were retaliation cases is irrelevant, as in retaliation cases an employee must still demonstrate he suffered an "adverse employment action." See <u>Walden v. Watkins</u>, 1996 WL 477020, at *5 (9th Cir. Aug. 21, 1996); <u>Kipnis v. Baram</u>, 949 F. Supp. 618, 624 (N.D. Ill. 1996).

[15] As for <u>Plummer</u> and <u>Walden</u>, as Plaintiff notes, both were decided on motions for summary judgment, and therefore the courts did not address the threshold question of whether a failure to compensate an employee for an idea submitted under a voluntary suggestion program can be brought under Title VII. Thus, the cases cannot be said to "tacitly recognize that the employee had stated (in the complaint) an act of discrimination," as Plaintiff suggests. See AB at 26.

13

before the court was "whether Kipnis   stated a cause of action for retaliation under Title VII based on the GSA's refusal to increase his monetary award," and the court ultimately held that the employee's claim could not "stand " Id. at 624-25

As Plaintiff correctly notes, the Kipnis court relied in part on Rabinovitz v. Pena, 89 F 3d 482 (7th Cir 1996), but such reliance is irrelevant to the court's analysis Kipnis, 949 F Supp at 624 In Rabinovitz, an employee received a performance rating that was lower than usual, preventing him from receiving a $600 bonus Rabinovitz, 89 F 3d at 486 The Seventh Circuit affirmed the district court's holding that the "loss of a bonus is not an adverse employment action in a case     where the employee is not automatically entitled to the bonus " Id. at 488-89 Plaintiff argues against the propriety of Rabinovitz (and thus Kipnis) based on Russell   AB at 29 However, as previously discussed,[16] the bonus in Russell was "directly tied to the plaintiff's performance rating " 257 F 3d at 819 The bonus in Rabinovitz was also performance based, and for this very reason the Kipnis court qualified its reliance on the case by noting that the case had a "close[] [but not identical] fact pattern " Kipnis, 949 F. Supp at 624 Thus, the decision in Russell and the Kipnis court's reliance on Rabinovitz does not disturb the court's ultimate decision in Kipnis that an employer's failure to increase an award to an employee for a cost-savings suggestion was not an adverse action for purposes of Title VII Kipnis, 949 F Supp at 624-25

Again, the WIN and Great Ideas programs were voluntary suggestion programs, separate and apart from Plaintiff's job duties Participation was in no way required of Plaintiff or of any Household employee for that matter Nor did participation in either program equate to any core

---

[16] See page 10

job benefit such as continued employment, promotion or higher salary. As neither program is a "privilege of employment," Plaintiff's Title VII claim must be dismissed

## III. PLAINTIFF'S CHARGE WAS UNTIMELY, AND AS SUCH, PLAINTIFF'S TITLE VII CLAIM MUST BE DISMISSED.

Assuming, *arguendo*, that Plaintiff's failure to suffer an "adverse employment action" does not operate as a bar to his Title VII claim, the claim must nevertheless be dismissed for its evident untimeliness. Without question, Plaintiff's September 8, 2003 Charge is grossly beyond the 90-day and 300-day limitation periods for filing such charges of discrimination. In order to state a viable Title VII claim, a plaintiff is required to file a charge of discrimination with the EEOC and/or DDOL. A plaintiff must file a charge with the EEOC within 300 days of the last alleged unlawful employment practice. See 42 U S C § 2000e-(5)(e)(1)(2003). A plaintiff is required to file a charge of discrimination with the DDOL "within 90 days after the alleged unlawful employment practice or 120 days after discovery thereof" 19 Del. C. § 712(d) [17] Plaintiff did not meet either filing deadline, and because he cannot demonstrate otherwise, his Title VII claim must be dismissed

As early as March/April 2002, Plaintiff knew that he would not be rewarded for his submission. Focusing solely on the language of the Complaint, Plaintiff states:

> HRS's actions in not following its WIN Program procedures and in concealing the fact that the Plaintiff's idea had been implemented were intended to discourage Plaintiff from pursuing his claim based on his idea. Consequently, Plaintiff did not pursue his claim until after he discovered documentation

---

[17] As noted in HSBC's Opening Brief, Section 712 was amended effective September 10, 2004 to provide for 120 days for a charge to be brought before the DDOL. See 19 Del. C. § 712(c)(1). However, because the Charge was filed a year before Section 712 was amended, in September 2003, Plaintiff was required to bring his Charge within 90 days of the alleged unlawful employment practice, but did not

15

> <u>regarding the idea</u>, which tended to prove he was entitled to compensation for the
> idea

Complaint at ¶ 17 (emphasis added). Looking to the Charge, attached to Plaintiff's Complaint

and thereby incorporated in the Complaint, it is clear that Plaintiff "discovered [such]

documentation" in April 2002. <u>See</u> Complaint at Exhibit A ("In April, 2002, I discovered that

the program was financially lucrative."). In other words, by Plaintiff's own admission, he

became aware that the automatic check system was financially lucrative one month after making

his WIN submission and almost two years after first allegedly bringing the idea to the attention

of Household. The Charge states:

> I am an individual of Moroccan descent who was denied payment and recognition
> for a program that was my creation and submitted to Respondent in <u>April of 2000</u>.
> This idea was a plan for customers to make automatic payments, rather than
> speaking to an employee. This way, checks can be paid at any time, on any date.
> In <u>May of 2000</u>, I reviewed the final draft with Jeff Kucharski, Mike Coates, and
> Pete Wilson (all management, all American). The program was approved, but it
> was not until March of 2002, that the idea was implemented.

<u>Id.</u> (emphasis added). Nonetheless, Plaintiff did not file the required charge until September

2003. Plaintiff's September 8, 2003 Charge is time-barred as it was filed beyond the 90-day and

300-day limitation periods whether measured from spring 2000, or spring 2002 when the idea

was allegedly implemented and Plaintiff realized that the idea was "financially lucrative."

   Importantly, Plaintiff's resubmission of the idea under the Great Ideas program did not

extend the time for him to bring a charge, as the idea he submitted was exactly the same idea

submitted under the WIN program. Plaintiff's Great Ideas submission was identical to the idea

he submitted under the WIN program − something Plaintiff does not dispute. <u>See</u> AB at 7-8

(discussing Plaintiff's Great Ideas submission and concluding that "plaintiff's idea which was

submitted initially before June 21, 2002 under the WIN Program, should have been processed in

accordance with the WIN Program). As stated in HSBC's Opening Brief, Plaintiff's March 8,

16

2002 WIN submission proposed to "set up a VRU Check By Phone to better help serve our customers 365 days a year " OB at Ex B Likewise, Plaintiff's April 2003 Great Idea submission proposed to "accommodate our customers 24/7, 365 days a year thro [sic] the automated VRU Check by Phone " OB at Ex E In fact, Plaintiff relates his Great Ideas submission back to his discussions with Household in 2000 about the idea that he later submitted to WIN Id. It was only because Household did not reward Plaintiff for his WIN submission that he resubmitted the idea under the Great Ideas program − which was identical to the WIN program regarding the types of ideas that would be rewarded To the extent Plaintiff's second submission was identical to his first, and the first submission was not rewarded, Plaintiff had no reason to believe that his second submission would be rewarded Thus, the June 11, 2003 e-mail does not constitute the "last alleged unlawful employment practice" from when Plaintiff's time to bring a charge would run because he knew well before then that he was not going to be rewarded for the idea See AB at 33-34

Further, the fact, as Plaintiff points out, that Household may have needed to wait a year to determine the amount of any award is irrelevant See AB at 32 As Plaintiff repetitively argues, under both programs Household was required to process employees' submissions within certain time frames − something Plaintiff argues that Household did not do AB at 3-4, 33-44 Under the WIN program, "[s]uggestions [were] acknowledged, and if possible evaluated by [a] supervisor or manager within 72 hours of when they were received " OB at Ex C Under the Great Ideas program, "[t]he SME will have two weeks to evaluate the idea and provide a response (accept, decline, pend) to the employee idea coordinator The employee idea coordinator will then advise the employee of the decision " OB at Ex D Therefore, had the decision been made to reward Plaintiff, although he might not have known the exact amount of

his reward, he would have known of the decision well before a year after his submission   As such, there is no question that Plaintiff's Title VII Charge was untimely, and as a result his Title VII claim must be dismissed

## IV.   AS PLAINTIFF'S TITLE VII CLAIM SHOULD BE DISMISSED, PLAINTIFF'S STATE LAW CLAIMS SHOULD ALSO BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

To the extent Plaintiff's Title VII claim is dismissed, the entire Complaint should be dismissed for lack of subject matter jurisdiction over the remaining state law claims   28 U S C § 1367(c)(3)   See also OB at 16-18   Plaintiff largely does not dispute this fact, noting that the Court "has discretion to dismiss the pendant State law claims if the federal claims are dismissed," AB at 35 (emphasis omitted)   To the extent that Plaintiff asserts that it is in the Court's "discretion" to dismiss such pendant state law claims, this Court has recognized the general rule in the Third Circuit that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendant state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so " Morning v. Polytech School District, 1998 WL 957259, at *14 (D Del Dec 29, 1998) (quoting Borough of West Mifflin v. Lancaster, 45 F 3d 780, 788 (3d Cir 1995) (emphasis added))   When a cause of action is in its early stages, such as at the motion to dismiss stage, as is the case here, such considerations are not raised   See Boardley v. First Correctional Medical, 2004 WL 2980727 (D Del Dec 21, 2004) (declining to exercise supplemental jurisdiction over state law claims when federal claims were dismissed); Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc., 344 F Supp 2d 923 (D Del 2004) (same); Oatway v. Am. Int'l Group, Inc., 2002 WL 187512 (D Del Feb 5, 2002) (same), aff'd,

18

325 F 3d 184 (3d Cir 2003) As such, Plaintiff's state law claims should be dismissed along with Plaintiff's Title VII claim

## CONCLUSION

For the foregoing reasons, the Court should grant HSBC's motion and dismiss with prejudice Plaintiff's Complaint in its entirety

Jennifer C Jauffret (#3689)
jauffret@rlf com
Alyssa M Schwartz (#4351)
schwartz@rlf com
Richards, Layton & Finger
One Rodney Square
P O Box 551
Wilmington, DE 19899
(302) 651-7700


Attorneys for Defendants
HSBC Pay Services, Inc , HSBC Finance
Corporation and Household International, Inc

Dated: June 15, 2005

19

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of June, 2005, true and correct copies of the foregoing were caused to be served on counsel of record at the following address as indicated:

### BY E-FILE AND HAND DELIVERY

Jeremy W Homer, Esq
Parkowski, Guerke & Swayze, P A
116 West Water Street
P O Box 598
Dover, Delaware 19903

Alyssa M  Schwartz (#4351)